**COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)**

all of its investments in unconsolidated affiliates, which was $16 million, $43 million and $63 million for the years ended December 31, 2017, 2016 and 2015, respectively.

## 15. SEGMENT INFORMATION

The Company operates in one distinct operating segment, represented by hospital operations (which includes its general acute care hospitals and related healthcare entities that provide inpatient and outpatient healthcare services).

Prior to the Company's sale on December 31, 2016 of 80% of its ownership interest in the home care division, the Company also had an additional distinct operating segment represented by its home care agency operations (which provide in-home outpatient care). However, only the hospital operations segment met the criteria as a separate reportable segment due to the fact that the home care agency segment did not meet the quantitative thresholds for a separate identifiable reportable segment and was combined into the corporate and all other reportable segment. Since 2017, the Company has only operated in one operating segment.

The distribution between reportable segments of the Company's net operating revenues, (loss) income from continuing operations before income taxes, expenditures for segment assets and total assets as of and for the years ended December 31, 2016 and 2015, prior to the Company's sale of an 80% ownership interest in the home care division as noted above, is summarized in the following tables (in millions):

| | Year Ended December 31, | | | |
| --- | --- | --- | --- | --- |
| | | 2016 | | 2015 |
| Net operating revenues: | | | | |
| Hospital operations | $ | 18,210 | $ | 19,234 |
| Corporate and all other | | 228 | | 203 |
| Total | $ | 18,438 | $ | 19,437 |
| | | | | |
| (Loss) income from continuing operations before income taxes: | | | | |
| Hospital operations | $ | (1,418) | $ | 767 |
| Corporate and all other | | (297) | | (356) |
| Total | $ | (1,715) | $ | 411 |
| | | | | |
| Expenditures for segment assets: | | | | |
| Hospital operations | $ | 727 | $ | 915 |
| Corporate and all other | | 17 | | 38 |
| Total | $ | 744 | $ | 953 |

| | December 31, 2016 | |
| --- | --- | --- |
| Total assets: | | |
| Hospital operations | $ | 20,582 |
| Corporate and all other | | 1,362 |
| Total | $ | 21,944 |

151

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 1 of 53 PageID #: 934

## 16. OTHER COMPREHENSIVE INCOME

The following tables present information about items reclassified out of accumulated other comprehensive (loss) income by component for the years ended December 31, 2017 and 2016 (in millions, net of tax):

| | Change in Fair Value of Interest Rate Swaps | Change in Fair Value of Available for Sale Securities | Change in Unrecognized Pension Cost Components | Accumulated Other Comprehensive Income (Loss) |
|---|---|---|---|---|
| Balance as of December 31, 2016 | $ (31) | $ (10) | $ (21) | $ (62) |
| Other comprehensive income before reclassifications | - | 8 | 5 | 13 |
| Amounts reclassified from accumulated other comprehensive income | 19 | - | 9 | 28 |
| Net current-period other comprehensive income | 19 | 8 | 14 | 41 |
| Balance as of December 31, 2017 | $ (12) | $ (2) | $ (7) | $ (21) |

| | Change in Fair Value of Interest Rate Swaps | Change in Fair Value of Available for Sale Securities | Change in Unrecognized Pension Cost Components | Accumulated Other Comprehensive Income (Loss) |
|---|---|---|---|---|
| Balance as of December 31, 2015 | $ (48) | $ 1 | $ (26) | $ (73) |
| Other comprehensive (loss) income before reclassifications | (17) | 2 | 1 | (14) |
| Amounts reclassified from accumulated other comprehensive income | 34 | (13) | 2 | 23 |
| Net current-period other comprehensive income (loss) | 17 | (11) | 3 | 9 |
| AOCI distributed to QHC in spin-off | - | - | 2 | 2 |
| Balance as of December 31, 2016 | $ (31) | $ (10) | $ (21) | $ (62) |

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 2 of 53 PageID #: 935

The following tables present a subtotal for each significant reclassification to net (loss) income out of AOCL and the line item affected in the accompanying consolidated statements of (loss) income for the years ended December 31, 2017 and 2016 (in millions):

| Details about accumulated other comprehensive (loss) income components | Amount reclassified from AOCL Year Ended December 31, 2017 | | Affected line item in the statement where net (loss) income is presented |
|---|---|---|---|
| Gains and losses on cash flow hedges | | | |
| Interest rate swaps | $ | (30) | Interest expense, net |
| | | 11 | Tax benefit |
| | $ | (19) | Net of tax |
| Amortization of defined benefit pension items | | | |
| Prior service costs | $ | (2) | Salaries and benefits |
| Actuarial losses | | (1) | Salaries and benefits |
| Settlement losses recognized | | (13) | Salaries and benefits |
| | | (16) | Total before tax |
| | | 7 | Tax benefit |
| | | (9) | Net of tax |

| Details about accumulated other comprehensive (loss) income components | Amount reclassified from AOCL Year Ended December 31, 2016 | | Affected line item in the statement where net (loss) income is presented |
|---|---|---|---|
| Gains and losses on cash flow hedges | | | |
| Interest rate swaps | $ | (54) | Interest expense, net |
| | | 20 | Tax benefit |
| | $ | (34) | Net of tax |
| Amortization of defined benefit pension items | | | |
| Prior service costs | $ | (2) | Salaries and benefits |
| Actuarial losses | | (1) | Salaries and benefits |
| | | (3) | Total before tax |
| | | 1 | Tax benefit |
| | $ | (2) | Net of tax |

## 17. COMMITMENTS AND CONTINGENCIES

*Construction and Other Capital Commitments.*   Pursuant to a hospital purchase agreement in effect as of December 31, 2017, the Company is required to build replacement facilities in La Porte, Indiana and Knox, Indiana. The estimated construction costs, including equipment costs, for the La Porte and Starke replacement facilities are currently estimated to be approximately $125 million and $15 million, respectively. No costs have been incurred to date on these facilities. In addition, under other purchase agreements outstanding at

153

December 31, 2017, the Company has committed to spend approximately $289 million for costs such as capital improvements, equipment, selected leases and physician recruiting. These commitments are required to be fulfilled generally over a five to seven year period after acquisition. Through December 31, 2017, the Company has spent approximately $135 million related to these commitments.

*Physician Recruiting Commitments.*  As part of its physician recruitment strategy, the Company provides income guarantee agreements to certain physicians who agree to relocate to its communities and commit to remain in practice there. Under such agreements, the Company is required to make payments to the physicians in excess of the amounts they earned in their practice up to the amount of the income guarantee. These income guarantee periods are typically for 12 months. Such payments are recoverable by the Company from physicians who do not fulfill their commitment period, which is typically three years, to the respective community. At December 31, 2017, the maximum potential amount of future payments under these guarantees in excess of the liability recorded is $31 million.

*Professional Liability Claims.*  As part of the Company's business of owning and operating hospitals, it is subject to legal actions alleging liability on its part. The Company accrues for losses resulting from such liability claims, as well as loss adjustment expenses that are out-of-pocket and directly related to such liability claims. These direct out-of-pocket expenses include fees of outside counsel and experts. The Company does not accrue for costs that are part of corporate overhead, such as the costs of in-house legal and risk management departments. The losses resulting from professional liability claims primarily consist of estimates for known claims, as well as estimates for incurred but not reported claims. The estimates are based on specific claim facts, historical claim reporting and payment patterns, the nature and level of hospital operations and actuarially determined projections. The actuarially determined projections are based on the Company's actual claim data, including historic reporting and payment patterns which have been gathered over an approximate 20-year period. As discussed below, since the Company purchases excess insurance on a claims-made basis that transfers risk to third-party insurers, the liability it accrues does include an amount for the losses covered by its excess insurance. The Company also records a receivable for the expected reimbursement of losses covered by excess insurance. Since the Company believes that the amount and timing of its future claims payments are reliably determinable, it discounts the amount accrued for losses resulting from professional liability claims using the risk-free interest rate corresponding to the timing of expected payments.

The net present value of the projected payments was discounted using a weighted-average risk-free rate of 2.2%, 1.8% and 1.6% in 2017, 2016 and 2015, respectively. This liability is adjusted for new claims information in the period such information becomes known. The Company's estimated liability for professional and general liability claims was $711 million and $788 million as of December 31, 2017 and 2016, respectively. The estimated undiscounted claims liability was $760 million and $843 million as of December 31, 2017 and 2016, respectively. The current portion of the liability for professional and general liability claims was $115 million and $130 million as of December 31, 2017 and 2016, respectively, and is included in other accrued liabilities in the accompanying consolidated balance sheets, with the long-term portion recorded in other long-term liabilities. Professional malpractice expense includes the losses resulting from professional liability claims and loss adjustment expense, as well as paid excess insurance premiums, and is presented within other operating expenses in the accompanying consolidated statements of (loss) income.

The Company's processes for obtaining and analyzing claims and incident data are standardized across all of its hospitals and have been consistent for many years. The Company monitors the outcomes of the medical care services that it provides and for each reported claim, the Company obtains various information concerning the facts and circumstances related to that claim. In addition, the Company routinely monitors current key statistics and volume indicators in its assessment of utilizing historical trends. The average lag period between claim occurrence and payment of a final settlement is between three and four years, although the facts and

154

circumstances of individual claims could result in the timing of such payments being different from this average. Since claims are paid promptly after settlement with the claimant is reached, settled claims represent approximately 1.0% of the total liability at the end of any period.

For purposes of estimating its individual claim accruals, the Company utilizes specific claim information, including the nature of the claim, the expected claim amount, the year in which the claim occurred and the laws of the jurisdiction in which the claim occurred. Once the case accruals for known claims are determined, information is stratified by loss layers and retentions, accident years, reported years, geography and claims relating to the acquired HMA hospitals versus claims relating to the Company's other hospitals. Several actuarial methods are used against this data to produce estimates of ultimate paid losses and reserves for incurred but not reported claims. Each of these methods uses company-specific historical claims data and other information. This company-specific data includes information regarding the Company's business, including historical paid losses and loss adjustment expenses, historical and current case loss reserves, actual and projected hospital statistical data, a variety of hospital census information, employed physician information, professional liability retentions for each policy year, geographic information and other data.

Based on these analyses the Company determines its estimate of the professional liability claims. The determination of management's estimate, including the preparation of the reserve analysis that supports such estimate, involves subjective judgment of the management. Changes in reserving data or the trends and factors that influence reserving data may signal fundamental shifts in the Company's future claim development patterns or may simply reflect single-period anomalies. Even if a change reflects a fundamental shift, the full extent of the change may not become evident until years later. Moreover, since the Company's methods and models use different types of data and the Company selects its liability from the results of all of these methods, it typically cannot quantify the precise impact of such factors on its estimates of the liability. Due to the Company's standardized and consistent processes for handling claims and the long history and depth of company-specific data, the Company's methodologies have produced reliably determinable estimates of ultimate paid losses.

The Company is primarily self-insured for professional liability claims; however, the Company obtains excess insurance that transfers the risk of loss to a third-party insurer for claims in excess of self-insured retentions. The Company's excess insurance is underwritten on a claims-made basis. For claims reported prior to June 1, 2002, substantially all of the Company's professional and general liability risks were subject to a less than $1 million per occurrence self-insured retention and for claims reported from June 1, 2002 through June 1, 2003, these self-insured retentions were $2 million per occurrence. Substantially all claims reported after June 1, 2003 and before June 1, 2005 are self-insured up to $4 million per claim. Substantially all claims reported on or after June 1, 2005 and before June 1, 2014 are self-insured up to $5 million per claim. Substantially all claims reported on or after June 1, 2014 are self-insured up to $10 million per claim. Management on occasion has selectively increased the insured risk at certain hospitals based upon insurance pricing and other factors and may continue that practice in the future. Excess insurance for all hospitals has been purchased through commercial insurance companies and generally covers the Company for liabilities in excess of the self-insured retentions. The excess coverage consists of multiple layers of insurance, the sum of which totals up to $95 million per occurrence and in the aggregate for claims reported on or after June 1, 2003, up to $145 million per occurrence and in the aggregate for claims reported on or after January 1, 2008, up to $195 million per occurrence and in the aggregate for claims reported on or after June 1, 2010, and up to $220 million per occurrence and in the aggregate for claims reported on or after June 1, 2015. In addition, for integrated occurrence malpractice claims, there is an additional $50 million of excess coverage for claims reported on or after June 1, 2014 and an additional $75 million of excess coverage for claims reported on or after June 1, 2015. For certain policy years prior to June 1, 2014, if the first aggregate layer of excess coverage becomes fully utilized, then the Company's self-insured retention will increase to $10 million per claim for any subsequent claims in that policy year until the Company's total aggregate coverage is met.

155

Effective June 1, 2014, the hospitals acquired from HMA were insured on a claims-made basis as described above and through commercial insurance companies as described above for substantially all claims reported on or after June 1, 2014 except for physician-related claims with an occurrence date prior to June 1, 2014. Prior to June 1, 2014, the former HMA hospitals obtained insurance coverage through a wholly-owned captive insurance subsidiary and a risk retention group subsidiary which are domiciled in the Cayman Islands and South Carolina, respectively. Those insurance subsidiaries, which are collectively referred to as the "Insurance Subsidiaries," provided (i) claims-made coverage to all of the former HMA hospitals and (ii) occurrence-basis coverage to most of the physicians employed by the former HMA hospitals. The employed physicians not covered by the Insurance Subsidiaries generally maintained claims-made policies with unrelated third party insurance companies. To mitigate the exposure of the program covering the former HMA hospitals and other healthcare facilities, the Insurance Subsidiaries bought claims-made reinsurance policies from unrelated third parties for claims above self-retention levels of $10 million or $15 million per claim, depending on the policy year.

Effective January 1, 2008, the hospitals acquired from Triad were insured on a claims-made basis as described above and through commercial insurance companies as described above for substantially all claims occurring on or after January 1, 2002 and reported on or after January 1, 2008. Substantially all losses for the former Triad hospitals in periods prior to May 1, 1999 were insured through a wholly-owned insurance subsidiary of HCA, Triad's owner prior to that time, and excess loss policies maintained by HCA. HCA has agreed to indemnify the former Triad hospitals in respect of claims covered by such insurance policies arising prior to May 1, 1999. After May 1, 1999 through December 31, 2006, the former Triad hospitals obtained insurance coverage on a claims incurred basis from HCA's wholly-owned insurance subsidiary, with excess coverage obtained from other carriers that is subject to certain deductibles. Effective for claims incurred after December 31, 2006, Triad began insuring its claims from $1 million to $5 million through its wholly-owned captive insurance company, replacing the coverage provided by HCA. Substantially all claims occurring during 2007 were self-insured up to $10 million per claim.

*Legal Matters.* The Company is a party to various legal, regulatory and governmental proceedings incidental to its business. Based on current knowledge, management does not believe that loss contingencies arising from pending legal, regulatory and governmental matters, including the matters described herein, will have a material adverse effect on the consolidated financial position or liquidity of the Company. However, in light of the inherent uncertainties involved in pending legal, regulatory and governmental matters, some of which are beyond the Company's control, and the very large or indeterminate damages sought in some of these matters, an adverse outcome in one or more of these matters could be material to the Company's results of operations or cash flows for any particular reporting period.

With respect to all legal, regulatory and governmental proceedings, the Company considers the likelihood of a negative outcome. If the Company determines the likelihood of a negative outcome with respect to any such matter is probable and the amount of the loss can be reasonably estimated, the Company records an accrual for the estimated loss for the expected outcome of the matter. If the likelihood of a negative outcome with respect to material matters is reasonably possible and the Company is able to determine an estimate of the possible loss or a range of loss, whether in excess of a related accrued liability or where there is no accrued liability, the Company discloses the estimate of the possible loss or range of loss. However, the Company is unable to estimate a possible loss or range of loss in some instances based on the significant uncertainties involved in, and/or the preliminary nature of, certain legal, regulatory and governmental matters.

In connection with the spin-off of QHC, the Company agreed to indemnify QHC for certain liabilities relating to outcomes or events occurring prior to April 29, 2016, the closing date of the spin-off, including (i) certain claims and proceedings that were known to be outstanding at or prior to the consummation of the spin-off and involved multiple facilities and (ii) certain claims, proceedings and investigations by governmental authorities or

156

private plaintiffs related to activities occurring at or related to QHC's healthcare facilities prior to the closing date of the spin-off, but only to the extent, in the case of clause (ii), that such claims are covered by insurance policies maintained by the Company, including professional liability and employer practices. In this regard, the Company continues to be responsible for HMA Legal Matters (as defined below) covered by the CVR agreement that relate to QHC's business, and any amounts payable by the Company in connection therewith will continue to reduce the amount payable by the Company in respect of the CVRs. Notwithstanding the foregoing, the Company is not required to indemnify QHC in respect of any claims or proceedings arising out of or related to the business operations of Quorum Health Resources, LLC at any time or QHC's compliance with the corporate integrity agreement. Subsequent to the spin-off of QHC, the Office of the Inspector General provided the Company with written assurance that it would look solely at QHC for compliance for its facilities under the Company's Corporate Integrity Agreement; however, the Office of the Inspector General declined to enter into a separate corporate integrity agreement with QHC. In addition, on August 4, 2017, the Company initiated an arbitration against QHC for unpaid amounts due from QHC related to two transition services agreements. QHC filed a counterclaim, claiming breach of contract and tortious interference, among others. The arbitration is set to begin June 18, 2018. The Company believes the counterclaim is without merit and will vigorously defend the case.

### HMA Legal Matters and Related CVR

The CVR agreement entitles the holder to receive a one-time cash payment of up to $1.00 per CVR, subject to downward adjustment based on the final resolution of certain litigation, investigations (whether formal or informal, including subpoenas), or other actions or proceedings related to HMA or its affiliates existing on or prior to July 29, 2013 (the date of the Company's merger agreement with HMA) as more specifically provided in the CVR agreement (all such matters are referred to as the "HMA Legal Matters"), which include, but are not limited to, investigation and litigation matters as previously disclosed by HMA in public filings with the SEC and/or as described in more detail below. The adjustment reducing the ultimate amount paid to holders of the CVR is determined based on the amount of losses incurred by the Company in connection with the HMA Legal Matters as more specifically provided in the CVR agreement, which generally includes the amount paid for damages, costs, fees and expenses (including, without limitation, attorneys' fees and expenses), and all fines, penalties, settlement amounts, indemnification obligations and other liabilities (all such losses are referred to as "HMA Losses"). If the aggregate amount of HMA Losses exceeds a deductible of $18 million, then the amount payable in respect of each CVR shall be reduced (but not below zero) by an amount equal to the quotient obtained by dividing: (a) the product of (i) all losses in excess of the deductible and (ii) 90%; by (b) the number of CVRs outstanding on the date on which final resolution of the existing litigation occurs. There are 264,544,053 CVRs outstanding as of the date hereof. If total HMA Losses (including HMA Losses that have occurred to date as noted in the table below) exceed approximately $312 million, then the holders of the CVRs will not be entitled to any payment in respect of the CVRs.

The CVRs do not have a finite payment date. Any payments the Company makes under the CVR agreement will be payable within 60 days after the final resolution of the HMA Legal Matters. The CVRs are unsecured obligations of CHS and all payments under the CVRs will be subordinated in right of payment to the prior payment in full of all of the Company's senior obligations (as defined in the CVR agreement), which include outstanding indebtedness of the Company (subject to certain exceptions set forth in the CVR agreement) and the HMA Losses. The CVR agreement permits the Company to acquire all or some of the CVRs, whether in open market transactions, private transactions or otherwise. As of December 31, 2017, the Company had acquired no CVRs.

157

The following table represents the impact of legal expenses paid or incurred and settlements paid or deemed final as of December 31, 2017 and 2016 on the amounts owed to CVR holders (in millions):

| | Total Expenses and Settlement Cost | | Allocation of Expenses and Settlements Paid | | | |
| | | | Deductible | | Company's Responsibility at 10% | | Reduction to Amount Owed to CVR Holders at 90% | |
|---|---|---|---|---|---|---|---|---|
| As of December 31, 2015 | $ | 58 | $ | 18 | $ | 4 | $ | 36 |
| Settlements paid | | 1 | | - | | - | | 1 |
| Legal expenses incurred and/or paid during the year ended December 31, 2016 | | 3 | | - | | - | | 3 |
| As of December 31, 2016 | | 62 | | 18 | | 4 | | 40 |
| Settlements paid | | - | | - | | - | | - |
| Legal expenses incurred and/or paid during the year ended December 31, 2017 | | 2 | | - | | - | | 2 |
| As of December 31, 2017 | $ | 64 | $ | 18 | $ | 4 | $ | 42 |

Amounts owed to CVR holders are dependent on the ultimate resolution of the HMA Legal Matters and determination of HMA Losses incurred. The settlement of any or all of the claims and expenses incurred on behalf of the Company in defending itself will (subject to the deductible) reduce the amounts owed to the CVR holders.

Underlying the CVR agreement are a number of claims included in the HMA Legal Matters asserted against HMA. The Company has recorded a liability in connection with those claims as part of the acquired assets and liabilities at the date of acquisition pursuant to the provisions of Financial Accounting Standards Board Accounting Standards Codification Topic 805 "Business Combinations." For the estimate of the Company's liabilities associated with the HMA Legal Matters that will be covered by the CVR and were not previously accrued by HMA, the Company recorded a liability of $284 million as part of the acquisition accounting for the HMA merger based on the Company's estimate of fair value of such liabilities as of the date of acquisition. There was a $4 million increase in the liability during the year ended December 31, 2017 and the estimated fair value of such liabilities, after consideration of amounts paid and current estimates of valuation inputs, was $256 million as of December 31, 2017, which is recorded in other long-term liabilities on the accompanying consolidated balance sheet. As of December 31, 2017, there is currently no accrual recorded for the probable contingency claims underlying the CVR agreement. The estimated liability for probable contingency claims underlying the CVR agreement that was previously recorded by HMA, and reflected in the purchase accounting for HMA as an acquired liability has been settled and was paid during the year ended December 31, 2015. In addition, although legal fees are not included in the amounts currently accrued, such legal fees are taken into account in determining HMA Losses under the CVR agreement. Certain significant HMA Legal Matters underlying these liabilities are discussed in greater detail below.

HMA Matters Recorded at Fair Value

*Medicare/Medicaid Billing Lawsuits*

Beginning during the week of December 16, 2013, eleven qui tam lawsuits filed by private individuals against HMA were unsealed in various United States district courts. The United States has elected to intervene in all or part of eight of these matters; namely U.S. ex rel. Craig Brummer v. Health Management Associates, Inc. et al. (Middle District Georgia) ("Brummer"); U.S. ex rel. Ralph D. Williams v. Health Management Associates, Inc.

158

et al. (Middle District Georgia) ("Williams"); U.S. ex rel. Scott H. Plantz, M.D. et al. v. Health Management Associates, Inc., et al. (Northern District Illinois) ("Plantz"); U.S. ex rel. Thomas L. Mason, M.D. et al. v. Health Management Associates, Inc. et al. (Western District North Carolina) ("Mason"); U.S. ex rel. Jacqueline Meyer, et al. v. Health Management Associates, Inc., Gary Newsome et al. ("Jacqueline Meyer") (District of South Carolina); U.S. ex rel. George Miller, et al. v. Health Management Associates, Inc. (Eastern District of Pennsylvania) ("Miller"); U.S. ex rel. Bradley Nurkin v. Health Management Associates, Inc. et al. (Middle District of Florida) ("Nurkin"); and U.S. ex rel. Paul Meyer v. Health Management Associates, Inc. et al. (Southern District Florida) ("Paul Meyer"). The United States has elected to intervene with respect to allegations in these cases that certain HMA hospitals inappropriately admitted patients and then submitted reimbursement claims for treating those individuals to federal healthcare programs in violation of the False Claims Act or that certain HMA hospitals had inappropriate financial relationships with physicians which violated the Stark law, the Anti-Kickback Statute, and the False Claims Act. Certain of these complaints also allege the same actions violated various state laws which prohibit false claims. The United States has declined to intervene in three of the eleven matters, namely U.S. ex rel. Anita France, et al. v. Health Management Associates, Inc. (Middle District Florida) ("France") which involved allegations of wrongful billing and was settled; U.S. ex rel. Sandra Simmons v. Health Management Associates, Inc. et al. (Eastern District Oklahoma) ("Simmons") which alleges unnecessary surgery by an employed physician and which was settled as to all allegations except alleged wrongful termination; and U.S. ex rel. David Napoliello, M.D. v. Health Management Associates, Inc. (Middle District Florida) ("Napoliello") which alleges inappropriate admissions. On April 3, 2014, the Multi District Litigation Panel ordered the transfer and consolidation for pretrial proceedings of the eight intervened cases, plus the Napoliello matter, to the District of the District of Columbia under the name In Re: Health Management Associates, Inc. Qui Tam Litigation. On June 2, 2014, the court entered a stay of this matter until October 6, 2014, which was subsequently extended until February 27, 2015, May 27, 2015, September 25, 2015, January 25, 2016, May 25, 2016, September 26, 2016, December 27, 2016, April 27, 2017, August 28, 2017, December 18, 2017 and now until March 19, 2018. The Company intends to defend against the allegations in these matters, but also continues to cooperate with the government in the ongoing investigation of these allegations. The Company has been in discussions with the Civil Division of the United States Department of Justice ("DOJ") regarding the resolutions of these matters. During the first quarter of 2015, the Company was informed that the Criminal Division continues to investigate former executive-level employees of HMA, and continues to consider whether any HMA entities should be held criminally liable for the acts of the former HMA employees. The Company is voluntarily cooperating with these inquiries and has not been served with any subpoenas or other legal process.

Other Probable Contingencies

*Becker v. Community Health Systems, Inc. d/b/a Community Health Systems Professional Services Corporation d/b/a Community Health Systems d/b/a Community Health Systems PSC, Inc. d/b/a Rockwood Clinic P.S. and Rockwood Clinic, P.S. (Superior Court, Spokane, Washington).* This suit was filed on February 29, 2012, by a former chief financial officer at Rockwood Clinic in Spokane, Washington. Becker claims he was wrongfully terminated for allegedly refusing to certify a budget for Rockwood Clinic in 2012. On February 29, 2012, he also filed an administrative complaint with the Department of Labor, Occupational Safety and Health Administration alleging that he is a whistleblower under Sarbanes-Oxley, which was dismissed by the agency and was appealed to an administrative law judge for a hearing that occurred on January 19-26, 2016. In a decision dated November 9, 2016, the law judge awarded Becker approximately $1.9 million for front pay, back pay and emotional damages with attorney fees to be later determined. The Company has appealed the award to the Administrative Review Board and is awaiting its decision. At a hearing on July 27, 2012, the trial court dismissed Community Health Systems, Inc. from the state case and subsequently certified the state case for an interlocutory appeal of the denial to dismiss his employer and the management company. The appellate court accepted the interlocutory appeal, and it was argued on April 30, 2014. On August 14, 2014, the court denied the Company's appeal. On October 20, 2014, the Company filed a petition to review the denial with the Washington

159

Supreme Court. The appeal was accepted and oral argument was heard on June 9, 2015. On September 15, 2015, the court denied the Company's appeal and remanded to the trial court; a previous trial setting of September 12, 2016 has been vacated and not reset. The Company continues to vigorously defend these actions.

Summary of Recorded Amounts

The table below presents a reconciliation of the beginning and ending liability balances (in millions) during the years ended December 31, 2017 and 2016, with respect to the Company's fair value determination in connection with HMA Legal Matters that were not previously accrued by HMA, and the remaining contingencies of the Company in respect of which an accrual has been recorded. In addition, future legal fees (which are expensed as incurred) and costs related to possible indemnification and criminal investigation matters associated with the HMA Legal Matters have not been accrued or included in the table below. Furthermore, although not accrued, such costs, if incurred, will be taken into account in determining the total amount of reductions applied to the amounts owed to CVR holders.

|  | CVR-Related Liability at Fair Value | Other Probable Contingencies |
|---|---|---|
| Balance as of December 31, 2015 | $ 261 | $ 10 |
| (Income) expense | (8) | 14 |
| Reserve for insured claim | - | 1 |
| Cash payments | (1) | (11) |
| Balance as of December 31, 2016 | 252 | 14 |
| Expense | 4 | 14 |
| Cash payments | - | (14) |
| Balance as of December 31, 2017 | $ 256 | $ 14 |

With respect to the "Other Probable Contingencies" referenced in the chart above, in accordance with applicable accounting guidance, the Company establishes a liability for litigation, regulatory and governmental matters for which, based on information currently available, the Company believes that a negative outcome is known or is probable and the amount of the loss is reasonably estimable. For all such matters (whether or not discussed in this contingencies footnote), such amounts have been recorded in other accrued liabilities on the consolidated balance sheet and are included in the table above in the "Other Probable Contingencies" column. Due to the uncertainties and difficulty in predicting the ultimate resolution of these contingencies, the actual amount could differ from the estimated amount reflected as a liability on the consolidated balance sheet.

In the aggregate, attorneys' fees and other costs incurred but not included in the table above related to probable contingencies, and CVR-related contingencies accounted for at fair value, totaled $2 million and $4 million for the years ended December 31, 2017 and 2016, respectively, and are included in other operating expenses in the accompanying consolidated statements of (loss) income.

Matters for which an Outcome Cannot be Assessed

For the following legal matter, due to the uncertainties surrounding the ultimate outcome of the case, the Company cannot at this time assess what the outcome may be and is further unable to determine any estimate of loss or range of loss.

Class Action Shareholder Federal Securities Cases. Three purported class action cases have been filed in the United States District Court for the Middle District of Tennessee; namely, Norfolk County Retirement System

160

v. Community Health Systems, Inc., et al., filed May 9, 2011; De Zheng v. Community Health Systems, Inc., et al., filed May 12, 2011; and Minneapolis Firefighters Relief Association v. Community Health Systems, Inc., et al., filed June 21, 2011. All three seek class certification on behalf of purchasers of the Company's common stock between July 27, 2006 and April 11, 2011 and allege that misleading statements resulted in artificially inflated prices for the Company's common stock. In December 2011, the cases were consolidated for pretrial purposes and NYC Funds and its counsel were selected as lead plaintiffs/lead plaintiffs' counsel. In lieu of ruling on the Company's motion to dismiss, the court permitted the plaintiffs to file a first amended consolidated class action complaint, which was filed on October 5, 2015. The Company's motion to dismiss was filed on November 4, 2015 and oral argument was held on April 11, 2016. The Company's motion to dismiss was granted on June 16, 2016 and on June 27, 2016, the plaintiffs filed a notice of appeal to the Sixth Circuit Court of Appeals. The matter was heard on May 3, 2017. On December 13, 2017, the Sixth Circuit reversed the trial court's dismissal of the case and remanded it to the District Court. The Company filed a renewed partial motion to dismiss on February 9, 2018. The Company believes this consolidated matter is without merit and will vigorously defend this case.

## 18. SUBSEQUENT EVENTS

The Company has evaluated all material events occurring subsequent to the balance sheet date for events requiring disclosure or recognition in the consolidated financial statements.

On January 31, 2018, one or more subsidiaries of the Company signed a definitive agreement for the sale of Tennova Healthcare – Jamestown (85 licensed beds) in Jamestown, Tennessee, and its associated assets to subsidiaries of Rennova Health, Inc.

On February 14, 2018, one or more subsidiaries of the Company signed a definitive agreement for the sale of Byrd Regional Hospital (60 licensed beds) in Leesville, Louisiana, and its associated assets to subsidiaries of Allegiance Health Management.

On February 26, 2018, the Credit Facility was amended, with requisite revolving lender approval, to remove the EBITDA to interest expense ratio financial covenant, to replace the senior secured net debt to EBITDA ratio financial covenant with a first lien net debt to EBITDA ratio financial covenant, and to reduce the extended revolving credit commitments to $650 million (for a total of $840 million in revolving credit commitments when combined with the non-extended portion of the revolving credit facility). The new financial covenant provides for a maximum first lien net debt to EBITDA ratio of 5.25 to 1.0, reducing to 5.0 to 1.0 on July 1, 2018, 4.75 to 1.0 on January 1, 2019, 4.5 to 1.0 on January 1, 2020 and 4.25 to 1.0 on July 1, 2020. In addition, CHS agreed pursuant to the amendment to modify its ability to retain asset sale proceeds, and instead to apply them to prepayments of term loans based on pro forma first lien leverage. To the extent the ratio of first lien net debt to EBITDA is greater than or equal to 4.5 to 1.0, 100% of net cash proceeds of asset sales will be applied to prepay term loans; to the extent the first lien leverage ratio is less than 4.5 to 1.0 but greater than or equal to 4.0 to 1.0, 50% of such proceeds will be applied to prepay term loans; and to the extent the first lien leverage ratio is less than 4.0 to 1.0, there will be no requirement to prepay term loans with such proceeds. These ratios will be determined on a pro forma basis giving appropriate effect to the relevant asset sales and corresponding prepayments of term loans.

161

## 19. QUARTERLY FINANCIAL DATA (UNAUDITED)

| | Quarter | | | | Total (2) |
|---|---|---|---|---|---|
| | 1st | 2nd | 3rd | 4th | |
| | (in millions, except share and per share data) | | | | |
| **Year ended December 31, 2017:** | | | | | |
| Net operating revenues | $ 4,486 | $ 4,144 | $ 3,666 | $ 3,059 | $ 15,353 |
| Loss from continuing operations before income taxes | (176) | (131) | (147) | (2,379) | (2,833) |
| Loss from continuing operations | (176) | (116) | (88) | (2,004) | (2,384) |
| Loss from discontinued operations | (1) | (6) | (2) | (3) | (12) |
| Net loss attributable to Community Health Systems, Inc. | $ (199) | $ (137) | $ (110) | $ (2,013) | $ (2,459) |
| *Basic loss per share attributable to Community Health Systems, Inc. common stockholders(1):* | | | | | |
| Continuing operations | $ (1.78) | $ (1.17) | $ (0.96) | $ (17.95) | $ (21.89) |
| Discontinued operations | (0.01) | (0.06) | (0.02) | (0.03) | (0.11) |
| Net loss | $ (1.79) | $ (1.22) | $ (0.98) | $ (17.98) | $ (22.00) |
| *Diluted loss per share attributable to Community Health Systems, Inc. common stockholders(1):* | | | | | |
| Continuing operations | $ (1.78) | $ (1.17) | $ (0.96) | $ (17.95) | $ (21.89) |
| Discontinued operations | (0.01) | (0.06) | (0.02) | (0.03) | (0.11) |
| Net loss | $ (1.79) | $ (1.22) | $ (0.98) | $ (17.98) | $ (22.00) |
| Weighted-average number of shares outstanding: | | | | | |
| Basic | 111,252,331 | 111,909,858 | 111,935,738 | 111,971,628 | 111,769,821 |
| Diluted | 111,252,331 | 111,909,858 | 111,935,738 | 111,971,628 | 111,769,821 |
| **Year ended December 31, 2016:** | | | | | |
| Net operating revenues | $ 4,999 | $ 4,590 | $ 4,380 | $ 4,469 | $ 18,438 |
| Income (loss) from continuing operations before income taxes | 63 | (1,543) | (83) | (152) | (1,715) |
| Income (loss) from continuing operations | 37 | (1,405) | (54) | (189) | (1,611) |
| Loss from discontinued operations | (1) | (1) | (2) | (9) | (15) |
| Net income (loss) attributable to Community Health Systems, Inc. | $ 11 | $ (1,432) | $ (79) | $ (220) | $ (1,721) |
| *Basic earnings (loss) per share attributable to Community Health Systems, Inc. common stockholders(1):* | | | | | |
| Continuing operations | $ 0.11 | $ (12.90) | $ (0.69) | $ (1.91) | $ (15.41) |
| Discontinued operations | (0.01) | (0.01) | (0.02) | (0.09) | (0.13) |
| Net income (loss) | $ 0.10 | $ (12.91) | $ (0.71) | $ (1.99) | $ (15.54) |
| *Diluted earnings (loss) per share attributable to Community Health Systems, Inc. common stockholders(1):* | | | | | |
| Continuing operations | $ 0.11 | $ (12.90) | $ (0.69) | $ (1.91) | $ (15.41) |
| Discontinued operations | (0.01) | (0.01) | (0.02) | (0.09) | (0.13) |
| Net income (loss) | $ 0.10 | $ (12.91) | $ (0.71) | $ (1.99) | $ (15.54) |
| Weighted-average number of shares outstanding: | | | | | |
| Basic | 110,247,867 | 110,879,285 | 110,888,040 | 110,905,052 | 110,730,971 |
| Diluted | 110,309,372 | 110,879,285 | 110,888,040 | 110,905,052 | 110,730,971 |

(1) Total per share amounts may not add due to rounding.
(2) Total quarterly amounts may not add due to rounding.

162

## COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### 20. SUPPLEMENTAL CONDENSED CONSOLIDATING FINANCIAL INFORMATION

The Senior Notes due 2019, 2020 and 2022, which are senior unsecured obligations of CHS, the 5 ⅛% Senior Secured Notes due 2021, and the 6 ¼% Senior Secured Notes due 2023 (collectively, "the Notes") are guaranteed on a senior basis by the Company and by certain of its existing and subsequently acquired or organized 100% owned domestic subsidiaries. The Notes are fully and unconditionally guaranteed on a joint and several basis, with exceptions considered customary for such guarantees, limited to the release of the guarantee when a subsidiary guarantor's capital stock is sold, or a sale of all of the subsidiary guarantor's assets used in operations. The following condensed consolidating financial statements present Community Health Systems, Inc. (as parent guarantor), CHS (as the issuer), the subsidiary guarantors, the subsidiary non-guarantors and eliminations. These condensed consolidating financial statements have been prepared and presented in accordance with SEC Regulation S-X Rule 3-10 "Financial Statements of Guarantors and Issuers of Guaranteed Securities Registered or Being Registered."

The accounting policies used in the preparation of this financial information are consistent with those elsewhere in the consolidated financial statements of the Company, except as noted below:

- Intercompany receivables and payables are presented gross in the supplemental condensed consolidating balance sheets.

- Cash flows from intercompany transactions are presented in cash flows from financing activities, as changes in intercompany balances with affiliates, net.

- Income tax expense is allocated from the parent guarantor to the income producing operations (other guarantors and non-guarantors) and the issuer through stockholders' (deficit) equity. As this approach represents an allocation, the income tax expense allocation is considered non-cash for statement of cash flow purposes.

- Interest expense, net has been presented to reflect net interest expense and interest income from outstanding long-term debt and intercompany balances.

The Company's intercompany activity consists primarily of daily cash transfers for purposes of cash management, the allocation of certain expenses and expenditures paid for by the Parent on behalf of its subsidiaries, and the push down of investment in its subsidiaries. This activity also includes the intercompany transactions between consolidated entities as part of the Receivables Facility that is further discussed in Note 7. The Company's subsidiaries generally do not purchase services from one another; thus, the intercompany transactions do not represent revenue generating transactions. All intercompany transactions eliminate in consolidation.

From time to time, subsidiaries of the Company sell and/or repurchase noncontrolling interests in consolidated subsidiaries, which may change subsidiaries between guarantors and non-guarantors. Effective with the spin-off of QHC, all subsidiaries of the Company that were part of that distribution have been removed as guarantors. Amounts for prior periods have been revised to reflect the status of guarantors and non-guarantors as of December 31, 2017.

163

### Condensed Consolidating Statement of Loss
### Year Ended December 31, 2017

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Operating revenues (net of contractual allowances and discounts) | $ - | $ (22) | $ 10,765 | $ 7,655 | $ - | $ 18,398 |
| Provision for bad debts | - | - | 2,063 | 982 | - | 3,045 |
| Net operating revenues | - | (22) | 8,702 | 6,673 | - | 15,353 |
| Operating costs and expenses: | | | | | | |
| Salaries and benefits | - | - | 3,614 | 3,762 | - | 7,376 |
| Supplies | - | - | 1,628 | 1,044 | - | 2,672 |
| Other operating expenses | - | - | 2,376 | 1,488 | - | 3,864 |
| Government and other legal settlements and related costs | - | - | (31) | - | - | (31) |
| Electronic health records incentive reimbursement | - | - | (12) | (16) | - | (28) |
| Rent | - | - | 198 | 196 | - | 394 |
| Depreciation and amortization | - | - | 501 | 360 | - | 861 |
| Impairment and (gain) loss on sale of businesses, net | - | - | 1,212 | 911 | - | 2,123 |
| Total operating costs and expenses | - | - | 9,486 | 7,745 | - | 17,231 |
| Loss from operations | - | (22) | (784) | (1,072) | - | (1,878) |
| Interest expense, net | - | 327 | 587 | 17 | - | 931 |
| Loss from early extinguishment of debt | - | 40 | - | - | - | 40 |
| Equity in earnings of unconsolidated affiliates | 2,459 | 1,955 | 865 | - | (5,295) | (16) |
| Loss from continuing operations before income taxes | (2,459) | (2,344) | (2,236) | (1,089) | 5,295 | (2,833) |
| Provision for (benefit from) income taxes | - | 115 | (297) | (267) | - | (449) |
| Loss from continuing operations | (2,459) | (2,459) | (1,939) | (822) | 5,295 | (2,384) |
| Discontinued operations, net of taxes: | | | | | | |
| Loss from operations of entities sold or held for sale | - | - | (4) | (2) | - | (6) |
| Impairment of hospitals sold or held for sale | - | - | (5) | (1) | - | (6) |
| Loss from discontinued operations, net of taxes | - | - | (9) | (3) | - | (12) |
| Net loss | (2,459) | (2,459) | (1,948) | (825) | 5,295 | (2,396) |
| Less: Net income attributable to noncontrolling interests | - | - | - | 63 | - | 63 |
| Net loss attributable to Community Health Systems, Inc. stockholders | $ (2,459) | $ (2,459) | $ (1,948) | $ (888) | $ 5,295 | $ (2,459) |

Case 3:19-cv-00461   Document 67-5   Filed 03/23/20   Page 14 of 53 PageID #: 947

### Condensed Consolidating Statement of Loss
### Year Ended December 31, 2016

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Operating revenues (net of contractual allowances and discounts) | $ - | $ (25) | $ 11,089 | $ 10,211 | $ - | $ 21,275 |
| Provision for bad debts | - | - | 1,707 | 1,130 | - | 2,837 |
| Net operating revenues | - | (25) | 9,382 | 9,081 | - | 18,438 |
| Operating costs and expenses: | | | | | | |
| Salaries and benefits | - | - | 3,754 | 4,870 | - | 8,624 |
| Supplies | - | - | 1,660 | 1,351 | - | 3,011 |
| Other operating expenses | - | - | 2,238 | 2,010 | - | 4,248 |
| Government and other legal settlements and related costs | - | - | 16 | - | - | 16 |
| Electronic health records incentive reimbursement | - | - | (37) | (33) | - | (70) |
| Rent | - | - | 199 | 251 | - | 450 |
| Depreciation and amortization | - | - | 614 | 486 | - | 1,100 |
| Impairment and (gain) loss on sale of businesses, net | - | - | 1,262 | 657 | - | 1,919 |
| Total operating costs and expenses | - | - | 9,706 | 9,592 | - | 19,298 |
| Loss from operations | - | (25) | (324) | (511) | - | (860) |
| Interest expense, net | - | 241 | 631 | 90 | - | 962 |
| Loss from early extinguishment of debt | - | 30 | - | - | - | 30 |
| Gain on sale of investments in unconsolidated affiliates | - | - | (94) | - | - | (94) |
| Equity in earnings of unconsolidated affiliates | 1,721 | 1,466 | 585 | - | (3,815) | (43) |
| Loss from continuing operations before income taxes | (1,721) | (1,762) | (1,446) | (601) | 3,815 | (1,715) |
| (Benefit from) provision for income taxes | - | (41) | 19 | (82) | - | (104) |
| Loss from continuing operations | (1,721) | (1,721) | (1,465) | (519) | 3,815 | (1,611) |
| Discontinued operations, net of taxes: | | | | | | |
| (Loss) income from operations of entities sold or held for sale | - | - | (9) | 2 | - | (7) |
| Impairment of hospitals sold or held for sale | - | - | (1) | (7) | - | (8) |
| Loss from discontinued operations, net of taxes | - | - | (10) | (5) | - | (15) |
| Net loss | (1,721) | (1,721) | (1,475) | (524) | 3,815 | (1,626) |
| Less: Net income attributable to noncontrolling interests | - | - | - | 95 | - | 95 |
| Net loss attributable to Community Health Systems, Inc. stockholders | $ (1,721) | $(1,721) | $ (1,475) | $ (619) | $ 3,815 | $ (1,721) |

165

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Statement of Income
### Year Ended December 31, 2015

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Operating revenues (net of contractual allowances and discounts) | $ - | $ (20) | $ 11,063 | $ 11,521 | $ - | $ 22,564 |
| Provision for bad debts | - | - | 1,944 | 1,183 | - | 3,127 |
| Net operating revenues | - | (20) | 9,119 | 10,338 | - | 19,437 |
| Operating costs and expenses: | | | | | | |
| Salaries and benefits | - | - | 3,688 | 5,303 | - | 8,991 |
| Supplies | - | - | 1,586 | 1,462 | - | 3,048 |
| Other operating expenses | - | - | 2,120 | 2,400 | - | 4,520 |
| Government and other legal settlements and related costs | - | - | 4 | - | - | 4 |
| Electronic health records incentive reimbursement | - | - | (76) | (84) | - | (160) |
| Rent | - | - | 189 | 268 | - | 457 |
| Depreciation and amortization | - | - | 615 | 557 | - | 1,172 |
| Impairment and (gain) loss on sale of businesses, net | - | - | 55 | 13 | - | 68 |
| Total operating costs and expenses | - | - | 8,181 | 9,919 | - | 18,100 |
| (Loss) income from operations | - | (20) | 938 | 419 | - | 1,337 |
| Interest expense, net | - | 107 | 717 | 149 | - | 973 |
| Loss from early extinguishment of debt | - | 16 | - | - | - | 16 |
| Equity in earnings of unconsolidated affiliates | (158) | (220) | (125) | - | 440 | (63) |
| Income from continuing operations before income taxes | 158 | 77 | 346 | 270 | (440) | 411 |
| (Benefit from) provision for income taxes | - | (81) | 130 | 67 | - | 116 |
| Income from continuing operations | 158 | 158 | 216 | 203 | (440) | 295 |
| Discontinued operations, net of taxes: | | | | | | |
| Loss from operations of entities sold or held for sale | - | - | (7) | (20) | - | (27) |
| Impairment of hospitals sold or held for sale | - | - | - | (5) | - | (5) |
| Loss on sale, net | - | - | - | (4) | - | (4) |
| Loss from discontinued operations, net of taxes | - | - | (7) | (29) | - | (36) |
| Net income | 158 | 158 | 209 | 174 | (440) | 259 |
| Less: Net income attributable to noncontrolling interests | - | - | - | 101 | - | 101 |
| Net income attributable to Community Health Systems, Inc. stockholders | $ 158 | $ 158 | $ 209 | $ 73 | $ (440) | $ 158 |

166

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Statement of Comprehensive Loss
### Year Ended December 31, 2017

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net loss | $(2,459) | $(2,459) | $(1,948) | $(825) | $5,295 | $(2,396) |
| Other comprehensive income, net of income taxes: | | | | | | |
| Net change in fair value of interest rate swaps, net of tax | 19 | 19 | - | - | (19) | 19 |
| Net change in fair value of available-for-sale securities, net of tax | 8 | 8 | 8 | - | (16) | 8 |
| Amortization and recognition of unrecognized pension cost components, net of tax | 14 | 14 | 14 | - | (28) | 14 |
| Other comprehensive income | 41 | 41 | 22 | - | (63) | 41 |
| Comprehensive loss | (2,418) | (2,418) | (1,926) | (825) | 5,232 | (2,355) |
| Less: Comprehensive income attributable to noncontrolling interests | - | - | - | 63 | - | 63 |
| Comprehensive loss attributable to Community Health Systems, Inc. stockholders | $ (2,418) | $(2,418) | $ (1,926) | $ (888) | $ 5,232 | $ (2,418) |

### Condensed Consolidating Statement of Comprehensive Loss
### Year Ended December 31, 2016

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net loss | $ (1,721) | $(1,721) | $ (1,475) | $ (524) | $ 3,815 | $ (1,626) |
| Other comprehensive income (loss), net of income taxes: | | | | | | |
| Net change in fair value of interest rate swaps, net of tax | 17 | 17 | - | - | (17) | 17 |
| Net change in fair value of available-for-sale securities, net of tax | (11) | (11) | (11) | - | 22 | (11) |
| Amortization and recognition of unrecognized pension cost components, net of tax | 3 | 3 | 3 | - | (6) | 3 |
| Other comprehensive income (loss) | 9 | 9 | (8) | - | (1) | 9 |
| Comprehensive loss | (1,712) | (1,712) | (1,483) | (524) | 3,814 | (1,617) |
| Less: Comprehensive income attributable to noncontrolling interests | - | - | - | 95 | - | 95 |
| Comprehensive loss attributable to Community Health Systems, Inc. stockholders | $ (1,712) | $(1,712) | $ (1,483) | $ (619) | $ 3,814 | $ (1,712) |

167

Case 3:19-cv-00461     Document 67-5     Filed 03/23/20     Page 17 of 53 PageID #: 950

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Statement of Comprehensive Income
### Year Ended December 31, 2015

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net income | $ 158 | $ 158 | $ 209 | $ 174 | $ (440) | $ 259 |
| Other comprehensive (loss) income, net of income taxes: | | | | | | |
| Net change in fair value of interest rate swaps, net of tax | (6) | (6) | - | - | 6 | (6) |
| Net change in fair value of available-for-sale securities, net of tax | (5) | (5) | (5) | - | 10 | (5) |
| Amortization and recognition of unrecognized pension cost components, net of tax | 1 | 1 | 1 | - | (2) | 1 |
| Other comprehensive loss | (10) | (10) | (4) | - | 14 | (10) |
| Comprehensive income | 148 | 148 | 205 | 174 | (426) | 249 |
| Less: Comprehensive income attributable to noncontrolling interests | - | - | - | 101 | - | 101 |
| Comprehensive income attributable to Community Health Systems, Inc. stockholders | $ 148 | $ 148 | $ 205 | $ 73 | $ (426) | $ 148 |

168

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Balance Sheet
### December 31, 2017

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| **ASSETS** | | | | | | |
| Current assets: | | | | | | |
| Cash and cash equivalents | $ - | $ - | $ 497 | $ 66 | $ - | $ 563 |
| Patient accounts receivable, net of allowance for doubtful accounts | - | - | 355 | 2,029 | - | 2,384 |
| Supplies | - | - | 288 | 156 | - | 444 |
| Prepaid income taxes | 17 | - | - | - | - | 17 |
| Prepaid expenses and taxes | - | - | 146 | 52 | - | 198 |
| Other current assets | - | - | 152 | 310 | - | 462 |
| Total current assets | 17 | - | 1,438 | 2,613 | - | 4,068 |
| Intercompany receivable | - | 13,381 | 5,857 | 7,109 | (26,347) | - |
| Property and equipment, net | - | - | 4,448 | 2,604 | - | 7,052 |
| Goodwill | | | 2,882 | 1,841 | - | 4,723 |
| Deferred income taxes | 62 | - | - | - | - | 62 |
| Other assets, net | 15 | 39 | 1,594 | 939 | (1,042) | 1,545 |
| Net investment in subsidiaries | - | 21,717 | 10,890 | - | (32,607) | - |
| Total assets | $ 94 | $ 35,137 | $ 27,109 | $ 15,106 | $ (59,996) | $ 17,450 |
| **LIABILITIES AND EQUITY** | | | | | | |
| Current liabilities: | | | | | | |
| Current maturities of long-term debt | $ - | $ - | $ 25 | $ 8 | $ - | $ 33 |
| Accounts payable | - | - | 663 | 304 | - | 967 |
| Accrued interest | - | 228 | - | 1 | - | 229 |
| Accrued liabilities | - | - | 644 | 483 | - | 1,127 |
| Total current liabilities | - | 228 | 1,332 | 796 | - | 2,356 |
| Long-term debt | - | 12,998 | 216 | 666 | - | 13,880 |
| Intercompany payable | 833 | 21,582 | 24,028 | 13,310 | (59,753) | - |
| Deferred income taxes | 19 | - | - | - | - | 19 |
| Other long-term liabilities | 9 | 1,018 | 997 | 378 | (1,042) | 1,360 |
| Total liabilities | 861 | 35,826 | 26,573 | 15,150 | (60,795) | 17,615 |
| Redeemable noncontrolling interests in equity of consolidated subsidiaries | - | - | - | 527 | - | 527 |
| Equity: | | | | | | |
| Community Health Systems, Inc. stockholders' (deficit) equity: | | | | | | |
| Common stock | 1 | - | - | - | - | 1 |
| Additional paid-in capital | 2,014 | (252) | 204 | 234 | (186) | 2,014 |
| Accumulated other comprehensive loss | (21) | (21) | (4) | (4) | 29 | (21) |
| (Accumulated deficit) retained earnings | (2,761) | (416) | 336 | (876) | 956 | (2,761) |
| Total Community Health Systems, Inc. stockholders' (deficit) equity | (767) | (689) | 536 | (646) | 799 | (767) |
| Noncontrolling interests in equity of consolidated subsidiaries | - | - | - | 75 | - | 75 |
| Total (deficit) equity | (767) | (689) | 536 | (571) | 799 | (692) |
| Total liabilities and equity | $ 94 | $ 35,137 | $ 27,109 | $ 15,106 | $ (59,996) | $ 17,450 |

169

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Balance Sheet
### December 31, 2016

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| **ASSETS** | | | | | | |
| Current assets: | | | | | | |
| Cash and cash equivalents | $ - | $ - | $ 174 | $ 64 | $ - | $ 238 |
| Patient accounts receivable, net of allowance for doubtful accounts | - | - | 799 | 2,377 | - | 3,176 |
| Supplies | - | - | 297 | 183 | - | 480 |
| Prepaid income taxes | 17 | - | - | - | - | 17 |
| Prepaid expenses and taxes | - | - | 124 | 63 | - | 187 |
| Other current assets | - | - | 158 | 410 | - | 568 |
| Total current assets | 17 | - | 1,552 | 3,097 | - | 4,666 |
| Intercompany receivable | 295 | 14,996 | 3,150 | 7,597 | (26,038) | - |
| Property and equipment, net | - | - | 4,965 | 3,184 | - | 8,149 |
| Goodwill | - | - | 3,947 | 2,574 | - | 6,521 |
| Deferred income taxes | 15 | - | - | - | - | 15 |
| Other assets, net | - | - | 1,869 | 1,946 | (1,222) | 2,593 |
| Net investment in subsidiaries | 1,728 | 21,224 | 10,122 | - | (33,074) | - |
| Total assets | $ 2,055 | $ 36,220 | $ 25,605 | $ 18,398 | $ (60,334) | $ 21,944 |
| **LIABILITIES AND EQUITY** | | | | | | |
| Current liabilities: | | | | | | |
| Current maturities of long-term debt | $ - | $ 149 | $ 53 | $ 253 | $ - | $ 455 |
| Accounts payable | - | - | 628 | 367 | - | 995 |
| Accrued interest | - | 205 | 1 | 1 | - | 207 |
| Accrued liabilities | 17 | - | 626 | 587 | - | 1,230 |
| Total current liabilities | 17 | 354 | 1,308 | 1,208 | - | 2,887 |
| Long-term debt | - | 14,018 | 232 | 539 | - | 14,789 |
| Intercompany payable | - | 18,861 | 20,517 | 15,071 | (54,449) | - |
| Deferred income taxes | 411 | - | - | - | - | 411 |
| Other long-term liabilities | 12 | 1,259 | 1,082 | 444 | (1,222) | 1,575 |
| Total liabilities | 440 | 34,492 | 23,139 | 17,262 | (55,671) | 19,662 |
| Redeemable noncontrolling interests in equity of consolidated subsidiaries | - | - | - | 554 | - | 554 |
| Equity: | | | | | | |
| Community Health Systems, Inc. stockholders' equity: | | | | | | |
| Common stock | 1 | - | - | - | - | 1 |
| Additional paid-in capital | 1,975 | 675 | 939 | 768 | (2,382) | 1,975 |
| Accumulated other comprehensive loss | (62) | (62) | (22) | (9) | 93 | (62) |
| (Accumulated deficit) retained earnings | (299) | 1,115 | 1,549 | (290) | (2,374) | (299) |
| Total Community Health Systems, Inc. stockholders' equity | 1,615 | 1,728 | 2,466 | 469 | (4,663) | 1,615 |
| Noncontrolling interests in equity of consolidated subsidiaries | - | - | - | 113 | - | 113 |
| Total equity | 1,615 | 1,728 | 2,466 | 582 | (4,663) | 1,728 |
| Total liabilities and equity | $ 2,055 | $ 36,220 | $ 25,605 | $ 18,398 | $ (60,334) | $ 21,944 |

170

# COMMUNITY HEALTH SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS – (Continued)

### Condensed Consolidating Statement of Cash Flows
### Year Ended December 31, 2017

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net cash (used in) provided by operating activities | $ (12) | $ (317) | $ 750 | $ 352 | $ - | $ 773 |
| **Cash flows from investing activities:** | | | | | | |
| Acquisitions of facilities and other related businesses | - | - | (1) | (5) | - | (6) |
| Purchases of property and equipment | - | - | (365) | (199) | - | (564) |
| Proceeds from disposition of hospitals and other ancillary operations | - | - | 596 | 1,096 | - | 1,692 |
| Proceeds from sale of property and equipment | - | - | 4 | 3 | - | 7 |
| Purchases of available-for-sale securities | - | - | (91) | (34) | - | (125) |
| Proceeds from sales of available-for-sale securities | - | - | 154 | 54 | - | 208 |
| Increase in other investments | - | - | (106) | (37) | - | (143) |
| Net cash provided by investing activities | - | - | 191 | 878 | - | 1,069 |
| **Cash flows from financing activities:** | | | | | | |
| Repurchase of restricted stock shares for payroll tax withholding requirements | (5) | - | - | - | - | (5) |
| Deferred financing costs and other debt-related costs | - | (65) | - | (1) | - | (66) |
| Proceeds from noncontrolling investors in joint ventures | - | - | - | 5 | - | 5 |
| Redemption of noncontrolling investments in joint ventures | - | - | - | (6) | - | (6) |
| Distributions to noncontrolling investors in joint ventures | - | - | - | (100) | - | (100) |
| Changes in intercompany balances with affiliates, net | 17 | 1,566 | (575) | (1,008) | - | - |
| Borrowings under credit agreements | - | 795 | 30 | 16 | - | 841 |
| Issuance of long-term debt | - | 3,100 | - | - | - | 3,100 |
| Proceeds from receivables facility | - | - | - | 105 | - | 105 |
| Repayments of long-term indebtedness | - | (5,079) | (73) | (239) | - | (5,391) |
| Net cash provided by (used in) financing activities | 12 | 317 | (618) | (1,228) | - | (1,517) |
| Net change in cash and cash equivalents | - | - | 323 | 2 | - | 325 |
| Cash and cash equivalents at beginning of period | - | - | 174 | 64 | - | 238 |
| Cash and cash equivalents at end of period | $ - | $ - | $ 497 | $ 66 | $ - | $ 563 |

171

### Condensed Consolidating Statement of Cash Flows
### Year Ended December 31, 2016

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net cash provided by (used in) operating activities | $ 14 | $ (335) | $ 1,218 | $ 240 | $ - | $ 1,137 |
| **Cash flows from investing activities:** | | | | | | |
| Acquisitions of facilities and other related businesses | - | - | (3) | (120) | - | (123) |
| Purchases of property and equipment | - | - | (474) | (270) | - | (744) |
| Proceeds from disposition of hospitals and other ancillary operations | - | - | 16 | 127 | - | 143 |
| Proceeds from sale of property and equipment | - | - | 6 | 9 | - | 15 |
| Purchases of available-for-sale securities | - | - | (263) | (242) | - | (505) |
| Proceeds from sales of available-for-sale securities | - | - | 218 | 246 | - | 464 |
| Proceeds from sale of investments in unconsolidated affiliates | - | - | 403 | - | - | 403 |
| Distribution from Quorum Health Corporation | - | 1,219 | - | - | - | 1,219 |
| Increase in other investments | - | - | (156) | (86) | - | (242) |
| Net cash provided by (used in) investing activities | - | 1,219 | (253) | (336) | - | 630 |
| **Cash flows from financing activities:** | | | | | | |
| Repurchase of restricted stock shares for payroll tax withholding requirements | (6) | - | - | - | - | (6) |
| Deferred financing costs and other debt-related costs | - | (26) | - | - | - | (26) |
| Redemption of noncontrolling investments in joint ventures | - | - | - | (19) | - | (19) |
| Distributions to noncontrolling investors in joint ventures | - | - | - | (92) | - | (92) |
| Changes in intercompany balances with affiliates, net | (8) | 801 | (925) | 132 | - | - |
| Proceeds from sale-lease back | - | - | 147 | 12 | - | 159 |
| Borrowings under credit agreements | - | 4,848 | 28 | 3 | - | 4,879 |
| Proceeds from receivables facility | - | - | - | 107 | - | 107 |
| Repayments of long-term indebtedness | - | (6,507) | (64) | (144) | - | (6,715) |
| Net cash (used in) provided by financing activities | (14) | (884) | (814) | (1) | - | (1,713) |
| Net change in cash and cash equivalents | - | - | 151 | (97) | - | 54 |
| Cash and cash equivalents at beginning of period | - | - | 23 | 161 | - | 184 |
| Cash and cash equivalents at end of period | $ - | $ - | $ 174 | $ 64 | $ - | $ 238 |

172

### Condensed Consolidating Statement of Cash Flows
### Year Ended December 31, 2015

| | Parent Guarantor | Issuer | Other Guarantors | Non - Guarantors | Eliminations | Consolidated |
|---|---|---|---|---|---|---|
| | | | (In millions) | | | |
| Net cash (used in) provided by operating activities | $ (25) | $ 159 | $ 349 | $ 438 | $ - | $ 921 |
| **Cash flows from investing activities:** | | | | | | |
| Acquisitions of facilities and other related businesses | - | - | (21) | (36) | - | (57) |
| Purchases of property and equipment | - | - | (600) | (353) | - | (953) |
| Proceeds from disposition of hospitals and other ancillary operations | - | - | 21 | 134 | - | 155 |
| Proceeds from sale of property and equipment | - | - | 6 | 9 | - | 15 |
| Purchases of available-for-sale securities | - | - | (53) | (109) | - | (162) |
| Proceeds from sales of available-for-sale securities | - | - | 46 | 110 | - | 156 |
| Increase in other investments | - | - | (143) | (62) | - | (205) |
| Net cash used in investing activities | - | - | (744) | (307) | - | (1,051) |
| **Cash flows from financing activities:** | | | | | | |
| Proceeds from exercise of stock options | 25 | - | - | - | - | 25 |
| Repurchase of restricted stock shares for payroll tax withholding requirements | (20) | - | - | - | - | (20) |
| Stock buy-back | (159) | - | - | - | - | (159) |
| Deferred financing costs and other debt-related costs | - | (30) | - | - | - | (30) |
| Proceeds from noncontrolling investors in joint ventures | - | - | - | 47 | - | 47 |
| Redemption of noncontrolling investments in joint ventures | - | - | - | (36) | - | (36) |
| Distributions to noncontrolling investors in joint ventures | - | - | - | (100) | - | (100) |
| Changes in intercompany balances with affiliates, net | 179 | (181) | 89 | (87) | - | - |
| Borrowings under credit agreements | - | 4,880 | 34 | 8 | - | 4,922 |
| Proceeds from receivables facility | - | - | - | 206 | - | 206 |
| Repayments of long-term indebtedness | - | (4,828) | (77) | (145) | - | (5,050) |
| Net cash provided by (used in) financing activities | 25 | (159) | 46 | (107) | - | (195) |
| Net change in cash and cash equivalents | - | - | (349) | 24 | - | (325) |
| Cash and cash equivalents at beginning of period | - | - | 372 | 137 | - | 509 |
| Cash and cash equivalents at end of period | $ - | $ - | $ 23 | $ 161 | $ - | $ 184 |

173

**Item 9. Changes in and Disagreements with Accountants on Accounting and Financial Disclosure**

None.

**Item 9A. Controls and Procedures**

<u>Evaluation of Disclosure Controls and Procedures</u>

Our Chief Executive Officer and Chief Financial Officer, with the participation of other members of management, have evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a- 15(e) and 15d-15(e)) under the Securities and Exchange Act of 1934, as amended, as of the end of the period covered by this report. Based on such evaluations, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective (at the reasonable assurance level) to ensure that the information required to be included in this report has been recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and to ensure that the information required to be included in this report was accumulated and communicated to management, including our Chief Executive Officer and Chief Financial Officer, to allow timely decisions regarding required disclosure.

<u>Changes in Internal Control Over Financial Reporting</u>

During the three months ended December 31, 2017, we completed certain changes to our accounting processes related to our implementation of Accounting Standards Codification Topic 606, *Revenue from Contracts with Customers* ("ASC 606"), which was adopted on January 1, 2018. During that period, we updated our control activities for the adoption of the new accounting standard and the new accounting processes and methodologies established to evaluate contracts with our customers and determine the transaction price to allocate to our performance obligations with those customers as required in the five-step revenue recognition model in ASC 606. There have been no other changes in internal control over financial reporting that occurred during the period that have materially affected or are reasonably likely to materially affect our internal controls over financial reporting.

Management's report on internal control over financial reporting is included herein at page 175.

The attestation report from Deloitte & Touche LLP, our independent registered public accounting firm, on our internal control over financial reporting is included herein at page 176.

**Item 9B. Other Information**

None.

174

## Management's Report on Internal Control over Financial Reporting

We are responsible for the preparation and integrity of the consolidated financial statements appearing in our Annual Report on Form 10-K. The consolidated financial statements were prepared in conformity with accounting principles generally accepted in the United States of America and include amounts based on management's estimates and judgments. All other financial information in this report has been presented on a basis consistent with the information included in the consolidated financial statements.

We are also responsible for establishing and maintaining adequate internal controls over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934, as amended). We maintain a system of internal controls that is designed to provide reasonable assurance as to the fair and reliable preparation and presentation of the consolidated financial statements, as well as to safeguard assets from unauthorized use or disposition.

Our control environment is the foundation for our system of internal control over financial reporting and is embodied in our Code of Conduct. It sets the tone of our organization and includes factors such as integrity and ethical values. Our internal control over financial reporting is supported by formal policies and procedures which are reviewed, modified and improved as changes occur in business conditions and operations.

The Audit and Compliance Committee of the Board of Directors, which is composed solely of outside directors, meets periodically with members of management, the internal auditors and the independent registered public accounting firm to review and discuss internal control over financial reporting and accounting and financial reporting matters. The independent registered public accounting firm and internal auditors report to the Audit and Compliance Committee and have full and free access to the Audit and Compliance Committee at any time.

We conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. This evaluation included review of the documentation of controls, evaluation of the design effectiveness of controls, testing of the operating effectiveness of controls and a conclusion on this evaluation. We have concluded that our internal control over financial reporting was effective as of December 31, 2017, based on these criteria.

Deloitte & Touche LLP, an independent registered public accounting firm, has issued an attestation report on our internal control over financial reporting, which is included herein.

We do not expect that our disclosure controls and procedures or our internal controls will prevent all errors and all fraud. A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met. Further, the design of a control system must reflect the fact there are resource constraints and the benefits of controls must be considered relative to their costs. Because of the inherent limitations in all control systems, no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within the Company have been detected.

# REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Stockholders and the Board of Directors of
Community Health Systems, Inc.
Franklin, Tennessee

**Opinion on Internal Control over Financial Reporting**

We have audited the internal control over financial reporting of Community Health Systems, Inc. and subsidiaries (the "Company") as of December 31, 2017, based on criteria established in *Internal Control — Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). In our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2017, based on criteria established in *Internal Control — Integrated Framework (2013)* issued by COSO.

We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States) (PCAOB), the consolidated financial statements and financial statement schedule as of and for the year ended December 31, 2017 of the Company and our report dated February 28, 2018, expressed an unqualified opinion on those financial statements and schedule.

**Basis for Opinion**

The Company's management is responsible for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting, included in the accompanying *Management's Report on Internal Control over Financial Reporting.* Our responsibility is to express an opinion on the Company's internal control over financial reporting based on our audit. We are a public accounting firm registered with the PCAOB and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

We conducted our audit in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control based on the assessed risk, and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

**Definition and Limitations of Internal Control over Financial Reporting**

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that

176

controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

/s/ Deloitte & Touche LLP

Nashville, Tennessee
February 28, 2018

177

# PART III

## Item 10. Directors, Executive Officers and Corporate Governance

The Company has adopted a Code of Conduct that is applicable to all members of the Board of Directors and our officers, as well as employees of our subsidiaries. A copy of the current version of our Code of Conduct is available in the Company-Overview — Corporate Governance section of our internet website at www.chs.net/company-overview/corporate-governance. A copy of the Code of Conduct is also available in print, free of charge, to any stockholder who requests it by writing to Community Health Systems, Inc., Investor Relations, at 4000 Meridian Boulevard, Franklin, TN 37067. The Company intends to post amendments to or waivers, if any, from its Code of Conduct at this location on its website, in each case to the extent such amendment or waiver would otherwise require the filing of a Current Report on Form 8-K pursuant to Item 5.05 thereof.

The committee report of the Audit and Compliance Committee of the Board of Directors is presented below. The other information required by this Item is incorporated herein by reference to the Company's definitive proxy statement to be filed under Regulation 14A in connection with the Annual Meeting of the Stockholders of the Company scheduled to be held on May 15, 2018, under "General Information," "Members of the Board of Directors," "Information About our Executive Officers," and "Section 16(a) Beneficial Ownership Reporting Compliance."

## AUDIT AND COMPLIANCE COMMITTEE REPORT

The Audit and Compliance Committee of the Board of Directors of the Company is composed of four directors, each of whom is "independent" as defined by the applicable listing standards of the New York Stock Exchange, Nasdaq and Section 10A-3 of the Exchange Act. All of our Audit and Compliance Committee members meet the Securities and Exchange Commission definition of "audit committee financial expert." The Audit and Compliance Committee operates under a written charter adopted by the Board of Directors, which is posted on our corporate website (www.chs.net) and which is reviewed by the Committee annually, in conjunction with the Committee's annual self-evaluation. The Company's management is responsible for its internal controls and the financial reporting process. Our independent registered public accounting firm, Deloitte & Touche LLP, is responsible for performing an independent audit of our consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (United States) and to issue its reports thereon. The Audit and Compliance Committee is responsible for, among other things, monitoring and overseeing these processes, and recommending to the Board of Directors: (i) that the audited consolidated financial statements be included in the Company's Annual Report on Form 10-K; and (ii) the selection of the independent registered public accounting firm to audit the consolidated financial statements of the Company.

In keeping with that responsibility, the Audit and Compliance Committee has reviewed and discussed the Company's audited consolidated financial statements with management and with the independent registered public accounting firm, reviewed internal controls and accounting procedures and provided oversight review of the Company's corporate compliance program. In addition, the Audit and Compliance Committee has discussed with the Company's independent registered public accounting firm the matters required to be discussed by the applicable requirements of the Public Company Accounting Oversight Board.

The Audit and Compliance Committee discussed with the Company's internal auditors and independent registered public accounting firm the overall scope and plans for their respective audits. The Audit and Compliance Committee met with the internal auditors and the independent registered public accounting firm with and without management present to discuss the results of their examinations, their evaluations of the Company's internal controls and the overall quality of the Company's financial reporting.

The Audit and Compliance Committee has received the written disclosures and the letter from the independent registered public accounting firm required by applicable requirements of the Public Company Accounting Oversight Board regarding the independent accountant's communications with the audit committee concerning independence. The Audit and Compliance Committee has discussed with the independent registered public accounting firm its independence and also has reviewed the amount of fees paid to the independent registered accounting firm for audit and non-audit services.

Based on the Audit and Compliance Committee's discussions with management and the independent registered public accounting firm and the Audit and Compliance Committee's review of the representations of management and the materials it received from the independent registered public accounting firm as described above, the Audit and Compliance Committee recommended to the Board of Directors that the audited consolidated financial statements be included in the Company's Annual Report on Form 10-K for the year ended December 31, 2017 for filing with the SEC.

178

Case 3:19-cv-00461   Document 67-5   Filed 03/23/20   Page 28 of 53 PageID #: 961

This report is respectfully submitted by the Audit and Compliance Committee of the Board of Directors.

THE AUDIT AND COMPLIANCE COMMITTEE
John A. Clerico
Michael Dinkins
James S. Ely III, Chair
H. James Williams, Ph.D.

179

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 29 of 53 PageID #: 962

### Item 11. Executive Compensation

The information required by this Item is incorporated herein by reference to the Company's definitive proxy statement to be filed under Regulation 14A in connection with the Annual Meeting of the Stockholders of the Company scheduled to be held on May 15, 2018 under "Executive Compensation," "Compensation Committee Interlocks and Insider Participation," "Director Compensation," and "Compensation Committee Report."

### Item 12. Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters

The information required by this Item is incorporated herein by reference to the Company's definitive proxy statement to be filed under Regulation 14A in connection with the Annual Meeting of the Stockholders of the Company scheduled to be held on May 15, 2018 under "Security Ownership of Certain Beneficial Owners and Management" and "Equity Compensation Plan Information."

### Item 13. Certain Relationships and Related Transactions, and Director Independence

The information required by this Item is incorporated herein by reference to the Company's definitive proxy statement to be filed under Regulation 14A in connection with the Annual Meeting of the Stockholders of the Company scheduled to be held on May 15, 2018 under "General Information" and "Relationships and Certain Transactions Between the Company and Its Officers, Directors and 5% Beneficial Owners and Their Family Members."

### Item 14. Principal Accountant Fees and Services

The information required by this Item is incorporated herein by reference to the Company's definitive proxy statement to be filed under Regulation 14A in connection with the Annual Meeting of the Stockholders of the Company scheduled to be held on May 15, 2018 under "Fees Paid to Auditors" and "Pre-Approval of Audit and Non-Audit Services."

# PART IV

## Item 15. *Exhibits and Financial Statement Schedules*

Item 15(a) 1. *Financial Statements*

Reference is made to the index of financial statements and supplementary data under Item 8 in Part II.

Item 15(a) 2. *Financial Statement Schedules*

The following financial statement schedule is filed as part of this Form 10-K at page 198 hereof:

Schedule II — *Valuation and Qualifying Accounts*

All other schedules are omitted since the required information is not present or is not present in amounts sufficient to require submission of the schedule, or because the information required is included in the consolidated financial statements and notes thereto.

Item 15(a) 3. *Exhibits*

The following exhibits are either filed with this Report or incorporated herein by reference.

| No. | Description |
|---|---|
| 2.1 | Agreement and Plan of Merger, dated as of July 29, 2013, by and among Health Management Associates, Inc., Community Health Systems, Inc. and FWCT-2 Acquisition Corporation (incorporated by reference to Exhibit 2.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed July 30, 2013 (No. 001-15925)) |
| 2.2 | Amendment and Consent to Agreement and Plan of Merger, dated as of September 24, 2013, by and among Health Management Associates, Inc., Community Health Systems, Inc. and FWCT-2 Acquisition Corporation (incorporated by reference to Exhibit 2.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed September 25, 2013 (No. 001-15925)) |
| 2.3 | Separation and Distribution Agreement, dated April 29, 2016, by and between Community Health Systems, Inc. and Quorum Health Corporation (incorporated by reference to Exhibit 2.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 2, 2016 (No. 001-15925)) |
| 2.4 | Tax Matters Agreement, dated April 29, 2016, by and between Community Health Systems, Inc. and Quorum Health Corporation (incorporated by reference to Exhibit 2.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 2, 2016 (No. 001-15925)) |
| 2.5 | Employee Matters Agreement, dated April 29, 2016, by and between Community Health Systems, Inc. and Quorum Health Corporation (incorporated by reference to Exhibit 2.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 2, 2016 (No. 001-15925)) |
| 2.6 | Amendment to the Employee Matters Agreement, effective as of April 29, 2016, by and between Community Health Systems, Inc. and Quorum Health Corporation (incorporated by reference to Exhibit 2.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q filed November 2, 2016 (No. 001-15925)) |
| 3.1 | Form of Restated Certificate of Incorporation of Community Health Systems, Inc. (incorporated by reference to Exhibit 3.1 to Amendment No. 4 to Community Health Systems, Inc.'s Registration Statement on Form S-1/A filed June 8, 2000 (No. 333-31790)) |
| 3.2 | Certificate of Amendment to the Restated Certificate of Incorporation of Community Health Systems, Inc., dated May 18, 2010 (incorporated by reference to Exhibit 3.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 20, 2010 (No. 001-15925)) |

181

| No. | Description |
|---|---|
| 3.3 | Amended and Restated By-laws of Community Health Systems, Inc. (as of December 7, 2016) (incorporated by reference to Exhibit 3.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed December 12, 2016 (No. 001-15925)) |
| 4.1 | Form of Common Stock Certificate (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2014 filed May 7, 2014 (No. 001-15925)) |
| 4.2 | Senior Notes Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of November 22, 2011, by and among CHS/Community Health Systems, Inc., the Guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.6 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2011 filed February 23, 2012 (No. 001-15925)) |
| 4.3 | Form of 8.000% Senior Note due 2019 (included in Exhibit 4.2) |
| 4.4 | Registration Rights Agreement relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of November 22, 2011, by and among CHS/Community Health Systems, Inc., the Guarantors party thereto and the Initial Purchasers (incorporated by reference to Exhibit 4.8 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2011 filed February 23, 2012 (No. 001-15925)) |
| 4.5 | First Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of January 31, 2012, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and U.S. Bank National Association, as Trustee (incorporated by reference to Exhibit 4.35 to Community Health Systems, Inc.'s Registration Statement on Form S-4/A filed April 2, 2012 (No. 333-180265)) |
| 4.6 | Second Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of March 31, 2012, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and U.S. Bank National Association, as Trustee (incorporated by reference to Exhibit 4.36 to Community Health Systems, Inc.'s Registration Statement on Form S-4/A filed April 2, 2012 (No. 333-180265)) |
| 4.7 | Third Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of May 15, 2012, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and U.S. Bank National Association, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed July 18, 2012 (No. 001-15925)) |
| 4.8 | Fourth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of September 30, 2012, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.9 | Fifth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of March 31, 2013, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2013 filed April 30, 2013 (No. 001-15925)) |
| 4.10 | Sixth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of September 30, 2013, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2013 filed October 31, 2013 (No. 001-15925)) |

Case 3:19-cv-00461   Document 67-5   Filed 03/23/20   Page 32 of 53 PageID #: 965

| No. | Description |
| --- | --- |
| 4.11 | Seventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of February 12, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.12 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2013 filed February 26, 2014 (No. 001-15925)) |
| 4.12 | Eighth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of June 30, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2014 filed August 1, 2014 (No. 001-15925)) |
| 4.13 | Ninth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of December 1, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.14 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2014 filed February 25, 2015 (No. 001-15925)) |
| 4.14 | Tenth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of March 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2015 filed May 6, 2015 (No. 001-15925)) |
| 4.15 | Eleventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of June 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2015 filed August 4, 2015 (No. 001-15925)) |
| 4.16 | Twelfth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of September 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2015 filed November 3, 2015 (No. 001-15925)) |
| 4.17 | Thirteenth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of December 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.17 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2015 filed February 17, 2016 (No. 001-15925)) |
| 4.18 | Fourteenth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of March 31, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2016 filed May 3, 2016 (No. 001-15925)) |
| 4.19 | Fifteenth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 8.000% Senior Notes due 2019, dated as of September 30, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as successor Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2016 filed November 2, 2016 (No. 001-15925)) |

| No. | Description |
|---|---|
| 4.20 | Senior Notes Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of July 18, 2012, by and among CHS/Community Health Systems, Inc., the Guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed July 18, 2012 (No. 001-15925)) |
| 4.21 | Form of 7.125% Senior Note due 2020 (included in Exhibit 4.20) |
| 4.22 | First Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of September 30, 2012, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.6 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.23 | Second Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of March 31, 2013, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2013 filed April 30, 2013 (No. 001-15925)) |
| 4.24 | Third Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of September 30, 2013, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2013 filed October 31, 2013 (No. 001-15925)) |
| 4.25 | Fourth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of February 12, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.19 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2013 filed February 26, 2014 (No. 001-15925)) |
| 4.26 | Fifth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of June 30, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2013 filed August 1, 2014 (No. 001-15925)) |
| 4.27 | Sixth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of December 1, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.23 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2014 filed February 25, 2015 (No. 001-15925)) |
| 4.28 | Seventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of March 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2015 filed May 6, 2015 (No. 001-15925)) |
| 4.29 | Eighth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of June 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2015 filed August 4, 2015 (No. 001-15925)) |

Case 3:19-cv-00461   Document 67-5   Filed 03/23/20   Page 34 of 53 PageID #: 967

| No. | Description |
|-----|-------------|
| 4.30 | Ninth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of September 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2015 filed November 3, 2015 (No. 001-15925)) |
| 4.31 | Tenth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of December 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.29 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2015 filed February 17, 2016 (No. 001-15925)) |
| 4.32 | Eleventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of March 31, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2016 filed May 3, 2016 (No. 001-15925)) |
| 4.33 | Twelfth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 7.125% Senior Notes due 2020, dated as of September 30, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30 , 2016 filed November 2, 2016 (No. 001-15925)) |
| 4.34 | Amendment No. 1 and Reaffirmation Agreement, dated as of August 17, 2012, relating to the Amended and Restated Guarantee and Collateral Agreement, dated as of July 25, 2007, as amended and restated as of November 5, 2010, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the guarantors party thereto, and Credit Suisse AG, as Collateral Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.35 | First Lien Intercreditor Agreement, dated as of August 17, 2012, among Credit Suisse AG, as Collateral Agent, Credit Suisse AG, as authorized representative, Regions Bank, as Trustee and authorized representative, and the additional authorized representatives party thereto (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.36 | Copyright Security Agreement, dated as of August 17, 2012, among Community Health Systems, Inc., CHS Washington Holdings, LLC, Northwest Hospital, LLC, Quorum Health Resources, LLC, and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.3 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.37 | Trademark Security Agreement, dated as of August 17, 2012, among CHS/Community Health Systems, Inc., Blue Island Hospital Company, LLC, CHS Washington Holdings, LLC, Quorum Health Resources, LLC, Triad Healthcare Corporation, Youngstown Ohio Hospital Company, LLC, and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 4.38 | Senior Secured Notes Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of January 27, 2014, by and among FWCT-2 Escrow Corporation, Regions Bank, as Trustee, and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |

185

| No. | Description |
|---|---|
| 4.39 | Form of 5.125% Senior Secured Note due 2021 (included in Exhibit 4.38) |
| 4.40 | First Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of January 27, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee, and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.41 | Second Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of June 30, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2014 filed August 1, 2014 (No. 001-15925)) |
| 4.42 | Third Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of December 1, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.41 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2014 filed February 25, 2015 (No. 001-15925)) |
| 4.43 | Fourth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of March 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2015 filed May 6, 2015 (No. 001-15925)) |
| 4.44 | Fifth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of June 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2015 filed August 4, 2015 (No. 001-15925)) |
| 4.45 | Sixth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of September 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2015 filed November 3, 2015 (No. 001-15925)) |
| 4.46 | Seventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of December 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.54 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2015 filed February 17, 2016 (No. 001-15925)) |
| 4.47 | Eighth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of March 31, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2016 filed May 3, 2016 (No. 001-15925)) |

186

| No. | Description |
|---|---|
| 4.48 | Ninth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 5.125% Senior Secured Notes due 2021, dated as of September 30, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto, Regions Bank, as Trustee and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2016 filed November 2, 2016 (No. 001-15925)) |
| 4.49 | Senior Notes Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of January 27, 2014, by and among FWCT-2 Escrow Corporation and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.50 | Form of 6.875% Senior Note due 2022 (included in Exhibit 4.49) |
| 4.51 | First Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of January 27, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.52 | Second Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of June 30, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2014 filed August 1, 2014 (No. 001-15925)) |
| 4.53 | Third Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of December 1, 2014, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.46 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2014 filed February 25, 2015 (No. 001-15925)) |
| 4.54 | Fourth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of March 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2015 filed May 6, 2015 (No. 001-15925)) |
| 4.55 | Fifth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of June 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2015 filed August 4, 2015 (No. 001-15925)) |
| 4.56 | Sixth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of September 30, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2015 filed November 3, 2015 (No. 001-15925)) |
| 4.57 | Seventh Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of December 31, 2015, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.63 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2015 filed February 17, 2016 (No. 001-15925)) |

187

Case 3:19-cv-00461   Document 67-5   Filed 03/23/20   Page 37 of 53 PageID #: 970

| No. | Description |
|---|---|
| 4.58 | Eighth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of March 31, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2016 filed May 3, 2016 (No. 001-15925)) |
| 4.59 | Ninth Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.875% Senior Notes due 2022, dated as of September 30, 2016, by and among CHS/Community Health Systems, Inc., the guarantors party thereto and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2016 filed November 2, 2016 (No. 001-15925)) |
| 4.60 | Secured Notes Registration Rights Agreement, dated as of January 27, 2014, by and among FWCT-2 Escrow Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Credit Suisse Securities (USA) LLC, each as a representative of the initial purchasers (incorporated by reference to Exhibit 4.5 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.61 | Unsecured Notes Registration Rights Agreement, dated as of January 27, 2014, by and among FWCT-2 Escrow Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Credit Suisse Securities (USA) LLC, each as a representative of the initial purchasers (incorporated by reference to Exhibit 4.6 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.62 | Secured Notes Registration Rights Agreement Joinder, dated as of January 27, 2014, by and among CHS/Community Health Systems, Inc., the subsidiaries party thereto, and Merrill Lynch, Pierce, Fenner & Smith Incorporated and Credit Suisse Securities (USA) LLC, each as a representative of the initial purchasers thereto (incorporated by reference to Exhibit 4.7 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.63 | Unsecured Notes Registration Rights Agreement Joinder, dated as of January 27, 2014, by and among CHS/Community Health Systems, Inc., the subsidiaries party thereto, and Merrill Lynch, Pierce, Fenner & Smith Incorporated and Credit Suisse Securities (USA) LLC, each as a representative of the initial purchasers (incorporated by reference to Exhibit 4.8 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 4.64 | Senior Secured Notes Indenture relating to CHS/Community Health Systems, Inc.'s 6.250% Senior Secured Notes due 2023, dated as of March 16, 2017, by and among CHS/Community Health Systems, Inc. and Regions Bank, as Trustee (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 16, 2017 (No. 001-15925)) |
| 4.65 | Form of 6.250% Senior Secured Note due 2023 (included in Exhibit 4.64) |
| 4.66 | First Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.250% Senior Secured Notes due 2023, dated March 16, 2017, by and among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the Guarantors party thereto, Regions Bank, as Trustee, and Credit Suisse AG, as collateral agent (incorporated by reference to Exhibit 4.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 16, 2017 (No. 001-15925)) |
| 4.67 | Second Supplemental Indenture relating to CHS/Community Health Systems, Inc.'s 6.250% Senior Secured Notes due 2023, dated May 12, 2017, by and among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the Guarantors party thereto, Regions Bank, as Trustee, and Credit Suisse AG, as collateral agent (incorporated by reference to Exhibit 4.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 12, 2017 (No. 001-15925)) |

188

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 38 of 53 PageID #: 971

| No. | Description |
| --- | --- |
| 10.1 | Amended and Restated Guarantee and Collateral Agreement, dated as of July 25, 2007, as amended and restated as of November 5, 2010, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiaries of CHS/Community Health Systems, Inc. from time to time party thereto and Credit Suisse AG, as Collateral Agent (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed November 9, 2010 (No. 001-15925)) |
| 10.2 | Third Amendment and Restatement Agreement, dated as of January 27, 2014, to the Credit Agreement dated as of July 25, 2007, as amended and restated as of November 5, 2010 and as of February 2, 2012, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiaries of CHS/Community Health Systems, Inc. party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 10.3 | Third Amended and Restated Credit Agreement, dated as of January 27, 2014, to the Credit Agreement dated as of July 25, 2007, as amended and restated as of November 5, 2010 and as of February 2, 2012, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiaries of CHS/Community Health Systems, Inc. party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 10.4 | Amendment No. 1 and Incremental Term Loan Assumption Agreement, dated as of March 9, 2015, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiary guarantors party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 10, 2015 (No. 001-15925)) |
| 10.5 | Incremental Term Loan Assumption Agreement, dated as of May 18, 2015, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiary guarantors party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 18, 2015 (No. 001-15925)) |
| 10.6 | Amendment No. 2, dated as of December 5, 2016, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiary guarantors party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed December 6, 2016 (No. 001-15925)) |
| 10.7 | Loan Modification Agreement, dated as of May 30, 2017, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiary guarantors party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 31, 2017 (No. 001-15925)) |
| 10.8 | Amendment No. 3, dated as of February 26, 2018, among CHS/Community Health Systems, Inc., Community Health Systems, Inc., the subsidiary guarantors party thereto, the lenders party thereto and Credit Suisse AG, as Administrative Agent and Collateral Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed February 27, 2018 (No. 001-15925)) |

| No. | Description |
| --- | --- |
| 10.9 | Contingent Value Rights Agreement, dated as of January 27, 2014, by and between Community Health Systems, Inc. and American Stock Transfer & Trust Company, LLC, as Trustee (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 28, 2014 (No. 001-15925)) |
| 10.10 | Receivables Sale Agreement, dated as of March 21, 2012, among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC (formerly Community Health Systems Professional Services Corporation), as Collection Agent (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 23, 2012 (No. 001-15925)) |
| 10.11 | Receivables Purchase and Contribution Agreement, dated as of March 21, 2012, among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC (formerly Community Health Systems Professional Services Corporation), as Collection Agent (incorporated by reference to Exhibit 10.2 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 23, 2012 (No. 001-15925)) |
| 10.12 | Receivables Loan Agreement, dated as of March 21, 2012, among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC (formerly Community Health Systems Professional Services Corporation), as Collection Agent (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 23, 2012 (No. 001-15925)) |
| 10.13 | First Omnibus Amendment, dated July 30, 2012, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2012 filed November 1, 2012 (No. 001-15925)) |
| 10.14 | Second Omnibus Amendment, dated March 7, 2013, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed March 8, 2013 (No. 001-15925)) |
| 10.15 | Third Omnibus Amendment, dated March 31, 2014, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed April 1, 2014 (No. 001-15925)) |

| No. | Description |
| --- | --- |
| 10.16 | Fourth Amendment, dated August 29, 2014, to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2014 filed November 4, 2014 (No. 001-15925)) |
| 10.17 | Fifth Amendment, dated February 28, 2015, to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2015 filed May 6, 2015 (No. 001-15925)) |
| 10.18 | Fourth Omnibus Amendment, dated March 31, 2015, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/ Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed April 1, 2015 (No. 001-15925)) |
| 10.19 | Fifth Omnibus Amendment, dated November 13, 2015, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/ Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed November 13, 2015 (No. 001-15925)) |
| 10.20 | Sixth Omnibus Amendment, dated November 18, 2016, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/ Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed November 21, 2016 (No. 001-15925)) |
| 10.21 | Sixth Amendment, dated December 16, 2016, to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.19 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2016 filed February 21, 2017 (No. 001-15925)) |

| No. | Description |
|---|---|
| 10.22 | Assignment and Acceptance and Seventh Omnibus Amendment, dated June 23, 2017, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed June 23, 2017 (No. 001-15925)) |
| 10.23 | Eighth Omnibus Amendment, dated November 13, 2017, to the Receivables Sale Agreement among CHS/Community Health Systems, Inc., the originators party thereto and CHSPSC, LLC, as Collection Agent, to the Receivables Purchase and Contribution Agreement among CHS/Community Health Systems, Inc., CHS Receivables Funding, LLC and CHSPSC, LLC, as Collection Agent, and to the Receivables Loan Agreement among CHS Receivables Funding, LLC, the lenders party thereto, the managing agents party thereto, Crédit Agricole Corporate and Investment Bank, as Administrative Agent, and CHSPSC, LLC, as Collection Agent, all dated as of March 21, 2012 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed November 13, 2017 (No. 001-15925)) |
| 10.24† | Form of Indemnification Agreement between Community Health Systems, Inc. and its directors and executive officers (incorporated by reference to Exhibit 10.8 to Amendment No. 2 to Community Health Systems, Inc.'s Registration Statement on Form S-1/A filed May 2, 2000 (No. 333-31790)) |
| 10.25† | CHS/Community Health Systems, Inc. Amended and Restated Supplemental Executive Retirement Plan, as amended and restated as of January 1, 2009 (incorporated by reference to Exhibit 10.13 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2008 filed February 27, 2009 (No. 001-15925)) |
| 10.26† | Amendment No. 1, dated as of September 13, 2011, to the CHS/Community Health Systems, Inc. Amended and Restated Supplemental Executive Retirement Plan, as amended and restated as of January 1, 2009 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2011 filed October 28, 2011 (No. 001-15925)) |
| 10.27† | Amendment No. 2, dated as of January 1, 2014, to the CHS/Community Health Systems, Inc. Amended and Restated Supplemental Executive Retirement Plan, as amended and restated as of January 1, 2009 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2014 filed May 7, 2014 (No. 001-15925)) |
| 10.28† | Community Health Systems Supplemental Executive Benefits, amended and restated effective April 1, 2015(incorporated by reference to Exhibit 10.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2015, filed August 4, 2015 (No. 001-15925)) |
| 10.29† | Supplemental Executive Retirement Plan Trust, dated June 1, 2005, by and between CHS/Community Health Systems, Inc., as grantor, and Wachovia Bank, N.A., as Trustee (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Current Report on Form 8-K filed June 1, 2005 (No. 001-15925)) |
| 10.30† | CHS/Community Health Systems, Inc. Deferred Compensation Plan, amended and restated effective January 1, 2014 (incorporated by reference to Exhibit 10.25 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2013 filed February 26, 2014 (No. 001-15925)) |

192

| No. | Description |
|---|---|
| 10.31† | Community Health Systems Deferred Compensation Plan Trust, amended and restated effective February 26, 1999 (incorporated by reference to Exhibit 10.18 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2002 filed March 27, 2003 (No. 001-15925)) |
| 10.32† | CHS NQDCP, effective as of September 1, 2009 (incorporated by reference to Exhibit 4.2 to Community Health Systems, Inc.'s Registration Statement on Form S-8 filed December 11, 2009 (No. 333-163691)) |
| 10.33† | CHS NQDCP Adoption Agreement, executed as of August 11, 2009 (incorporated by reference to Exhibit 4.3 to Community Health Systems, Inc.'s Registration Statement on Form S-8 filed December 11, 2009 (No. 333-163691)) |
| 10.34† | Guarantee, dated December 9, 2009, made by Community Health Systems, Inc. in favor of CHS/Community Health Systems, Inc. with respect to CHS/Community Health Systems, Inc.'s payment obligations under the CHS/Community Health Systems, Inc. Deferred Compensation Plan and the NQDCP (incorporated by reference to Exhibit 4.4 to Community Health Systems, Inc.'s Registration Statement on Form S-8 filed December 11, 2009 (No. 333-163691)) |
| 10.35† | Community Health Systems, Inc. 2004 Employee Performance Incentive Plan, as amended and restated as of February 26, 2014 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2014 filed August 1, 2014 (No. 001-15925)) |
| 10.36† | Amendment No. 1, dated February 22, 2017, to Community Health Systems, Inc. 2004 Employee Performance Incentive Plan, as amended and restated as of February 26, 2014 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2017 filed May 2, 2017 (No. 001-15925)) |
| 10.37† | Community Health Systems, Inc. Directors' Fees Deferral Plan, as amended and restated as of December 10, 2008 (incorporated by reference to Exhibit 10.15 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2008 filed February 27, 2009 (No. 001-15925)) |
| 10.38† | Community Health Systems, Inc. 2000 Stock Option and Award Plan, as amended and restated as of March 20, 2013 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2013 filed July 31, 2013 (No. 001-15925)) |
| 10.39† | Form of Nonqualified Stock Option Agreement (Employee) for Community Health Systems, Inc. 2000 Stock Option and Award Plan (incorporated by reference to Exhibit 10.15 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2009 filed February 26, 2010 (No. 001-15925)) |
| 10.40† | Community Health Systems, Inc. 2009 Stock Option and Award Plan, as amended and restated as of March 16, 2016 (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 19, 2016 (No. 001-15925)) |
| 10.41† | Form of Nonqualified Stock Option Agreement (Employee) for Community Health Systems, Inc. 2009 Stock Option and Award Plan (incorporated by reference to Exhibit 10.39 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2013 filed February 26, 2014 (No. 001-15925)) |
| 10.42† | Form of Restricted Stock Award Agreement for Community Health Systems, Inc. 2009 Stock Option and Award Plan (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2013 filed July 31, 2013 (No. 001-15925)) |

193

| No. | Description |
|---|---|
| 10.43† | Form of Performance Based Restricted Stock Award Agreement (Most Highly Compensated Executive Officers) for Community Health Systems, Inc. 2009 Stock Option and Award Plan (for awards granted from January 1, 2014 through February 29, 2016)(incorporated by reference to Exhibit 10.4 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2013 filed July 31, 2013 (No. 001-15925)) |
| 10.44† | Form of Performance Based Restricted Stock Award Agreement (Most Highly Compensated Executive Officers) for Community Health Systems, Inc. 2009 Stock Option and Award Plan (for awards granted from March 1, 2016 through February 28, 2017)(incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2016 filed May 3, 2016 (No. 001-15925)) |
| 10.45† | Form of Performance Based Restricted Stock Award Agreement (Senior Officers) for Community Health Systems, Inc. 2009 Stock Option and Award Plan (for awards granted beginning March 1, 2017)(incorporated by reference to Exhibit 10.2 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2017 filed May 2, 2017 (No. 001-15925)) |
| 10.46†* | Form of Performance Based Restricted Stock Award Agreement (Senior Officers) for Community Health Systems, Inc. 2009 Stock Option and Award Plan (for awards granted beginning March 1, 2018) |
| 10.47† | Form of Director Restricted Stock Unit Award Agreement for Community Health Systems, Inc. 2009 Stock Option and Award Plan (incorporated by reference to Exhibit 10.5 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended June 30, 2013 filed July 31, 2013 (No. 001-15925)) |
| 10.48† | Form of Amended and Restated Change in Control Severance Agreement effective December 31, 2008 (incorporated by reference to Exhibit 10.22 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2008 filed February 27, 2009 (No. 001-15925)) |
| 10.49† | Form of Change in Control Severance Agreement (for executive officers appointed since January 1, 2009) (incorporated by reference to Exhibit 10.3 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended March 31, 2014 filed May 7, 2014 (No. 001-15925)) |
| 10.50 | Participation Agreement entered into as of January 1, 2005, by and between Community Health Systems Professional Services Corporation and HealthTrust Purchasing Group, L.P. (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed January 7, 2005 (No. 001-15925)) |
| 10.51 | Amendment effective as of January 1, 2015, by and between CHSPSC, LLC and HealthTrust Purchasing Group, L.P., to Participation Agreement entered into as of January 1, 2005, by and between Community Health Systems Professional Services Corporation and HealthTrust Purchasing Group, L.P. (incorporated by reference to Exhibit 10.36 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2014 filed February 25, 2015 (No. 001-15925)) |
| 10.52† | Consultancy Agreement, dated May 16, 2017, by and between CHSPSC, LLC and Larry Cash (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed May 17, 2017 (No. 001-15925)) |
| 10.53† | Consultancy Agreement, dated December 1, 2017, by and between CHSPSC, LLC and Michael T. Portacci (incorporated by reference to Exhibit 10.1 to Community Health Systems, Inc.'s Current Report on Form 8-K filed December 1, 2017 (No. 001-15925)) |

194

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 44 of 53 PageID #: 977

| No. | Description |
|---|---|
| 10.54†* | Executive Deferred Compensation Award between Dr. Lynn Simon and CHSPSC, LLC, dated December 12, 2017 |
| 12* | Computation of Ratio of Earnings to Fixed Charges |
| 21* | List of Subsidiaries |
| 23.1* | Consent of Deloitte & Touche LLP |
| 31.1* | Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2* | Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1** | Certification of Chief Executive Officer pursuant to 18 U.S.C. Section 1350, adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 32.2** | Certification of Chief Financial Officer pursuant to 18 U.S.C. Section 1350, adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 99.1 | Corporate Integrity Agreement, dated July 28, 2014, between Community Health Systems, Inc. and the Office of Inspector General of the United States Department of Health and Human Services (incorporated by reference to Exhibit 99.1 to Community Health Systems, Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2014 filed November 4, 2014 (No. 001-15925)) |
| 99.2 | Order Approving Derivative Settlement and Order of Dismissal with Prejudice, dated January 17, 2017 and Stipulation of Settlement, dated November 18, 2016 (incorporated by reference to Exhibit 99.2 to Community Health Systems, Inc.'s Annual Report on Form 10-K for the year ended December 31, 2016 filed February 21, 2017 (No. 001-15925)) |
| 101.INS* | XBRL Instance Document |
| 101.SCH* | XBRL Taxonomy Extension Schema |
| 101.CAL* | XBRL Taxonomy Extension Calculation Linkbase |
| 101.DEF* | XBRL Taxonomy Extension Definition Linkbase |
| 101.LAB* | XBRL Taxonomy Extension Label Linkbase |
| 101.PRE* | XBRL Taxonomy Extension Presentation Linkbase |

\* Filed herewith.
\*\* Furnished herewith.
† Indicates a management contract or compensatory plan or arrangement

**Item 16.** *Form 10-K Summary*

    **None.**

# SIGNATURES

Pursuant to the requirements of section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

COMMUNITY HEALTH SYSTEMS, INC.

By: _____ /s/ Wayne T. Smith _____
Wayne T. Smith
*Chairman of the Board
and Chief Executive Officer*

Date: February 28, 2018

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| Name | Title | Date |
|---|---|---|
| /s/ WAYNE T. SMITH<br>Wayne T. Smith | Chairman of the Board and Chief Executive Officer | February 28, 2018 |
| /s/ THOMAS J. AARON<br>Thomas J. Aaron | Executive Vice President and Chief Financial Officer | February 28, 2018 |
| /s/ KEVIN J. HAMMONS<br>Kevin J. Hammons | Senior Vice President, Assistant Chief Financial Officer and Chief Accounting Officer | February 28, 2018 |
| /s/ TIM L. HINGTGEN<br>Tim L. Hingtgen | President, Chief Operating Officer and Director | February 28, 2018 |
| /s/ JOHN A. CLERICO<br>John A. Clerico | Director | February 28, 2018 |
| /s/ MICHAEL DINKINS<br>Michael Dinkins | Director | February 28, 2018 |
| /s/ JAMES S. ELY III<br>James S. Ely III | Director | February 28, 2018 |
| /s/ JOHN A. FRY<br>John A. Fry | Director | February 28, 2018 |
| /s/ WILLIAM NORRIS JENNINGS, M.D.<br>William Norris Jennings, M.D. | Director | February 28, 2018 |
| /s/ K. RANGA KRISHNAN, MBBS<br>K. Ranga Krishnan, MBBS | Director | February 28, 2018 |
| /s/ JULIA B. NORTH<br>Julia B. North | Director | February 28, 2018 |
| /s/ H. JAMES WILLIAMS, PH.D. H.<br>James Williams, Ph.D. | Director | February 28, 2018 |

196

# REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Stockholders and the Board of Directors of
Community Health Systems, Inc.
Franklin, Tennessee

## Opinion on the Financial Statement Schedule

We have audited the consolidated financial statements of Community Health Systems, Inc. and subsidiaries (the "Company") as of December 31, 2017 and 2016, and for each of the three years in the period ended December 31, 2017, and the Company's internal control over financial reporting as of December 31, 2017, and have issued our reports thereon dated February 28, 2018; such consolidated financial statements and reports are included elsewhere in this Form 10-K. Our audits also included the consolidated financial statement schedule of the Company listed in the Index at Item 15. This financial statement schedule is the responsibility of the Company's management. Our responsibility is to express an opinion on the Company's financial statement schedule based on our audits. In our opinion, such financial statement schedule, when considered in relation to the financial statements taken as a whole, presents fairly, in all material respects, the information set forth therein.

/s/ Deloitte & Touche LLP

Nashville, Tennessee
February 28, 2018

Case 3:19-cv-00461    Document 67-5    Filed 03/23/20    Page 47 of 53 PageID #: 980

**Community Health Systems, Inc. and Subsidiaries**

### Schedule II — Valuation and Qualifying Accounts

| Description | Balance at Beginning of Year | | Acquisitions and Dispositions | | Charged to Costs and Expenses | | Write-offs | | Balance at End of Year |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | (In millions) | | | | |
| Year ended December 31, 2017 allowance for doubtful accounts | $ | 3,773 | $ | (21) | $ | 3,054 | $ | (2,936) | $ 3,870 |
| Year ended December 31, 2016 allowance for doubtful accounts | $ | 4,110 | $ | (365) | $ | 2,849 | $ | (2,821) | $ 3,773 |
| Year ended December 31, 2015 allowance for doubtful accounts | $ | 3,504 | $ | (17) | $ | 3,168 | $ | (2,545) | $ 4,110 |

198

**Exhibit 23.1**

## CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

We consent to the incorporation by reference in Registration Statement No. 333-203918 on Form S-3 and Registration Statement Nos. 333-61614, 333-100349, 333-107810, 333-121282, 333-144525, 333-163688, 333-163689, 333-163691, 333-176893, 333-188343, 333-190260, 333-197813, 333-207772, 333-212874, and 333-214389 on Form S-8 of our reports dated February 28, 2018, relating to the consolidated financial statements and consolidated financial statement schedule of Community Health Systems, Inc. and subsidiaries, and the effectiveness of Community Health Systems, Inc. and subsidiaries' internal control over financial reporting, appearing in this Annual Report on Form 10-K of Community Health Systems, Inc. and subsidiaries for the year ended December 31, 2017.

/s/ Deloitte & Touche LLP

Nashville, Tennessee
February 28, 2018

**Exhibit 31.1**

## CERTIFICATION PURSUANT TO SECTION 302 OF THE
## SARBANES-OXLEY ACT OF 2002

I, Wayne T. Smith, certify that:

1. I have reviewed this annual report on Form 10-K of Community Health Systems, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal controls over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors:

a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

/s/ Wayne T. Smith
_____
Wayne T. Smith
Chairman of the Board
and Chief Executive Officer

Date: February 28, 2018

Exhibit 31.2

**CERTIFICATION PURSUANT TO SECTION 302 OF THE
SARBANES-OXLEY ACT OF 2002**

I, Thomas J. Aaron, certify that:

1. I have reviewed this annual report on Form 10-K of Community Health Systems, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and we have:

a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal controls over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors:

a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

/s/ Thomas J. Aaron
_____

Thomas J. Aaron
Executive Vice President and
Chief Financial Officer

Date: February 28, 2018

**Exhibit 32.1**

**CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT
TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of Community Health Systems, Inc. (the "Company") on Form 10-K for the period ended December 31, 2017, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Wayne T. Smith, Chairman of the Board and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

/s/ Wayne T. Smith
Wayne T. Smith
Chairman of the Board and
Chief Executive Officer

February 28, 2018

**Exhibit 32.2**

**CERTIFICATION PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of Community Health Systems, Inc. (the "Company") on Form 10-K for the period ended December 31, 2017, as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Thomas J. Aaron, Executive Vice President and Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1) The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

/s/ Thomas J. Aaron
Thomas J. Aaron
Executive Vice President and
Chief Financial Officer

February 28, 2018