UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALEB PADILLA, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, LARRY CASH, and THOMAS J. AARON,<br><br>        Defendants. | Case No. 3:19-cv-00461<br><br><br>Judge Eli J. Richardson<br>Magistrate Judge Barbara D. Holmes |

## <u>REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Steven A. Riley (BPR #006258)
Milton S. McGee, III (BPR #024150)
Carson W. King (BPR #034305)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
615-320-3700 (Telephone)
615-320-3737 (Facsimile)
sriley@rwjplc.com
tmcgee@rwjplc.com
cking@rwjplc.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.  Plaintiffs' speculation does not support a strong inference of scienter. ........................2

    B.  Plaintiffs fail to plead facts establishing any misrepresentation. ..................................6

    C.  Plaintiffs' claimed "omissions" are not omissions at all. ............................................9

CONCLUSION.....................................................................................................................10

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                     **Page(s)**

*Chapman v. Mueller Water Prods.*
   2020 U.S. Dist. LEXIS 102389 (S.D.N.Y June 11, 2020)........................................................7

*DiLeo v. Ernst & Young*
   901 F.2d 624 (7th Cir. 1990) ...............................................................................................9

*Doshi v. Gen. Cable Corp.*
   823 F.3d 1032 (6th Cir. 2016) .............................................................................................2

*Dougherty v. Esperion Therapeutics, Inc*
   905 F.3d 971 (6th Cir. 2018) ...............................................................................................2

*Frank v. Dana Corp. ("Dana II")*
   190 F.3d 930 (9th Cir. 1999) ...............................................................................................2

*Harris v. AmTrust Fin. Servs.*
   135 F. Supp. 3d 155 (S.D.N.Y. 2015)...................................................................................8

*In re Burlington Coat Factory Sec. Litig.*
   114 F.3d 1410 (3d Cir. 1997)...............................................................................................3

*In re Cirrus Logic Sec. Litig.*
   946 F. Supp. 1446 (N.D. Cal. 1996) ....................................................................................6

*In re Commtouch Software Ltd.*
   2002 U.S. Dist. LEXIS 13742 (N.D. Cal. July 24, 2002).....................................................8

*In re Comshare Inc. Sec. Litig.*
   183 F.3d 542 (6th Cir. 1999) ...............................................................................................7

*In re Huffy Corp. Sec. Litig.*
   577 F. Supp. 2d 968 (S.D. Ohio 2008) .................................................................................3

*In re Maxwell Techs., Inc. Sec. Litig.*
   18 F. Supp. 3d 1023 (S.D. Cal. 2014)...................................................................................6

*In re Omnicare, Inc. Sec. Litig.* ("*Omnicare III*")
   769 F. 3d 455 (6th Cir. 2014) ......................................................................................... 1-4

*In re Omnicare, Inc. Sec. Litig.*
   2013 U.S. Dist. LEXIS 42973 (E.D. Ky. Mar. 27, 2013) ………………………………… 10

*In re Sprint Corp. Sec. Litig.*
    232 F. Supp. 1193 (D. Kan. 2002) ...............................................................................................2

*Kane v. Madge Networks N.V.*
    2000 U.S. Dist. LEXIS 19984 (N.D. Cal. May 25, 2000) .........................................................2

*Ley v. Visteon Corp.*
    543 F. 3d 390 (6th Cir. 2009) ................................................................................................3, 5

*Payne v. DeLuca*
    433 F. Supp. 2d 547 (W.D. Pa. 2006).........................................................................................7

*Pittman v. Unum Grp.*
    2020 U.S. Dist. LEXIS 97379 (E.D. Tenn. June 1, 2020).............................................7, 9, 10

*PR Diamonds, Inc. v. Chandler*
    364 F.3d 671 (6th Cir. 2004) ......................................................................................................3

*Simpson v. Specialty Retail Concepts*
    823 F. Supp. 353 (M.D.N.C. 1993) ..........................................................................................10

*Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*
    412 F.3d 103 (2d Cir. 2005)........................................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007)......................................................................................................................2

*Thor Power Tool Co. v. Commissioner*
    439 U.S. 522 (1979)......................................................................................................................6

*Weiner v. Tivity Health, Inc.*
    365 F. Supp. 3d 900 (M.D. Tenn. 2019).....................................................................................2

*Zwick Partners, LP v. Quorum Health Corp.*
    2018 U.S. Dist. LEXIS 97942 (M.D. Tenn. Apr. 19, 2018)....................................................3, 8

iii

# I.    INTRODUCTION

Silence often speaks louder than words. Plaintiffs' meaningful silence on a core assertion of this Motion to Dismiss – that the Amended Complaint bases the "scienter" and "falsity" elements of Plaintiffs' securities fraud claims upon nothing more than unsupported *speculations* and the *inferences* Plaintiffs eagerly draw from them – speaks volumes. Indeed, without any sufficient factual basis, Plaintiffs simply conclude that the Company's[1] estimates of uncollectible revenue during the Class Period were *false* when made and that the Individual Defendants must have known this and intended to hide the truth from investors. Upon this foundation of sand, Plaintiffs seek to construct an entire case of fraud – complete with dreamed-up motives. But because the *facts* Plaintiffs plead fail to establish the strong inference of fraud required by law, Plaintiffs' speculation and conjured-up stories of motive cannot save their case from collapse.

Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to protect companies from just such speculative claims.  As the Sixth Circuit aptly put it, the PSLRA is like an "elephant-sized boulder" that blocks the path of speculative securities fraud claims, and its requirements "are not easily satisfied."[2] In all of the collective ninety-one pages of the Amended Complaint and Plaintiffs' response, Plaintiffs speculate – but detail no *facts* –  to establish that the Company's estimates of uncollectible revenue were false when made and that the Defendants must have known it. Accordingly, the Amended Complaint fails to state any claim of federal securities fraud and should be dismissed with prejudice.

---

[1] "CHSI" or the "Company" means Defendant Community Health System, Inc. "Individual Defendants" means Wayne T. Smith, Larry Cash, and Thomas J. Aaron. "Defendants" means CHSI and Individual Defendants, collectively.

[2] *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014) ("*Omnicare III*").

## II.   <u>ARGUMENT</u>

**A.  Plaintiffs' speculation does not support a strong inference of scienter.**

Plaintiffs seek to sidestep the fact that their central theory rests on mere speculation and conjecture piled atop one another.[3] But they cannot avoid the fact that the Amended Complaint fails to plead any particularized allegations of actual knowledge of falsity by any Defendant.[4] Plaintiffs plead no details about any Defendant's knowledge at any particular time concerning the alleged shortfall in the Company's estimate of uncollectible revenue. And Plaintiffs fare no better with their vaunted confidential witnesses. None of them assert any personal knowledge of fraudulent intent by any of the Defendants or that they even spoke with an Individual Defendant about the estimated uncollectible revenue or the methodologies the Company used to estimate uncollectible revenue. The confidential witness statements simply are not sufficiently descriptive

---

[3] One such attempt to deflect is the baseless assertion that, by citing the *Helwig* factors in their brief, Defendants applied an outdated legal standard. (Pl. Br. at 25-26).  But as Defendants make clear in their brief, the Court must consider the allegations in the Amended Complaint holistically as the Supreme Court instructed. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007); (Def Br. at 23).  That said, as Judge Crenshaw stated in *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 915 (M.D. Tenn. 2019), consideration of the *Helwig* factors is proper when viewing the factual allegations of the complaint collectively and holistically consistent with *Tellabs*. Indeed, post-*Tellabs*, the Sixth Circuit has repeatedly affirmed that the *Helwig* factors remain relevant to the analysis of scienter. *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 981 (6th Cir. 2018) (applying *Tellabs* test with reference to *Helwig* factors); *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1041 (6th Cir. 2016) (same); *Omnicare III*, 769 F.3d at 473, 484 (same); *Frank v. Dana Corp. ("Dana II")*, 646 F.3d 954, 958 n.2 (6th Cir. 2011) (same).

[4] Actual knowledge of falsity is required when the allegations relate to soft information, i.e., predictions about the future and matters of opinion. *Omnicare III*, 769 F.3d at 470. *See In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 1193, 1227-28 (D. Kan. 2002) ("Accounts receivable reserves are relatively 'soft' information, despite the fact that they are expressed in dollars and cents") (quoting *Kane v. Madge Networks N.V.*, 2000 U.S. Dist. LEXIS 19984, at *16 (N.D. Cal. May 25, 2000)). Here, Defendants' statements regarding uncollectible revenue are forward-looking and were accompanied by sufficient cautionary language, and, accordingly, are protected by the safe harbor and bespeaks caution doctrines. (Def. Br. at 34-35).

and specific enough (indeed, they do not even allege that the Company's uncollectible revenue was misstated) to state a claim. *Omnicare III*, 769 F.3d at 483.[5]

With no allegations of direct knowledge, Plaintiffs are left with nothing but their speculation that the Defendants "must have known" the estimates were false when made. As their story goes, because the Company took a $591 million charge in connection with its required change to the new ASC 606 methodology for estimating its uncollectible revenue, the Defendants must have known that their estimates for uncollectible revenue under the old ASC 605 methodology were false when made, or they "turned a blind eye" to their falsity. Plaintiffs then construct a motive from whole cloth,[6] speculating that Defendants intentionally understated their estimated uncollectible revenue to avoid triggering debt covenants. Presto! Plaintiffs claim a securities fraud case out of nothing more than a required change in accounting methodology.

But Plaintiffs' speculation is not enough (and is factually wrong). *Omnicare III* mandates dismissal here. There, the Sixth Circuit upheld the district court's dismissal of the complaint on

---

[5] *See also Zwick Partners, LP v. Quorum Health Corp.*, 2018 U.S. Dist. LEXIS 97942, at \*15 (M.D. Tenn. Apr. 19, 2018) ("The complaint must allege that the confidential witnesses were in a position to establish the basis of personal knowledge of the alleged misconduct and they must establish that the defendants were aware of the misconduct. Even confidential high level executives' statements will be insufficient absent some allegation that the witness communicated with the individual defendants or else that the witness was privy to the individual defendants' knowledge.") (citations omitted).

[6] Plaintiffs contend motive and opportunity are not required, (Pl. Br. at 35), but they base their core allegations of scienter on motive. Courts discount motivations related to debt covenants and salaries because these motivations are common to all companies and executives. *See Ley v. Visteon Corp.*, 543 F.3d 801, 813 (6th Cir. 2008) (allegations that company was motivated to avoid triggering debt covenants not sufficient, standing alone, to infer scienter); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) (same); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (incentive compensation is an insufficient motive argument); *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 995 (S.D. Ohio 2008) (discounting allegations concerning incentive compensation plans and debt covenants when determining whether plaintiffs had met their burden to prove scienter).

scienter grounds because the plaintiff alleged nothing more than speculative reasoning without facts:

> Unfortunately for [plaintiff], this speculative reasoning—however persuasive its logic—is not able to overcome the high pleading standards erected by Rule 9(b) and the PSLRA. As the district court stated, "[KBC] has not alleged with particularity what the specific results of the [P]harmacy [A]udit demonstrated or what was communicated to [a defendant], i.e.[,] how many pharmacies were involved, what specific irregularities were found, how many actual claims were involved, or how, or what, information was actually communicated." KBC merely makes general statements and heaps inference upon inference; the Complaint never alleges that Person A did Act B at Time C, which is required by the PSLRA. Accordingly, we do not agree with KBC that the Complaint alleges sufficient facts showing that Stone directly gave any of the Individual Defendants actual knowledge that the Form 10-K statements were false.

*Omnicare III*, 769 F.3d at 482.[7]

Here, the Amended Complaint fails for the same reasons: Plaintiffs fail to allege particularized facts showing (a) that Defendants knew that estimates of uncollectible accounts under the GAAP-compliant ASC 605 methodology were false when made; (b) the basis for Defendants' alleged knowledge; (c) when and how Defendants came to know that the statements were false; and (d) the Individual Defendants' lied about the amount of uncollectible revenue based upon the far-fetched claim that they desired to avoid triggering debt covenants and maintain their compensation. Instead, just like the plaintiffs in *Omnicare III*, Plaintiffs here make general statements and then "heap inference upon inference."

Plaintiffs' "must have known" theory also withers when one considers the change in estimate in the context of the Company's entire business. The increase in estimated uncollectible revenue only amounted to a .6% increase in the Company's total estimated uncollectible revenue.

---

[7] These allegations were also insufficient to plead scienter against the defendant corporation. *Id*. at 483-484.

The amount of the change represented only .5% of the Company's *total* revenue.[8] Such small percentage changes do not make it "so obvious that a reasonable person would have known" previous estimates were false when made.[9] *See Ley*, 543 F.3d at 812 (finding that alleged errors resulting in a 5.68% overstatement of revenue were not so simple, basic, or pervasive as to have been obvious to the defendants, and noting "such a low percentage of change to total revenue does not strike us as the type of 'in your face facts' that 'cry out' scienter") (internal quotations omitted). (*See also* Def. Br. at 27.)

In contrast to Plaintiffs' conjured-up story of scienter, the real story behind the Company's change in estimated uncollectible revenue is found in the Company's public disclosures. CHSI disclosed in detail its work to adopt and comply with ASC 606, including CHSI's extensive analysis of its patient revenues and accounts receivable and its implementation of new data extraction techniques at an individual hospital and patient level that previously had not been readily available to the Company. (Def. Br. at 10-11.) Simply put, the required adoption of ASC 606 led CHSI to build and deploy new systems and processes with greater data tracking capabilities

---

[8] Plaintiffs' unsupported statements suggesting that "bad debt" expense, including the $591 million charge, account for about 10% and 25% of revenues are misleading at best if not entirely wrong. In fact, the change in estimate amounted to a 0.5% decrease in gross revenue and a 3.8% decrease to net operating revenue for the year 2017 (which is essentially the Class Period). (*See* Dkt. 67-3, Exh. B to Declaration of Steven A. Riley, at 56, 103 (gross revenue of $112 billion derived by adding $96.6 billion in contractual allowances to net operating revenue of $15.353 billion for 2017).) *See also Ley*, 543 F.3d at 812 (considering total revenue over the entire class period in analyzing scienter allegations).

[9] Allegations of recklessness are not sufficient under Sixth Circuit precedent for accounting estimates of uncollectible revenue because they are inherently soft information involving predictions of the future. *See* fn 2, *infra*. Nonetheless, even if the recklessness standard were applied, the Amended Complaint still fails. Even assuming, *arguendo*, that the Company's estimates of uncollectible revenue under ASC 605 were too low, the Amended Complaint does not allege any facts suggesting recklessness, such as a conscious disregard by the Individual Defendants to readily available information that would make it obvious that the estimates were not accurate.

than existed before.  Plus, this occurred during a year in which CHSI divested thirty hospitals. The Company fully disclosed its work on these new systems over time during the Class Period. (Def. Br. at 9-11.) These facts present the definitive explanation (and the more plausible one) for the .6% increase in total estimated uncollectible revenue.

### B. Plaintiffs fail to plead facts establishing any misrepresentation.

In their opposition, Plaintiffs cobble together just a few "factual" allegations to support their speculation that the Company's estimates of uncollectible revenue were false when made. These include: (1) the simple fact that the estimate changed upon the adoption of ASC 606; (2) an alleged admission of falsity that Plaintiffs divine from Mr. Aaron's answer to an unrelated question from an outside analyst; (3) one "confidential witness" allegedly using the word "restatement" when referring to the change in estimate; and (4) the fact that the Company borrowed to finance acquisitions several years before the Class Period.[10] These alleged "facts" come nowhere close to establishing an actionable misrepresentation.[11] And, tellingly, none of the Plaintiffs' confidential witnesses said the Company's estimates of uncollectible revenue were false when made.

1.  <u>A change in an estimate does not establish that prior estimates were false.</u>

Plaintiffs speculate that the Company's change in its estimate of uncollectible revenue resulting from its adoption of ASC 606 must mean its prior estimates under ASC 605 were false

---

[10] Perhaps to disguise their nakedness on this crucial element, Plaintiffs also plead speculation by financial analysts about what the change in estimate might indicate. (Am. Compl. ¶ 155-156.) But courts have squarely held that speculation by outsiders cannot establish a misrepresentation. *See, e.g., In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1038 (S.D. Cal. 2014) (refusing to rely on hearsay from an analyst).

[11] For falsity, Plaintiffs also quibble with Defendants' application of the standard of reasonableness as applied to accounting estimates, suggesting that the standard only applies to outside auditors. Plaintiffs are wrong. The authority cited by Defendants applied the standard to a company, not an outside auditor. *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1457 (N.D. Cal. 1996) (citing *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 544 (1979)).

when made. But that is not the law. If it were, every time a public company changed an accounting estimate, that company would subject itself to liability under the securities laws. For this reason, courts require plaintiffs to plead with particularity the purported misrepresentation. *See, e.g., In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) ("mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud") (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999); *see also Payne v. DeLuca*, 433 F. Supp. 2d 547, 580 (W.D. Pa. 2006) ("To satisfy the PSLRA requirement for particularity in cases related to accounts receivable reporting, the complaint must 'include details about when and to what level the accounts receivable should have been written down, . . . and how many accounts ultimately were uncollectible.' Allegations that accounts receivable should have been written-off 'earlier' or that Defendants 'knew' in 2000 that certain accounts were uncollectible because they had undertaken a comprehensive review of outstanding accounts receivable fail for lack of facts to support such conclusions.") (citations omitted). And courts review with deference reserves and accounting estimates that involve predictions, assumptions, and opinions. *Chapman v. Mueller Water Prods.*, 2020 U.S. Dist. LEXIS 102389, at *29-30 (S.D.N.Y. June 11, 2020) (accounting estimates that depend on management's assumptions are subjective opinions); *Pittman v. Unum Grp.*, 2020 U.S. Dist. LEXIS 97379 (E.D. Tenn. June 1, 2020) (alleged misrepresentations and omissions about understating loss reserves by $750 million failed to state a claim).

2. <u>The Company's prior estimates were not false, and Mr. Aaron never said anything to the contrary.</u>

In response to an analyst's question about a financial metric referred to as "run rate" during a conference call, Mr. Aaron confirmed that CHSI's change in estimates resulted from the change in accounting rules. (Def. Br. at 11-12.) He simply said that the implementation of ASC 606 would

not affect run rate, and he certainly did not say that the Company's previous estimates were false when made. Plaintiffs speculate such an admission using their tortured interpretation. And, while Plaintiffs speculatively allege that the Company's estimates of uncollectible revenue were understated during the Class Period, Plaintiffs have not alleged that CHSI's methodology at the time itself violated GAAP, because it did not. *See Harris v. AmTrust Fin. Servs.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) ("In the absence of a restatement or allegations pointing to objective facts that Defendants' accounting methods violated GAAP, carping about Defendants' application of GAAP amounts to no more than a naked assertion devoid of further factual enhancement; it does not permit the Court to infer that the Defendants committed accounting fraud.") (internal quotations and citation omitted). Plaintiffs' strained interpretation of Mr. Aaron's response to the question about "run rate" does not save Plaintiffs' pleading deficiencies.

3. <u>The "confidential witnesses" never said any of the Company's estimates were false.</u>

The confidential witness statements in the Amended Complaint also do not allege that prior period accounting estimates were false when made or that the Defendants knew they were false. That one witness used the word "restatement" in connection with the change in estimate adds nothing of substance and is, at most, merely an uninformed opinion. *Zwick Partners, LP*, 2018 U.S. Dist. LEXIS 97942, at *16 (discounting confidential witness statement who merely offered "her own opinions" and did not explain her basis for personal knowledge of what defendants knew); *see generally, In re Commtouch Software Ltd.*, 2002 U.S. Dist. LEXIS 13742, at *22 (N.D. Cal. July 24, 2002) (accounting guidelines state that "a change in *estimate* should not be accounted for by a restatement of prior quarters") (emphasis in original).

4. Debt incurred in acquisitions several years before the Class Period does not establish the Company's estimates were false.

Finally, Plaintiffs attempt to muddy the analysis by asserting a myriad of allegations regarding the Company's acquisitions and debt financing arising years before the Class Period. These events – which Plaintiffs paint as alleged business mismanagement – are completely irrelevant to the issue of whether CHSI's estimates for uncollectible revenue were false when made. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627-28 (7th Cir. 1990) (alleging poor business practices not sufficient to state a claim under securities laws). Further, the Company spent pages and pages in its public filings identifying material risks related to its indebtedness, acquisitions, and debt covenants.[12]

### C. Plaintiffs' claimed "omissions" are not omissions at all.

The Amended Complaint contains no meaningful omissions allegations. Nonetheless, now in their opposition, Plaintiffs seek to flip their allegations of misrepresentations into omissions. They argue that CHSI should have disclosed that its calculations of uncollectible revenue during the Class Period did not include: (a) bad debt from self-pay patients; (b) bad debt from co-pays and deductibles; and (c) anticipated denials from insurance companies.[13] Clearly, each of these is simply another way of claiming that Defendants misstated uncollectible revenue, i.e., they are not omissions at all. *See Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n. 5 (2d Cir. 2005) (rejecting plaintiff's attempt to assert claims as omissions that merely

---

[12] (*See, e.g.*, Dkt. 67-1, Exh. A to Declaration of Steven A. Riley, at 30-40.)

[13] Each of these is wrong. As for (a), Defendants reserved 89% of gross self-pay receivables as of 2016 year-end. (Dkt. 67-1, Exh. A to Declaration of Steven A. Riley, at 87.)  Both (b) and (c) were incorporated into Defendants' ASC 605-compliant, fully disclosed methodology. (*See* Am. Compl. ¶ 6; Def. Br. at 6-8.) *See also Pittman*, 2020 U.S. Dist. LEXIS 97379 at *55 (holding Unum did not have a duty to disclose every fact about how actual claims deviated from assumptions).

9

"exacerbated the misleading nature of the affirmative statements").[14]  More importantly, all of them depend upon the "falsity" and "scienter" allegations that Plaintiffs have failed to support with *facts* rather than with conclusions and speculation. This case has always been about the alleged misrepresentation of the Company's estimated uncollectible revenue during the Class Period, and Plaintiffs cannot save their claims by attempting to camouflage insufficient misrepresentation allegations as omissions.

## III.    CONCLUSION

For all these reasons, and those set forth in their initial brief, Defendants respectfully request that Plaintiffs' Amended Complaint be dismissed with prejudice.[15]

---

[14] "Through word games, every plaintiff can style his or her complaint as a material misrepresentations or omissions case." But, "there is a clear distinction between an allegation of material misrepresentation versus an omission. The first involves an affirmative act of representing, although incorrectly, while the latter involves no act or representation at all." *Simpson v. Specialty Retail Concepts*, 823 F. Supp. 353, 356 & n.7 (M.D.N.C. 1993).

[15] Plaintiffs' informal and procedurally improper request to amend again should likewise be denied. *See In re Omnicare, Inc. Sec. Litig.*, 2013 U.S. Dist. LEXIS 42973, at *54 (E.D. Ky. Mar. 27, 2013) ("The Sixth Circuit has held that an informal request contained in a opposition memorandum to a motion to dismiss is not a substitute for a properly filed motion") (citations omitted); *Pittman*, 2020 U.S. Dist. LEXIS 97379, at *77 ("The Sixth Circuit has held 'that the PSLRA restricts the scope of Rule 15(a) in the context of securities litigation such that plaintiffs have more limited ability to amend their complaints.'") (citation omitted).

Respectfully submitted,


s/ Steven A. Riley
Steven A. Riley (BPR #006258)
Milton S. McGee, III (BPR #024150)
Carson W. King (BPR #034305)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203
615-320-3700 (Telephone)
615-320-3737 (Facsimile)
sriley@rwjplc.com
tmcgee@rwjplc.com
cking@rwjplc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply in Further Support of Defendants' Motion to Dismiss was served via the Court's ECF filing system upon:

J. Gerard Stranch, IV
Benjamin A. Gastel
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
Casey E. Sadler
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

Howard G. Smith
Law Offices of Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020

Gregory M. Nespole
Levi & Korsinsky, LLP
55 Broadway, 10th Floor
New York, NY 10006

Paul Bramlett
Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215

J. Alexander Hood
Jeremy Lieberman
Pomerantz, LLP
600 Third Avenue, 20th Floor
New York, NY 10016

Louis C. Ludwig
Jared Schneider
Joshua B. Silverman
Pomerantz, LLP
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603

Jerry Martin
Barrett Johnson Martin & Garrison, LLC
Phillips Plaza
414 Union St., Suite 900
Nashville, TN 37219

This the 22nd day of June, 2020.

s/ Steven A. Riley