**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| CALEB PADILLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, LARRY CASH, and THOMAS J. AARON,<br><br>Defendants. | Case No.: 3:19-cv-00461<br><br>DISTRICT JUDGE ELI J. RICHARDSON<br><br>MAGISTRATE JUDGE BARBARA D. HOLMES |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..............................................................................................i

TABLE OF AUTHORITIES ...................................................................................iii

I. PRELIMINARY STATEMENT ...........................................................................1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ...................................2

   A. Summary of Key Terms of the Proposed Settlement ................................3

      1. Relief to Settlement Class Members and Release of Claims ....................3

      2. Class Notice and Settlement Administration ...........................................4

         a) Notice ..................................................................................................4

         b) Settlement Administration ..................................................................5

      3. Papers in Support of the Settlement, Award of Attorneys' Fees and Litigation Expenses.............................................................................5

      4. Objections ...............................................................................................5

      5. Requests for Exclusion............................................................................6

      6. Termination of the Settlement..................................................................6

      7. No Admission of Liability .......................................................................6

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .................6

   A. The Courts Favor Settlements of Complex Class Actions .....................6

   B. The Settlement is Fair, Reasonable and Adequate ..................................8

   C. Factors Considered in Connection with Final Approval of Class Action Settlements Support Granting Preliminary Approval................................9

      1. The Relevant Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement ......................................................................................10

         a) Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class.................................................................................10

      b) The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal ........................................ 10

      c) The Proposed Settlement Was Negotiated at Arm's-Length .......... 13

      d) The Proposed Method of Distributing Relief is Effective and Settlement Class Members Are Treated Equitably ......................... 13

      e) The Anticipated Request for Attorney's Fees Are Reasonable ...... 14

      f) Additional Agreements ..................................................................... 16

    2. The Sixth Circuit UAW Factors are Also Satisfied ................................ 16

      a) The Stage of the Proceedings and the Amount of Discovery Engaged in by the Parties Supports Approval of the Proposed Settlement ....................................................................................... 16

      b) The Likelihood of Success on the Merits Weighs in Favor of Approval of the Proposed Settlement ............................................. 17

      c) The Informed and Reasoned Opinions of Lead Counsel Supports Preliminary Approval ....................................................... 18

      d) The Reaction of Absent Class Members is Not Yet Available ....... 18

      e) The Public Interest Weighs in Favor of Approval of the Proposed Settlement ....................................................................... 19

IV. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE ........................................................................................... 19

    A. The Method of Notice is Adequate .......................................................... 19

    B. The Content of the Notice is Adequate ................................................... 20

V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ..................................... 21

VI. PROPOSED SCHEDULE OF EVENTS ............................................................... 24

VII. CONCLUSION ...................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 21, 23, 24

*Arbuthnot v. Pierson*,
607 Fed. Appx. 73 (2d Cir. 2015) ................................................................... 15

*Baker v. SeaWorld Entm't, Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ................................................... 21

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ........................................................................................ 19

*Bert v. AK Steel Corp.*,
No. 1:02-cv-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ................... 18

*Bittinger v. Tecumseh Products Co.*,
123 F.3d 877 (6th Cir. 1997) .......................................................................... 22

*Chavarria v. N.Y. Airport Serv., LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) ....................................................... 17, 18

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................... 6, 16

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965693 (W.D. La. Mar. 3, 2015) ..................................................... 14

*City of Providence v. Aéropostale, Inc.*,
2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ................................. 15

*Connectivity Sys. Inc. v. Nat'l City Bank*,
No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) .................. 11

*Daoust v. Maru Rest.*, LLC,
No. 17-CV-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) ................. 15

*Destefano v. Zynga, Inc.*,
2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ................................ 9

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) .......................................................................... 6

Case 3:19-cv-00461   Document 116   Filed 05/26/23   Page 4 of 35 PageID #: 1805

*Gross v. GFI Grp., Inc.*,
784 F. App'x. 27 (2d Cir. Sept. 13, 2019)...................................................................... 12

*Gudimetla v. Ambow Educ. Holding*,
2014 U.S. Dist. LEXIS 195147 (C.D. Cal. Dec. 2, 2014)............................................ 9

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019).............................. 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014)................................................................................ 20

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996)....................................................................................... 23

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................ 11, 12

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003)............................................................................... 7

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016)........................................ 16

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008)............................................................................. 22, 23

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................... 7

*In re Enron Corp.*,
2003 WL 22494413 (S.D. Tex. July 24, 2003) ........................................................ 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011)................................................................................ 15

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................ 10

*In re Inter–Op Hip Prosthesis Liab. Litig.*,
204 F.R.D. 330 (N.D. Ohio 2001).............................................................................. 18

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015)................................................................................ 24

*In re Nationwide Fin. Servs. Litig.*,
No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)........................ 12, 17, 18

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977)................................................................................... 20

iv

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) ................... 15

*In re Sirrom Cap. Corp. Sec. Litig.*,
No. 3-98- 0643 (M.D. Tenn. Feb. 4, 2000) .............................................................................. 15

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001)............................................................................. 16, 17

*In re Zynga Sec. Litig.*,
No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015)............... 14

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007)......................................................................................... 10, 19

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ............................................................................................................ 19

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000).................................................................................... 16

*Macy v. GC Servs. Ltd. P'ship*,
2019 U.S. Dist. LEXIS 210632 (W.D. Ky. Dec. 6, 2019) ................................................... 6, 7

*Miracle v. Bullitt Cty.*,
2008 U.S. Dist. LEXIS 62603 (W.D. Ky. Aug. 14, 2008)........................................................7

*Nappier v. Pricewaterhouse Coopers LLP*,
227 F. Supp. 2d 263 (D.N.J. 2002) .................................................................................... 11

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006).........................................................................................7

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 233 (E.D. Mich. 2016)..................................................................................... 14

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
2017 WL 6398014 (6th Cir. Nov. 27, 2017)........................................................................ 14

*Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*,
546 F. Supp. 1 (N.D. Ohio Apr. 27, 1982)........................................................................... 18

*Peck v. Air Evac EMS, Inc.*,
2019 U.S. Dist. LEXIS 118626 (E.D. Ky. July 17, 2019) ..................................................... 13

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................................ 24

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011).............................................................................................. 18

v

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
 No. 10-CV-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ..................................... 15

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
 825 F.3d 299 (6th Cir. 2016).................................................................................................. 15

*Silverman v. Motorola Sols., Inc.*,
 739 F.3d 956 (7th Cir. 2013)................................................................................................... 12

*Swigart v. Fifth Third Bank*,
 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) ....................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ................................................................................................................ 19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 695 F. Supp. 2d 521 (E.D. Ky. 2010)...................................................................................... 18

*Van Der Moolen Holding N.V. Sec. Litig*,
 No. 03 Civ. 8284 (S.D.N.Y. Dec. 7, 2006) ............................................................................ 15

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983).............................................................................................. 7, 17

**Rules & Regulations**

Fed. R. Civ. P. 23 ........................................................................................................*passim*

**Statutes**

15 U.S.C. §78u-4(a)(4)............................................................................................................ 14

15 U.S.C. § 78u-4(a)(7)...................................................................................................... 20, 21

28 U.S.C. § 1775 ...................................................................................................................... 5

Class Action Fairness Act ......................................................................................................... 5

Private Securities Litigation Reform Act of 1995.............................................. 12, 14, 17, 20, 21

Securities and Exchange Act of 1934 ...................................................................................... 22

**Additional References**

5 James Wm. Moore, Moore's Federal Practice (3d ed. 2002)..................................................... 8

Manual for Complex Litigation (3rd ed. 1995)..................................................................... 7

Manual for Complex Litigation (4th ed. 2004) .................................................................... 8

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review* (2022) https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_ Trends.pdf ......................................................................................................................... 2, 9

## I.  PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. Rule 23(e), Court-appointed Lead Plaintiffs and proposed class representatives Arun Bhattacharya and Michael Gaviria (collectively, "Plaintiffs") submit this memorandum of law in support of their unopposed motion for preliminary approval of a settlement of this securities class action filed on behalf of all persons and entities that purchased or otherwise acquired Community Health Systems, Inc. ("Community Health" or the "Company") publicly traded common stock during the period between February 21, 2017 and February 27, 2018, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby.[1] Defendants Community Health, Wayne T. Smith, Larry Cash, and Thomas J. Aaron (collectively, the "Defendants") do not oppose the relief sought herein.

As more fully described in the Stipulation, the proposed Settlement will resolve all claims against Defendants in exchange for a non-reversionary, all cash payment of $9,500,000 (the "Settlement Amount") for the benefit of the Settlement Class.  The Settlement is the result of extensive arms' length negotiations between highly experienced counsel, which included a full day mediation session on March 9, 2023 before Jed Melnick, Esq. of JAMS ("Mr. Melnick"), a well-respected mediator of complex actions.

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), which is attached to the Stipulation as Ex. A.  The Preliminary Approval Order will, among other things: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Settlement Class; and (3) schedule a final approval hearing in which the Court will consider the request for final approval of: (a) the Settlement; (b)

---

[1] Unless otherwise indicated, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation"), which is attached as Exhibit ("Ex.") 1 to the concurrently filed Declaration of Joshua B. Silverman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

certification of the Settlement Class for settlement purposes only; (c) the Plan of Allocation of Settlement proceeds among Settlement Class Members; and (d) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

Plaintiffs estimate that the proposed Settlement provides the Settlement Class between approximately 7.5% and 7.9% of their ***maximum*** estimated recoverable damages—an objectively excellent result when compared to the 2.9% median recovery in similar sized cases. *See, e.g.,* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full Year Review*, at 17 (2022) ("NERA Report")[2] (noting that between 2011 and 2022 the median of settlement value as a percentage of "NERA-Defined Investor Losses" was 2.9% for losses between $100 million and $199 million). For this reason, as well as the many others set forth below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and certify the Settlement Class, and order that notice be disseminated to the Settlement Class.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

This Action was initiated on May 30, 2021. ECF No. 1. After related cases were filed, the Court consolidated those actions, appointed Messrs. Bhattacharya and Gaviria as Lead Plaintiffs, and appointed the undersigned as Lead Counsel. ECF No. 52. The operative Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") was filed on January 21, 2020. ECF No. 61. The Complaint alleged that, during the class period, Community Health and its executives understated its provision for bad debts and overstated certain financial results to avoid triggering defaults on the Company's debt. Plaintiffs further alleged that Community Health's shareholders suffered tens of millions of dollars in damages when the Company ultimately revealed that it had to ramp up its "bad debt" expense to more than $1 billion, amounting to 25% of revenues.

Defendants moved to dismiss the Complaint on March 23, 2020. ECF Nos. 65-67. On August 17, 2022, the Court denied the motion to dismiss in its entirety. ECF No. 77. Following

---

[2] https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

the Court's denial of Defendants' motion to dismiss, the Action proceeded to discovery. Following Plaintiffs' service of requests for the production of documents, Defendants produced more than 450,000 pages of documents. In addition, Plaintiffs received over 1,400 pages of documents from third-party Deloitte & Touche LLP ("Deloitte"), pursuant to a duly-executed subpoena.

Concurrent with document discovery, the Parties began to discuss the possibility of settlement. Subsequently, on March 9, 2023, the Parties participated in an in-person mediation session before Mr. Melnick. At that mediation session, the Parties reached an agreement in principle to settle the Action, and signed a Term Sheet reflecting that agreement.

A. **Summary of Key Terms of the Proposed Settlement**

1. **Relief to Settlement Class Members and Release of Claims**

As more fully described in the Stipulation, Defendants have agreed to settle the Action for $9.5 million in return for the release of Released Plaintiffs' Claims[3] against Defendants and the other Defendants' Releasees. The Settlement Amount will be deposited in an escrow account maintained by The Huntington National Bank, and any investment of those funds will be held in instruments backed by the full faith and credit of the United States.

The Settlement is non-reversionary. If the Settlement is approved, no portion of the Settlement Fund will revert to Defendants. If, however, the Settlement is not approved, or otherwise does not become effective, the Settlement Fund, less Notice and Administration Costs, will be returned to the Defendants or the entities that paid the Settlement Amount.

---

[3] "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, or any other law, rule or regulation, that Lead Plaintiffs or any other member of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase and/or acquisition of CHSI publicly traded common stock during the Settlement Class Period. Released Plaintiffs' Claims do not include Excluded Claims.

### 2. Class Notice and Settlement Administration

#### a) Notice

If the Court enters the Preliminary Approval Order, no later than twenty (20) business days after the date of entry of the Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached as Ex. A-4 to the Stipulation, to be mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records provided by Community Health or its transfer agent, or who otherwise may be identified through further reasonable effort, including to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Claim Form (Ex. A-2 to the Stipulation) will be posted on a website to be developed for the Settlement (www.CommunityHealthSecuritiesSettlement.com (the "Settlement Website")). From the Settlement Website, Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. The Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members upon request. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

The Notice, *inter alia*, describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, and the maximum attorneys' fees award and Litigation Expense reimbursement that may be sought. The Notice also sets forth the date of the Settlement Fairness Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. A proposed schedule of events is set forth in section VI below. It is respectfully requested that the Settlement Fairness Hearing be scheduled at least 120 calendar days after the Notice Date, or at the Court's convenience as soon as possible thereafter. This will allow mailing to be completed; Settlement Class Members to have ample time to consider their options and, if they

4

choose, to file objections or opt out of the Settlement Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; as well as time for the Parties to respond to any objections.

The Notice also identifies the date by which claims must be filed. Lead Counsel respectfully request that the deadline for mailing or online submissions be set at 120 calendar days after the Notice Date.

### b) Settlement Administration

Following a competitive bidding process, Lead Counsel selected A.B. Data, Ltd. ("A.B. Data"), subject to Court approval, to serve as the Claims Administrator. A.B. Data has substantial experience as the claims administrator in securities class action cases.

### 3. Papers in Support of the Settlement, Award of Attorneys' Fees and Litigation Expenses

No later than thirty-five (35) calendar days prior to the Settlement Fairness Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for an award of attorneys' fees and Litigation Expenses. Those papers will detail the reasons why the Settlement should be approved, as well as the efforts Lead Counsel undertook on behalf of the Settlement Class.

No less than seven (7) calendar days prior to the Settlement Fairness Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, and request for an award of attorneys' fees and reimbursement of Litigation Expenses.

### 4. Objections

Any Settlement Class Member who wishes to object to the Settlement, Plan of Allocation or Lead Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses must file a written objection with the Court and serve copies of such objection on Lead Counsel and Defendants' Counsel at the addresses set forth in the Notice. All objections must be received no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing.

5

### 5. Requests for Exclusion

Any Settlement Class Member who wishes to be excluded from the Settlement Class must do so by written request accompanied by Community Health transactional documentation demonstrating membership in the Settlement Class. All requests for exclusion must be received no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing. A request for exclusion must be sent to the Claims Administrator, but not to the Court.

### 6. Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated percentage of Community Health common stock damaged under the Plan of Allocation elect to request exclusion from the Settlement Class. The threshold amount is set forth in a separate Supplemental Agreement that will not be filed with the Court unless the Court requests it. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

In the event that the Settlement is not approved by the Court, does not become final due to any appeals or Defendants' withdrawal from the Settlement, the Parties will return to their respective positions prior to the Settlement and the litigation will proceed.

### 7. No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Courts Favor Settlements of Complex Class Actions

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions such as this. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Class settlements are in the public interest because these cases "are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Macy v. GC Servs. Ltd.*

*P'ship*, 2019 U.S. Dist. LEXIS 210632, at \*17 (W.D. Ky. Dec. 6, 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

Fed. R. Civ. 23(e) requires judicial approval for the compromise of class claims. The procedure for approving a class settlement includes three steps: (1) the court must preliminarily approve the settlement; (2) class members are then given notice of the settlement; and (3) the court subsequently holds a hearing to determine whether to approve the settlement. *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 630-31 (W.D. Ky. 2006).

"The preliminary approval stage of the litigation requires the court to determine whether the settlement is preliminarily fair, reasonable, and adequate, but does not require the court to review the merits of the case." *Miracle v. Bullitt Cty.*, 2008 U.S. Dist. LEXIS 62603, at \*14 (W.D. Ky. Aug. 14, 2008). Preliminary approval is merely the prerequisite for disseminating notice to class members so they may decide whether to approve or reject the Settlement. Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Manual for Complex Litigation (Third) § 30.41 (1995).

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990) (citing cases). Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable. *Williams*, 720 F.2d at 921.

At this juncture, Plaintiffs only seek the Court's preliminary approval of the Settlement so

<span style="text-align:center">7</span>

that notice may be sent to the Settlement Class and a hearing scheduled to consider final settlement approval. In advance of the hearing on whether final approval of the Settlement is warranted, the Court will have before it a comprehensive discussion of the Action and the risks associated with continuing the litigation. The final determination of whether the proposed Settlement is fair and reasonable is made on a more extensive record, after notice of the Settlement is given to the Settlement Class, and after they have been given an opportunity to voice their views regarding the Settlement. *See* 5 James Wm. Moore, Moore's Federal Practice §23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

> **B.** **The Settlement is Fair, Reasonable and Adequate**

In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement: (1) is within the range of what might be found fair, reasonable, and adequate, and (2) does not disclose grounds to doubt its fairness or other obvious deficiencies, such that notice should be given to Settlement Class Members and a hearing scheduled to consider final settlement approval. *See* Rule 23(e)(1)(B)(i); Manual for Complex Litigation §13.14, at 173 (4th ed. 2004).

Here, the proposed Settlement satisfies the standard for preliminary approval as it provides an immediate and substantial recovery of $9,500,000 in cash for the benefit of the Settlement Class. Given the complexities of this Action and the substantial risks of continued litigation, including class certification, expert challenges, summary judgment, trial, and inevitable appeals, Lead Counsel submit that the Settlement represents an outstanding result that eliminates the risks of a much smaller, or no, recovery were the Action to proceed to conclusion.

Plaintiffs engaged consulting experts to estimate the potentially recoverable aggregate damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Assuming Plaintiffs were able to prove at trial all aspects of liability, and recover the full amount of the alleged inflation for all Settlement Class Members, the ***maximum*** aggregate recoverable damages are estimated to be approximately

8

$120-126 million. Thus, the $9.5 million Settlement represents between 7.5% and 7.9% of the potential maximum recovery. This recovery significantly exceeds historical averages. *See, e.g.,* NERA Report at 17 (between 2011 and 2022 the median of settlement value as a percentage of "NERA-Defined Investor Losses" was 2.9% for losses between $100 million and $199 million).

Furthermore, when evaluating the Settlement by examining recovery per damaged share as outlined in the Notice, the estimated average recovery is $0.19 per Plaintiffs' estimate of damaged Community Health shares. This is an excellent recovery. *See, e.g., Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *39 (N.D. Cal. Feb. 11, 2016) (finding a recovery of $0.11 per damaged share "falls squarely within the settlement amounts approved in other securities class action cases."); *Gudimetla v. Ambow Educ. Holding*, 2014 U.S. Dist. LEXIS 195147, at *17-18 (C.D. Cal. Dec. 2, 2014) (preliminarily approving a settlement where recovery of approximately $0.06 per share on shares originally purchased for $10.00). Accordingly, the Settlement Amount weighs in favor of granting preliminary approval.

### C. Factors Considered in Connection with Final Approval of Class Action Settlements Support Granting Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[4] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

    (A)    have the class representatives and class counsel adequately represented the class;
    (B)    was the proposal negotiated at arm's length;
    (C)    is the relief provided for the class adequate, taking into account:
        (i)    the costs, risks, and delay of trial and appeal;
        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

<blockquote>

(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

</blockquote>

These new factors are not exclusive, nor intended to displace any factor previously adopted by the courts. The Sixth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are therefore still relevant. They are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").

As discussed below, the proposed $9,500,000 Settlement easily satisfies the relevant factors under Rule 23(e)(2) and Sixth Circuit case law and warrants sending notice to the Settlement Class.

### 1. The Relevant Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### a) Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs and Lead Counsel have vigorously litigated this Action on behalf of the Settlement Class for almost four years, during which time Plaintiffs and Lead Counsel successfully defended against Defendants' motion to dismiss the Complaint, reviewed and analyzed over 450,000 pages of documents produced by Defendants and Deloitte, and were preparing to commence depositions when the Settlement was reached. Their efforts are also evidenced by the excellent recovery achieved for the Settlement Class.

#### b) The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeal

In assessing the proposed Settlement, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In*

10

*re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (court should consider whether "relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal…"). While Lead Counsel believes Plaintiffs' claims have merit, they also recognize the substantial obstacles to proving liability and class-wide damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval.

As an initial matter, while the Court allowed Plaintiffs' Exchange Act claims to proceed, Plaintiffs would still have to ***prove*** those claims. Discovery had just begun and there is no telling how it would have ultimately unfolded or how the evidence would be viewed by a jury. Indeed, as the Court ruled in deciding the motion to dismiss, the reasonableness of Defendants' accounting "is a question of fact to be decided by the jury." ECF No. 77 at 35.

Moreover, this question, along with the question of loss causation and the calculation of class wide damages, would be the subject of competing expert testimony. *See Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (noting that whether an accounting practice complies with GAAP is a question of fact best resolved through expert testimony); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("Plaintiffs hired a team of experts to estimate damages and would likely face a conflicting panel of experts retained by Defendants for trial."). This "battle of the experts" creates significant litigation risk because the reaction of a jury to such expert testimony is highly unpredictable and there is no certainty that the jury might not credit the analysis of Defendants' competing experts. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *2 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.' The Settlement Agreement reached by the

parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."); *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at \*3 (S.D. Ohio Aug. 19, 2009) (same); *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006) ("The risk of establishing damages would be further exacerbated by the difficulty of educating the jury on abstruse economic concepts necessary to the calculation of damages."). Surviving a motion to dismiss—even under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA")—does not guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Achieving a litigated verdict in the Action for Plaintiffs and the Settlement Class would have also required substantial additional time and expense. Continued litigation of the Action would have required more fact discovery, including depositions; significant expert discovery on issues such as accounting, loss causation and damages; a litigated motion for class certification; likely motions for summary judgment; pre-trial evidentiary motions, including concerning the admissibility of expert testimony; a trial; and post-trial motion practice. Finally, whatever the outcome at trial, it is virtually certain that appeals would be taken from any verdict. The foregoing would pose substantial expense for the Settlement Class and delay the Settlement Class's ability to recover—assuming, of course, that Plaintiffs and the Settlement Class were ultimately successful on their claims.

In contrast to costly, lengthy, and uncertain litigation, the Settlement provides an immediate, significant and certain recovery of $9.5 million for members of the Settlement Class. Accordingly, this factor supports approval of the Settlement.

### c) The Proposed Settlement Was Negotiated at Arm's-Length

After nearly four years of hard-fought litigation, the proposed Settlement was reached only after vigorous arm's-length negotiations with the assistance of Mr. Melnick, an experienced mediator. The Parties negotiated the proposed Settlement in a full-day, in-person mediation session. The mediation process provides compelling evidence that the proposed Settlement is not the product of collusion between the Parties. *See Peck v. Air Evac EMS, Inc.*, 2019 U.S. Dist. LEXIS 118626, at *16-17 (E.D. Ky. July 17, 2019) (emphasizing "negotiations with the assistance of an experienced mediator"); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at *6 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.").

Moreover, Defendants were represented at the mediation and throughout the Action by highly capable and experienced lawyers. Thus, both sides were well-positioned to mediate based on a thorough understanding of the strengths and weaknesses of the claims and defenses at issue. Indeed, Plaintiffs carefully considered and evaluated a number of factors, including the relevant legal authorities and evidence pertaining to the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense and duration of continued litigation, and any appeals and subsequent proceedings.

### d) The Proposed Method of Distributing Relief is Effective and Settlement Class Members Are Treated Equitably

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. *See* Rule 23(e)(2)(C)(ii). Here, A.B. Data—the Claims Administrator selected by Lead Counsel subject to Court approval—will process claims under the guidance of Lead Counsel, allow claimants an

13

opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. The manner of processing Claims proposed here is standard in securities class action settlements and has long been found to be effective, as well as necessary, since neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free distribution process. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Moreover, the Settlement does not grant preferential treatment to Plaintiffs or any Settlement Class Member. *See* Rule 23(e)(2)(D). Under the proposed Plan of Allocation,[5] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The Plan of Allocation was formulated by Lead Counsel and its consulting damages expert based on Plaintiffs' theory of liability, thereby ensuring its fairness and reliability. *See In re Zynga Sec. Litig*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *37 (N.D. Cal. Oct. 27, 2015). Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Plaintiffs, this factor supports preliminary approval of the proposed Settlement. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses); *Zynga*, 2015 U.S. Dist. LEXIS 145728 at *45-48 (collecting cases).[6]

### e) The Anticipated Request for Attorney's Fees Are Reasonable

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intend to seek and the

---

[3] The proposed Plan of Allocation is set forth in paragraphs 47-65 of the Notice, which is attached as Ex. A-1 to the Stipulation.

[6] Pursuant to the PSLRA, Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §78u-4(a)(4).

14

timing of payment.  As stated in the Notice, Lead Counsel will be applying for attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund to compensate them for the services they have rendered on behalf of the Settlement Class.[7]  An attorneys' fees award of up to 33⅓% of the Settlement Fund is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases in this Circuit.  *See*, *e.g.*, *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70167, at *15-*16 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015) (awarding class counsel one-third of common fund as attorneys' fees, and finding that "[c]ourts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund"), *vacated and remanded on other grounds by* 825 F.3d 299 (6th Cir. 2016); *Daoust v. Maru Rest.*, LLC, No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (granting counsel 33.33% of common fund in wage hour class action).

Moreover, the anticipated request is consistent with the fees awarded in securities class action settlements of comparable size.  *See, e.g.*, *In re Sirrom Cap. Corp. Sec. Litig.*, No. 3-98-0643, slip op. at ¶10 (M.D. Tenn. Feb. 4, 2000) (awarding 33⅓% of $15 million settlement); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (granting fee of 33.33% of $7.5 million settlement); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *60 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding 33% of $13

---

[7] The Stipulation contains a standard "quick pay" provision, providing for payment at the time the Court makes its award.  Stipulation, ¶ 17.  Such provisions are common in securities class action settlements because they provide protection against frivolous appeals by objectors.

15

million settlement); *In Van Der Moolen Holding N.V. Sec. Litig*, No. 03 Civ. 8284, slip. op. at 2 (S.D.N.Y. Dec. 7, 2006) (awarding 33⅓% of $8 million settlement).

Finally, it is important to note that approval of the requested attorneys' fee award is separate from approval of the Settlement, and the Settlement may not be terminated based upon any ruling with respect to attorneys' fees. *See* Stipulation, ¶ 35.

### f) Additional Agreements

With respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential Supplemental Agreement that gives Defendants the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated percentage of Community Health common stock damaged under the Plan of Allocation elect to request exclusion from the Settlement Class. *See* Stipulation, ¶ 36. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 U.S. Dist. LEXIS 114235, at *32 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and approving settlement); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

In sum, the relevant Rule 23(e)(2) factors are satisfied, which warrants sending notice of the proposed Settlement to the Settlement Class.

### 2. The Sixth Circuit *UAW* Factors are Also Satisfied

The *UAW* factors considered by the courts in the Sixth Circuit also weigh in favor of preliminary approval. *UAW*'s first two factors—the potential for collusion and the risk and complexity of litigation—are addressed in our discussions of Rule 23(e)(2). *See* Sections III.C.1.(b) and (c), *supra*.

### a) The Stage of the Proceedings and the Amount of Discovery Engaged in by the Parties Supports Approval of the Proposed Settlement

The stage of the proceedings and the extent of discovery completed is another factor that is

considered in determining the fairness of a proposed settlement. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000). Under this factor, the relevant inquiry is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See Nationwide,* 2009 WL 8747486, at *5-6. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement. *See id.* at *5 ("[A]lthough the parties were able to negotiate the Settlement at a relatively early stage of the proceedings, all of the parties had a 'clear view of the strengths and weaknesses of their cases.'").

Here, the Settlement was reached after nearly four years of contested litigation, during which Lead Counsel, *inter alia*, (i) conducted a thorough investigation, including the retention of a private investigator and damages and accounting experts; (ii) drafted the comprehensive and factually detailed Complaint; (iii) successfully opposed Defendants' motion to dismiss under the PSLRA's heightened pleading standard; (iv) served document requests on Defendants and a third-party subpoena on Deloitte, and reviewed and analyzed over 450,000 pages of documents; (v) drafted and exchanged with Defendants highly detailed mediation statements addressing issues of liability and damages; and (vi) engaged in an all-day mediation overseen by a highly respected mediator. Accordingly, the Parties had more than enough information to accurately assess the strengths and weaknesses of their respective cases when weighing the Settlement. *See Telectronics,* 137 F. Supp. 2d at 1015 ("The advanced stage of the proceedings and the substantial amount of concluded discovery in this case, means that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case.").

### b) The Likelihood of Success on the Merits Weighs in Favor of Approval of the Proposed Settlement

Another factor that courts consider in reviewing a class action settlement is the likelihood of

success on the merits balanced against the amount of the proposed recovery. *See Williams*, 720 F.2d at 922. In applying this factor, courts recognize that "[t]he determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012); *see also Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio Apr. 27, 1982) (courts consider "the range of reasonableness of the settlement fund in light of the best possible recovery.").

Here, as discussed above, the Settlement is well within the range of reasonableness in light of the best possible recovery and the substantial risks presented by this litigation. *See, supra,* Sections III. B and C.1(b).

### c) The Informed and Reasoned Opinions of Lead Counsel Supports Preliminary Approval

Additional factors the Sixth Circuit has directed District Courts to consider in evaluating class action settlements are: (i) whether the settlement is the product of arm's-length negotiations, (ii) the risk of collusion, and (iii) the judgment of experienced counsel. In addressing these factors, "the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

Here, Plaintiffs are represented by counsel with extensive experience litigating these types of claims; the Settlement was the result of intense, arm's-length negotiations with the aid of an experienced mediator; and the Parties understood the strengths and weaknesses of the claims and defenses before the Settlement was reached. Under such circumstances, Lead Counsel's opinion that the proposed Settlement is fair to the Settlement Class "is entitled to considerable weight." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) (recognizing that when a "settlement is the result of extensive negotiations by experienced counsel, the Court should

presume it is fair").

### d) The Reaction of Absent Class Members is Not Yet Available

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide,* 2009 WL 8747486, at \*7. Although the reaction of the absent Settlement Class Members cannot be assessed until after Notice is disseminated, the Court-appointed Lead Plaintiffs—both of whom participated throughout the prosecution of the case and were actively involved in Settlement negotiations—support the Settlement. Information related to the reaction of absent Settlement Class Members will be provided in Plaintiffs' final approval motion and supporting papers, and will be available at the Settlement Fairness Hearing.

### e) The Public Interest Weighs in Favor of Approval of the Proposed Settlement

The Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964))).

Here, the Settlement furthers that public policy by providing a substantial recovery to a large Settlement Class of shareholders. *See UAW*, 497 F.3d at 632 (recognizing "the federal policy favoring settlement of class actions" (citation omitted)). Moreover, the Settlement promotes judicial efficiency. It resolves at once the claims of the entire Settlement Class of aggrieved shareholders, and ends this protracted and contentious litigation, avoiding further years of litigation in this Court or in the Court of Appeals.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A. The Method of Notice is Adequate

Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."

Lead Counsel proposes to mail, by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Claim Form (Ex. A-2 to the Stipulation) will be posted on the Settlement Website. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in Investor's Business Daily and transmitted once over the PR Newswire.

It is "more than sufficient" to use "a combination of a mailed postcard directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Thus, Plaintiffs respectfully submit that the combination of the mailed Postcard, published Summary Notice, and availability online of the Notice provides the best notice practicable under the circumstances.

**B. The Content of the Notice is Adequate**

With respect to content, the notice must contain the information outlined in Rule 23(c)(2)(B) and the additional information required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The proposed Notice satisfies these requirements and will provide Settlement Class Members with the information necessary for them to decide whether to remain in, opt-out, or object to, the Settlement. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (notice must contain "information that a reasonable person would consider to be material in making an informed,

intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."). It describes: (i) the nature, history, and status of the Action; (ii) the Settlement; (iii) the definition of the Settlement Class; (iv) how to exclude oneself from the Settlement Class; (v) the process by which Settlement Class members may enter an appearance through their own counsel; (vi) the binding effect of the Settlement approval proceedings; (vii) the proposed plan of allocation; and (viii) the reasons the Parties are proposing the Settlement. It also supplies the date, time, and place of the Settlement Fairness Hearing, and the procedures for commenting on or objecting to the Settlement or request for attorneys' fees and Litigation Expenses and appearing at the hearing.

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth: (i) the amount of the Settlement proposed to be distributed to the Parties to the Action, determined in the aggregate and on an average per-share basis; (ii) a statement of attorneys' fees and costs sought; (iii) the name, telephone number, and address of of counsel for Plaintiffs; and (iv) a brief statement explaining the reasons why the Parties are proposing the Settlement. Courts routinely find that comparable notice programs meet the requirements of due process, Rule 23 and the PSLRA. *See, e.g. In re Enron Corp.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website).

## V.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class so that notice of the proposed Settlement, the Settlement Fairness Hearing and the rights of Settlement Class Members to request exclusion, object, or submit proofs of claim may be communicated to the persons and entities affected by the proposed Settlement. Certification of the Settlement Class is requested for settlement purposes only.

The Supreme Court has recognized the utility and necessity of certifying settlement classes so long as absent class members' rights are protected. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-621 (1997). In certifying a settlement class, the Court must determine that the action

satisfies the criteria established by Rule 23—numerosity, commonality, typicality, adequacy of representation, and predominance of common questions and superiority of class treatment.[8]

> Where the proposed settlement is presented before the class certification motion is decided, the parties move the court for simultaneous class certification and approval of the settlement. Typically, the court then orders a combined notice of the certification, opt-out rights, and the proposed settlement and combines the fairness hearing on the proposed settlement with a hearing on class certification.

5 *Moore's Federal Practice*, § 23.161 [2][ a] at 23-552 (3d ed. 2007).

The instant Action meets each of the criteria for class certification under Rule 23 and, accordingly, the Settlement Class should be certified for purposes of Settlement. Certification as a class action pursuant to Rule 23 requires that the action meet each of the requirements of Rule 23(a). The first criterion is that the class be so numerous that joinder of all members is impracticable. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 493 (E.D. Mich. 2008) (*citing* Rule 23(a)(1)). The Action clearly meets that criterion. Community Health shares were listed on the NYSE, a presumptively efficient market and, during the Settlement Class Period, there were, on average, 109.7 million shares in Community Health's float. There are, therefore, potentially thousands of Settlement Class Members, and joinder of all of them would be impracticable.

The second criterion under Rule 23(a) is that there are questions of law or fact common to the class. *See Delphi*, 248 F.R.D. at 493-94 (citing Rule 23(a)(2)). Rule 23(a) simply requires a common question of law or fact. *See Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997). This criterion is also met. Among the common questions are whether the provisions of the Exchange Act were violated by Defendants' acts as alleged in the Complaint; whether Defendants' statements to the investing public during the Settlement Class Period misrepresented or omitted material facts about the business, operations, financial condition and prospects of Community Health; whether the Individual Defendants caused Community Health to issue false

---

[8] Rule 23(b)(3)(D)'s inquiry into whether there are likely to be difficulties in managing a class action through trial is relaxed because the proposal is that, if the Court approves the settlement, there will be no trial. *See id.*, 521 U.S at 620.

and misleading financial statements during the Settlement Class Period; whether Community Health complied with GAAP; and whether the price of Community Health securities were artificially inflated because of the Defendants' alleged misconduct. Thus, the Complaint alleges numerous common issues of law and fact which—as will be discussed in connection with Rule 23(b)—predominate over other questions.

The third criterion—typicality—requires that "the claims or defenses of the representative parties [be] typical of the claims and defenses of the class." Fed. R. Civ. Proc. 23(a)(3). A proposed class plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Here, Plaintiffs allege that they purchased shares of Community Health common stock at prices that were artificially inflated by Defendants' material misrepresentations and omissions, and that upon disclosure of the alleged misrepresentations and omissions the value of those shares dropped, resulting in damages to Plaintiffs. All other Settlement Class Members were affected in the same way. Thus, the typicality requirement is met.

The fourth criterion—adequacy—is met because Plaintiffs and their counsel have protected and will protect the interests of the Settlement Class. Fed. R. Civ. Proc. 23(a)(4). "In measuring the adequacy of representation of the representative parties, the court must be assured that the representatives have common interests with unnamed members of the class and it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Delphi*, 248 F.R.D. at 494 (citation omitted). Courts have held that, to a large extent, the adequacy requirement tends to merge with the commonality and typicality criteria of Rule 23(a)(2) and (3). *See id.* (citing *Amchem*, 521 U.S. at 626 n. 20). Plaintiffs and Lead Counsel have conducted an intensive investigation in order to unearth the truth and properly plead the claims; used the fruits of their investigations in drafting the Complaint and briefing Defendants' motion to dismiss; served discovery and reviewed hundreds of thousands of pages of documents; participated in a full-day mediation session; and negotiated the advantageous Settlement presented for approval on behalf of

the Settlement Class. Under such circumstances, the adequacy requirement is met.

In addition to satisfying the criteria of Rule 23(a), the action must meet one of the criteria of Rule 23(b). Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been damaged by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the following schedule for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled. This schedule is similar to

those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. In order to allow sufficient time for the notice program, Plaintiffs request that the Court schedule the Settlement Hearing for a date not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 105 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience |

## VII. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant their motion and enter the Preliminary Approval Order.

Dated: May 26, 2023

POMERANTZ LLP

By: /s/ *Louis C. Ludwig*

Joshua B. Silverman (admitted *Pro Hac Vice*)
Louis C. Ludwig (admitted *Pro Hac Vice*)
10 South LaSalle Street, Suite 3505

25

Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *Pro Hac Vice*)
Casey E. Sadler (admitted *Pro Hac Vice*)
Melissa C. Wright (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
csadler@glancylaw.com
mwright@glancylaw.com

*Lead Counsel for Plaintiffs and the
Proposed Settlement Class*

**BRANSTETTER, STRANCH &
JENNINGS, PLLC**
J. Gerard Stranch, IV (BPR #023045)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@bsjfirm.com

*Liaison Counsel for Plaintiffs and the
Proposed Settlement Class*

# CERTIFICATE OF SERVICE

I hereby certify that, on this 26th day of May, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Steven A. Riley (BPR #006258)
Milton S. McGee, III (BPR #024150)
Joshua S. Bolian (BPR #040140)
Riley & Jacobson, Plc
1906 West End Avenue
Nashville, TN 37203

J. Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

J. Alexander Hood
Jeremy Lieberman
Pomerantz, LLP
600 Third Avenue, 20th Floor
New York, NY 10016

Joshua B. Silverman
Louis C. Ludwig
Pomerantz, LLP
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
Melissa C. Wright
Casey E. Sadler
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

*/s/ Louis C. Ludwig*