# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| CALEB PADILLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, LARRY CASH, and THOMAS J. AARON,<br><br>Defendants. | Case No.: 3:19-cv-00461<br><br>DISTRICT JUDGE ELI J. RICHARDSON<br><br>MAGISTRATE JUDGE BARBARA D. HOLMES |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 3

    A.   The Standard For Final Approval Of Class Action Settlements............................ 3

    B.   The Proposed Settlement Satisfies Federal Rule Of Civil Procedure 23(e)(2)....... 5

        1.   Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class...................................................................................... 5

        2.   The Proposed Settlement Was Negotiated at Arm's-Length...................... 5

        3.   The Proposed Settlement Is an Excellent Result in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeals...................................... 6

        4.   The Proposed Method of Distributing Relief is Effective .......................... 8

        5.   The Requested Attorney's Fees Are Reasonable...................................... 8

        6.   Additional Agreements .......................................................................... 9

        7.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other ........................................................................................... 9

    C.   The Sixth Circuit *UAW* Factors Are Also Satisfied............................................ 10

        1.   The Complexity, Expense and Likely Duration of the Litigation ............ 10

        2.   The Amount of Discovery Engaged in by the Parties.............................. 11

        3.   The Risk of Fraud or Collusion ............................................................. 12

        4.   The Likelihood of Success on the Merits as Weighed Against the Amount and Form of the Relief Offered by the Settlement................................... 12

        5.   The Opinions of Lead Counsel and Class Representatives ...................... 14

        6.   The Reaction of Absent Class Members.................................................. 14

        7.   Public Interest ..................................................................................... 15

III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED .................................................................................................... 15

IV.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ............. 16

V.     CONCLUSION ................................................................................................. 17

ii

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Beach v. JPMorgan Chase Bank, N.A.*,
   2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ......................................................................... 4

*Bert v. AK Steel Corp.*,
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)..................................................................... 14

*BleachTech LLC v. United Parcel Service, Inc.*,
   2022 WL 2900796 (E.D. Mich. July 20, 2022) ...................................................................... 9

*Bowers v. Windstream Kentucky E., LLC*,
   2013 WL 5934019 (W.D. Ky. Nov. 1, 2013) ............................................................ 11, 12, 15

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981).............................................................................................................. 13

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................................... 9, 16

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965693 (W.D. La. Mar. 3, 2015) ......................................................................... 10

*Connectivity Sys. Inc. v. Nat'l City Bank*,
   2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ......................................................................... 7

*Crawford v. Lexington-Fayette Urban County Gov't*,
   2008 WL 4724499 (E.D. Ky. Oct. 23, 2008)....................................................................... 16

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) ............................................................................................. 3

*Gascho v. Glob. Fitness Holdings, LLC*,
   2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ................................................................. 11, 15

*Granada Investments, Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ..................................................................................... 10, 15

*Gross v. GFI Grp., Inc.*,
   784 F. App'x. 27 (2d Cir. Sept. 13, 2019) ............................................................................ 7

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................................................... 6, 7

*In re BHP Billiton Limited Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)................................................................... 9

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................... 2, 3, 15

*In re Comshare, Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ................................................................... 13

*In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................... 10

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 16

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................................... 16

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ................................................................... 12

*In re Limelight Networks, Inc. Sec. Litig.*,
2011 WL 13185749 (D. Ariz. Mar. 23, 2011)................................................................... 9

*In re Nationwide Fin. Servs. Litig.*,
2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)................................................................... 7, 15

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................................................... 3

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
2013 WL 12329512 (W.D. Tenn. Sept. 5, 2013)................................................................... 15

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016)................................................................... 5, 11, 14, 15

*In re Se. Milk Antitrust Litig.*,
2012 WL 2236692 (E.D. Tenn. June 15, 2012)...............................................................*passim*

*In re Telectronics Pacing Systems, Inc.*,
137 F. Supp. 2d (S.D. Ohio 2001) ................................................................... 14

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................................................................... 13, 16

Case 3:19-cv-00461    Document 124    Filed 09/08/23    Page 5 of 26 PageID #: 1979

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)................................................................. 16

*Int'l Union v. General Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ...................................................................... 3, 4, 13

*Johnson v. W2007 Grace Acquisition I, Inc.*,
2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) ............................................... 5, 11

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000) .................................................................... 15

*Macy v. GC Servs. Ltd. P'ship*,
2019 WL 6684522 (W.D. Ky. Dec. 6, 2019)........................................................ 3

*Nappier v. Pricewaterhouse Coopers LLP*,
227 F. Supp. 2d 263 (D.N.J. 2002) ..................................................................... 6

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 233 (E.D. Mich. 2016) ................................................................. 8, 10

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)........................................................................................... 15

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) ....................................................................... 12, 14

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) .............................................................................. 7

*Swigart v. Fifth Third Bank*,
2014 WL 3447947 (S.D. Ohio July 11, 2014)...................................................... 6

*Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*,
262 F.3d 559 (6th Cir. 2001) .............................................................................. 3

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d 521 (E.D. Ky. 2010) ............................................................... 14

*Too v. Rockwell Medical, Inc.*,
2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020)..................................................... 16

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) .............................................................................. 3

iv

*Yang v. Focus Media Holding Limited,*
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).................................................................................... 6

STATUTES

15 U.S.C. §78u-4(a)(4) ....................................................................................................... 10

RULES

Fed. R. Civ. P. 23............................................................................................................*passim*

## I. PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. Rule 23(e), Court-appointed lead plaintiffs and proposed class representatives Arun Bhattacharya and Michael Gaviria (collectively, "Lead Plaintiffs") submit this memorandum of law in support of their unopposed motion for final approval of the proposed $9,500,000 settlement (the "Settlement"), approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation"), and final certification of the Settlement Class.[1] The Settlement fully resolves this securities fraud class action filed on behalf of all persons and entities that purchased or otherwise acquired Community Health Systems, Inc. ("CHS") publicly traded common stock during the period between February 21, 2017 and February 27, 2018, inclusive (the "Settlement Class Period"), and were allegedly damaged thereby.[2] The terms of the Settlement are set forth in the Stipulation. On May 30, 2023, the Court preliminarily approved the Settlement (the "Preliminary Approval Order"; ECF No. 118).

The $9,500,000 Settlement–which is the product of an arm's-length mediation–is an excellent result for the Settlement Class. The Settlement was negotiated by experienced counsel who were fully informed of the risks and merits of continued litigation through significant briefing on the motion to dismiss, as well as substantial discovery, which included receiving and reviewing more than 450,000 of pages of documents from Defendants and third parties. Thus, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness.

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation"; ECF No. 117-1). Unless otherwise indicated, capitalized terms have the meanings set forth in the Stipulation, or in the or in the concurrently filed Declaration of Casey E. Sadler and Joshua B. Silverman in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] Lead Plaintiffs will submit an updated version of the proposed Judgment, originally submitted with Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement with their reply papers to reflect any exclusion requests made between now and the September 22, 2023 exclusion deadline.

1

Moreover, the Settlement provides substantial relief to the Settlement Class. Specifically, Lead Plaintiffs estimate that the Settlement provides between 7.5% and 7.9% of likely recoverable damages – far more than typical recoveries on securities class actions. *See, e.g.*, Ex. 8 (excerpts from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting NERA Report, at p. 17 (Fig. 18) (median recovery was 2.9% for securities class actions with estimated damages between $100-$199 million that settled between December 2011-December 2022). The Settlement is, therefore, substantively fair, reasonable and adequate.

The Court's Preliminary Approval Order established a detailed plan to provide notice to the Settlement Class, which Lead Plaintiffs and the Claims Administrator followed. *See* Ex. 1 (Declaration of Adam D. Walter Regarding Notice Administration ("Walter Decl.")). While the time to object to the Settlement has not passed, not a single Settlement Class Member has objected to, or requested exclusion from, the Settlement. The lack of objections and opt outs further supports the conclusion that the Settlement merits final approval. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is fair, 'reasonable, and adequate.'" (quotation marks in the original)).[3] Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Lead Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiffs' damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. ¶¶56-64. Lead Plaintiffs and their counsel believe that the Plan of Allocation is fair and reasonable and, as such, it too should be approved.[4]

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotation marks are omitted.

[4] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the

## II. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Standard For Final Approval Of Class Action Settlements

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions such as this. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982). This policy is given even greater weight with respect to class actions because class actions "are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Macy v. GC Servs. Ltd. P'ship*, 2019 WL 6684522, at *7 (W.D. Ky. Dec. 6, 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)); *see also Int'l Union v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *7 (E.D. Mich. Dec. 13, 2011) (the "Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits").

The procedure for approval of a proposed class action settlement involves three steps: (1) the court must preliminarily approve the proposed settlement; (2) the members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the settlement is fair, adequate and reasonable. *Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)). This Action is currently on the third and final step of the approval process.

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) – which governs final approval – requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

---

procedural history and the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Lead Counsel have provided for the benefit of the Settlement Class. *See* ¶¶9-45.

<table>
<tr><td>(A)</td><td colspan="2">have the class representatives and class counsel adequately represented the class;</td></tr>
<tr><td>(B)</td><td colspan="2">was the proposal negotiated at arm's length;</td></tr>
<tr><td>(C)</td><td colspan="2">is the relief provided for the class adequate, taking into account:</td></tr>
<tr><td></td><td>(i)</td><td>the costs, risks, and delay of trial and appeal;</td></tr>
<tr><td></td><td>(ii)</td><td>the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;</td></tr>
<tr><td></td><td>(iii)</td><td>the terms of any proposed award of attorneys' fees, including timing of payment; and</td></tr>
<tr><td></td><td>(iv)</td><td>any agreement required to be identified under Rule 23(e)(3); and</td></tr>
<tr><td>(D)</td><td colspan="2">does the proposal treat class members equitably relative to each other.</td></tr>
</table>

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919 (2018)).

These Rule 23(e)(2) factors add to, rather than displace, the factors previously adopted by the courts. *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and historical Second Circuit factors). Thus, the Sixth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW* Factors").

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *UAW* factors.

**B.     The Proposed Settlement Satisfies Federal Rule Of Civil Procedure 23(E)(2)**

**1.     Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class**

Lead Plaintiffs and Lead Counsel have vigorously litigated this Action for almost four years. During that time, *inter alia*, Lead Plaintiffs and Lead Counsel: (a) drafted the initial complaint in the Action, as well as the 63-page Amended Complaint (the "Amended Complaint"); (b) prevailed against Defendants' motion to dismiss; (c) engaged in substantial discovery, including the review and analysis of over 450,000 pages of documents produced by Defendants and third parties; and (d) worked with a market efficiency and damages expert in preparation for filing a class certification motion. ¶¶12-28. Based on these efforts, as well as a preliminary review of the results achieved, the Court has already found, for purposes of the proposed Settlement, that "Lead Plaintiffs and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class." ECF No. 118 at ¶2.

**2.     The Proposed Settlement Was Negotiated at Arm's-Length**

"The court must also make sure that any settlement is the product of arm's length negotiations as opposed to collusive bargaining." *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *4 (holding that the settlement was agreed to after the parties' claims and defenses had been subject to an intense three-year-long adversarial process, and thus was not the product of any collusive bargaining). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *In re Regions Morgan Keegan*, 2016 WL 8290089, at *3; *W2007 Grace Acquisition I, Inc.*, 2015 WL 12001269, at *5.

Here, "[t]he record demonstrates that the Settlement developed from vigorous, arm's-length negotiations." *Id*. Over the course of nearly four years the Parties engaged in hotly-contested litigation, with Defendants represented by highly capable, experienced lawyers from Riley & Jacobson, PLC. Throughout the course of the litigation, Defendants' Counsel zealously advanced Defendants' interests and disputed the merits of Lead Plaintiffs' claims. Indeed, the Parties agreed to settle the Action only after participating in a full-day in-person mediation before Jed Melnick, an experienced mediator. Joint Decl., ¶¶24-25. The mediation process itself provides compelling

5

evidence that the Settlement was reached at arm's-length and is not the product of collusion between the Parties. *See Swigart v. Fifth Third Bank*, 2014 WL 3447947, at \*2 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator."); *see also Focus Media*, 2014 WL 4401280, at \*5 (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

### 3. The Proposed Settlement Is an Excellent Result in Light of the Costs, Risks, and Delay of Trial and Post Trial Appeals

In assessing the proposed Settlement, the Court should balance the benefits of an immediate, certain recovery against the significant cost, risk, and delay of proceeding with this Action. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). While Lead Counsel believes Lead Plaintiffs' claims have merit, they also recognize the substantial obstacles to proving liability and class-wide damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval.

As an initial matter, while the Court allowed Lead Plaintiffs' Exchange Act claims to proceed, Lead Plaintiffs would still have to **prove** those claims. Discovery had just begun and there is no telling how it would have ultimately unfolded or how the evidence would be viewed by a jury. Indeed, as the Court ruled in deciding the motion to dismiss, the reasonableness of Defendants' accounting "is a question of fact to be decided by the jury." ECF No. 77 at 35.

Moreover, this question, along with the question of loss causation and the calculation of class wide damages, would be the subject of competing expert testimony. *See Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (noting that whether an accounting practice complies with GAAP is a question of fact best resolved through expert testimony); *In re AOL Time Warner*, 2006 WL 903236, at \*11 ("Plaintiffs hired a team of experts to

estimate damages and would likely face a conflicting panel of experts retained by Defendants for trial.").  This "battle of the experts" creates significant litigation risk because the reaction of a jury to such expert testimony is highly unpredictable and there is no certainty that the jury might not credit the analysis of Defendants' competing experts.  *See Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at \*2 (S.D. Ohio Jan. 26, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a 'battle of the experts.'  The Settlement Agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Named Plaintiffs and the Settlement Class."); *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at \*3 (S.D. Ohio Aug. 19, 2009) (same); *see also In re AOL Time Warner*, 2006 WL 903236, at \*11 ("The risk of establishing damages would be further exacerbated by the difficulty of educating the jury on abstruse economic concepts necessary to the calculation of damages.").  Surviving a motion to dismiss – even under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA") – does not guarantee a recovery.  *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment in securities class action); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Achieving a litigated verdict in the Action for Lead Plaintiffs and the Settlement Class would have also required substantial additional time and expense.  Continued litigation of the Action would have required more fact discovery, including depositions; significant expert discovery on issues such as accounting, loss causation and damages; a litigated motion for class certification; likely motions for summary judgment; pre-trial evidentiary motions, including concerning the admissibility of expert testimony; a trial; and post-trial motion practice.  Finally, whatever the outcome at trial, it is virtually certain that appeals would be taken from any verdict.  The foregoing would pose substantial expense for the Settlement Class and delay the Settlement Class's ability to recover – assuming, of course, that Lead Plaintiffs and the Settlement Class were ultimately successful on their claims.

7

In contrast to costly, lengthy, and uncertain litigation, the Settlement provides an immediate, significant and certain recovery of $9.5 million for members of the Settlement Class. Accordingly, this factor supports approval of the Settlement.

### 4. The Proposed Method of Distributing Relief is Effective

The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.[5] *See* Rule 23(e)(2)(C)(ii). Here, A.B. Data—the Claims Administrator selected by Lead Counsel and approved by the Court—will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. The manner of processing Claims proposed here is standard in securities class action settlements and has long been found to be effective, as well as necessary, since neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free distribution process. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### 5. The Requested Attorney's Fees Are Reasonable

As disclosed in the Notice, Lead Counsel are seeking a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services Plaintiffs' Counsel have rendered on behalf of the Settlement Class. *See* Rule 23(e)(2)(C)(iii). A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Se. Milk*, 2013 WL 2155387, at *3 (finding that a 33.3% fee request is "certainly within the range of fees often awarded in common

---

[5] The Court has already reviewed and approved the form and contents of the Notice, Claim Form, Summary Notice, and Postcard Notice. *See* Preliminary Approval Order, ¶8.

fund cases, both nationwide and in the Sixth Circuit."); *BleachTech LLC v. United Parcel Service, Inc.*, 2022 WL 2900796, at *2 (E.D. Mich. July 20, 2022) ("Class Counsel's request for 33⅓% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit."); *see also* Fee and Expense Application, § II.C; Ex. 16 (collecting cases). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.[6]

### 6. Additional Agreements

With respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential Supplemental Agreement that gives Defendants the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated percentage of CHS common stock damaged under the Plan of Allocation elect to request exclusion from the Settlement Class. *See* Stipulation ¶36. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 7. The Settlement Treats Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the Plan of Allocation does not grant preferential treatment to Lead Plaintiffs or any Settlement Class Member. Under the proposed Plan of Allocation,[7] each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The Plan of Allocation was formulated by Lead Counsel and its consulting damages expert based on

---

[6] In terms of timing, courts routinely order that "[t]he awarded attorneys fees and expenses shall be paid immediately to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation." *In re BHP Billiton Limited Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019); *In re Limelight Networks, Inc. Sec. Litig.*, 2011 WL 13185749, at *2 (D. Ariz. Mar. 23, 2011). This prevents objectors from attempting to "hold up" plaintiffs' counsel by delaying payment through frivolous appeals.

[3] The proposed Plan of Allocation is set forth in paragraphs 47-65 of the Notice. Ex. 2.

Lead Plaintiffs' theory of liability, thereby ensuring its fairness and reliability. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (denying objection where the "Plan of Allocation was developed based on its expert's careful damages analysis"). Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiffs, this factor supports final approval of the proposed Settlement. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where each class member would receive their *pro rata* share of the funds based on calculation of recognized losses).[8]

### C. The Sixth Circuit *UAW* Factors Are Also Satisfied

The *UAW* Factors considered by the courts in the Sixth Circuit also weigh in favor of preliminary approval. In applying the *UAW* Factors, no one factor is dispositive; rather, all are weighed and considered in light of the particular demands of a case. *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Here, all factors support granting final approval.

#### 1. The Complexity, Expense and Likely Duration of the Litigation

"In general, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *3; *see also In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015) (securities litigation "is a highly technical and specialized area of the law" and that claims brought under the federal securities laws are "extremely complex.").

Such is the case here. Without this Settlement, Lead Plaintiffs will face a long, expensive,

---

[8] Pursuant to the PSLRA, Lead Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §78u-4(a)(4).

and challenging path to recovery. *Gascho v. Glob. Fitness Holdings, LLC*, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016) (Defendant "has contested class certification and asserted various defenses that present financial risks to the class"); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *6 (W.D. Tenn. Dec. 4, 2015) ("The extensive discovery that has already been taken and the need for experts demonstrate that continued litigation would be expensive"). The claims here involve extremely complex facts surrounding the treatment of bad debt and revenue under two accounting standards, ASC 605 and 606. Discovery into the facts surrounding these issues has already been complex, expensive and voluminous, and it would become more so had the litigation continued. *See* ¶¶20-22.

In addition to completing fact and expert discovery, Lead Plaintiffs would have to secure and maintain certification of a litigation class, overcome summary judgment motions, and, if successful on those fronts, would face a difficult trial involving a "battle of experts." *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *4 (W.D. Tenn. Aug. 2, 2016) (finding that the complexity, expense, and duration of the litigation weighed in favor of settlement where "[s]ome claims would be subject to a battle of experts"). "Continued litigation would undoubtedly require years more of litigation and would …. be both extensive and costly." *Gascho*, 2014 WL 1350509, at *18. The complexity, expense, and duration of this Action absent a settlement, when compared to the instant Settlement and its benefits to the Settlement Class, render the Settlement fair and reasonable.

### 2. The Amount of Discovery Engaged in by the Parties

Courts also consider whether the parties conducted sufficient discovery to allow them to be "thoroughly familiar with the evidence and the issues in the case" so they "could realistically evaluate the strengths and weaknesses of their case." *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *3. "Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no minimum or definitive amount of discovery that must be undertaken to satisfy this factor." *Bowers v. Windstream Kentucky E., LLC*, No. 3:09-CV-440-H,

11

2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).

Here, Lead Plaintiffs, through their counsel, have fully informed themselves of the risks and merits of continued litigation through substantive discovery, the investigation of their counsel, and consultation with experts. Besides investigating the facts and the law prior to filing the Amended Complaint (and the initial Complaint), Lead Counsel exchanged initial discovery, served document requests and interrogatories upon Defendants, analyzed answers thereto, issued third-party subpoenas, engaged in hours of meet-and-confers with Defendants and third-parties about discovery, received and reviewed over 450,000 pages of documents, and prepared for depositions of key witnesses. ¶¶20-22. As a result, Lead Counsel had the information necessary to evaluate and advise Lead Plaintiffs regarding the strengths and weaknesses of their claims and to assess the Settlement consideration and its fairness to Settlement Class Members. "All this information ultimately allowed the parties to frankly evaluate the merits of and risks inherent in their respective cases and to determine an appropriate settlement value." *Bowers*, 2013 WL 5934019, at *3. Thus, this factor weighs in favor of final approval.

### 3. The Risk of Fraud or Collusion

There is no risk of fraud or collusion because the Settlement was negotiated at arm's-length. *See* Section II.B.2, *supra*.

### 4. The Likelihood of Success on the Merits as Weighed Against the Amount and Form of the Relief Offered by the Settlement

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011). "The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Id*. "A plaintiff's likelihood of success should be weighed against the amount and form of relief offered in the settlement." *In re Regions Morgan Keegan*, 2016 WL 8290089, at *5. The Sixth Circuit characterizes the analysis of this factor as follows: although this inquiry understandably does not require [the court] to "decide the merits of the case or resolve unsettled legal questions," [the court] cannot "judge the fairness of a proposed

compromise" without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *See International Union*, 497 F.3d at 631 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

If the Settlement was not reached, several pre-trial hurdles would remain. First, Lead Plaintiffs would have to obtain class certification. ¶31. While Lead Plaintiffs believe certification would be granted, they understand that Defendants would likely contest such a motion. Then, after fact and expert discovery concluded, Defendants would likely move for summary judgment, and possibly to exclude Lead Plaintiffs' experts. ¶¶32-40. Again, Lead Plaintiffs believe they would prevail on these motions, but understand that each would bear considerable risk, time, and expense. The trial of this Action was scheduled to begin no earlier than the Fall of 2024, and would involve complicated facts, complex legal issues, and expert analysis. If a successful verdict was achieved, Defendants would likely appeal, extending any ultimate recovery potentially for years, even if Lead Plaintiffs ultimately prevailed. At all stages of the remaining litigation, Lead Plaintiffs would bear the burden of proving, *inter alia*, falsity, materiality, reliance, scienter, loss causation, and damages. *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999). Each of these issues would be vigorously contested and involve a "battle of the experts" from each side. The reaction of a jury to such expert testimony is highly unpredictable. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *9 (S.D.N.Y. Nov. 7, 2007). Indeed, Defendants have raised many defenses to Lead Plaintiffs' allegations—including that the statements at issue were immaterial, accompanied by sufficient cautionary language, and made without the requisite scienter. Defendants would likely raise these same defenses and more at the motion for summary judgment stage, trial, and on appeal—all of which would pose a risk to Lead Plaintiffs and the Settlement Class obtaining relief.

In contrast to the risks posed by further litigation, the Settlement provides substantial relief to the Settlement Class. After consulting with an economics expert, Lead Plaintiffs estimate that the Settlement provides between 7.5% and 7.9% of likely recoverable damages—more than twice the median recovery of securities class actions with the same magnitude of damages. *See, e.g.*, Ex. 7 (excerpt from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities*

*Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) at p. 17 (Fig. 18) (between 2011 and 2022 the median of settlement value as a percentage of "NERA-Defined Investor Losses" was 2.9% for losses between $100 million and $199 million)).  Thus, when weighed against the likelihood of success, the Settlement fairly, reasonably and adequately compensates the Settlement Class.

### 5. The Opinions of Lead Counsel and Class Representatives

Here, Lead Plaintiffs are represented by counsel with extensive experience litigating these types of claims; the Settlement was the result of intense, arm's-length negotiations with the aid of an experienced mediator; and the Parties understood the strengths and weaknesses of the claims and defenses before the Settlement was reached.  Under such circumstances, Lead Counsel's opinion that the proposed Settlement is fair to the Settlement Class "is entitled to considerable weight." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).[9] Accordingly, this factor supports final approval.  *Telectronics*, 137 F. Supp. 2d at 1015 ("The Court heeds the recommendation of such experienced, professional, and competent Counsel.").  Here, the Settlement is endorsed by informed Lead Plaintiffs' and their experienced and informed counsel, as shown by the contemporaneously filed declarations of Lead Plaintiffs and Lead Counsel.

### 6. The Reaction of Absent Class Members

"An overwhelming positive class response highlights the fairness of the settlement to unnamed class members and weighs heavily in favor of approval of the settlement." *In re Regions Morgan Keegan*, 2016 WL 8290089, at *6 (citing *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692

---

[9] As set forth in their declarations, both of the Lead Plaintiffs support final approval of the Settlement.  Exs. 3 at ¶8; 4 at ¶8.

at *4); *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("[T]he Court considers the fact that not one class member objected to the settlement agreement to be most persuasive."). Although the objection and exclusion deadlines have not yet occurred, to date, not a single request for exclusion has been received, or objection filed with the Court. *See* Walter Decl., at ¶¶14-15; Joint Decl., ¶55. The Settlement Class's strongly favorable reaction supports approval. *See In re Regions Morgan Keegan*, 2016 WL 8290089, at *6 (holding that there was a favorable class reaction when no class members objected to the class settlement and only seven class members excluded themselves from the class); *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692, at *4 (holding that the lack of objections – only one in the action – "in relation to the size of the class also highlights the fairness of the settlements to unnamed class members and supports approval of the settle").

### 7. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc.*, 962 F.2d at 1205); *see also In re Regions Morgan Keegan*, 2013 WL 12329512, at *3 (W.D. Tenn. Sept. 5, 2013).

The Settlement provides finality, with a substantial recovery of funds to members of the Settlement Class. Proceeding through discovery and trial in a case of this complexity would require substantial judicial and party resources, including the need to complete discovery, resolution of Lead Plaintiffs' motion for class certification, review of summary judgment motions, exchange of expert reports and expert discovery, pre-trial motions and trial on the merits. *Gascho*, 2014 WL 1350509, at *19 (citing *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *8 (S.D. Ohio Aug.18, 2009)). This factor, therefore, weighs in favor of approval.

### III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

"As part of its examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Bowers*, 2013 WL 5934019, at *4 (citing *Ortiz*

*v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)). The Court considers the fairness and reasonableness of the allocation separately from the general settlement terms. *Id.* (citing *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008)).

Here, the Plan of Allocation is fair and reasonable, as it is tied directly to Settlement Class members' estimated damages according to the claims alleged in this Action. The Plan of Allocation has a rational basis and was formulated by Lead Counsel and their damages expert based on Lead Plaintiffs' theory of liability, ensuring its fairness and reliability. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9–10 (N.D. Cal. Oct. 27, 2015). Under the proposed Plan of Allocation, each Authorized Claimant will receive their *pro rata* share of their Recognized Loss depending on when the share was purchased and sold, and the purchase and sale prices. The Plan of Allocation is similar to plans approved in other securities class actions. *See, e.g.*, *Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation); *Christine Asia*, 2019 WL 5257534, at *15-16 (same). To date, no objections to the Plan of Allocation have been received or filed on this Court's docket. ¶64. Accordingly, Lead Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. 2007) (finding that no objections supports approval of the plan of allocation); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

## IV.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 118 at ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiffs' Preliminary Approval Brief (*see* ECF No. 116 at 21-24), Lead Plaintiffs

16

respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## V. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate, and approve the Plan of Allocation as fair and reasonable, and finally certify the Settlement Class. Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: September 8, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Casey E. Sadler*
Robert V. Prongay (admitted *Pro Hac Vice*)
Casey E. Sadler (admitted *Pro Hac Vice*)
Melissa C. Wright (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
csadler@glancylaw.com
mwright@glancylaw.com

**POMERANTZ LLP**
Joshua B. Silverman (admitted *Pro Hac Vice*)
Louis C. Ludwig (admitted *Pro Hac Vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

17

**STRANCH, JENNINGS & GARVEY, PLLC**
J. Gerard Stranch, IV (BPR #023045)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@bsjfirm.com

*Liaison Counsel for Lead Plaintiffs and the Proposed Settlement Class*

18

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*s/ Casey E. Sadler*
Casey E. Sadler