# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| CALEB PADILLA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, LARRY CASH, and THOMAS J. AARON,<br><br>Defendants. | Case No.: 3:19-cv-00461<br><br>DISTRICT JUDGE ELI J. RICHARDSON<br><br>MAGISTRATE JUDGE BARBARA D. HOLMES |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................5

    A. Lead Counsel Are Entitled to an Award of Fees from the Common Fund..............5

    B. The Court Should Award Attorneys' Fees Using the Percentage Approach...........5

    C. The Requested Fees Are Reasonable Under the Percentage-Of-The-Fund Method ...................................................................................................................7

    D. Consideration of the *Ramey* Factors Supports the Requested Fee Award...............9

        1. The Value of the Benefit Achieved .................................................................9

        2. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ...............................................................................................13

        3. The Contingent Nature of the Representation Supports the Fee Request.........................................................................................................15

        4. Society's Interest in Rewarding Attorneys Who Enforce the Securities Laws Supports the Requested Fee.............................................17

        5. The Complexity of the Litigation Supports the Requested Fee.................18

        6. The Quality of Representation Supports the Requested Fee .....................19

    E. Plaintiffs' Counsel's Expenses Should Be Reimbursed Because They Are Reasonable and Were Necessarily Incurred in the Prosecution of the Action....................................................................................................................20

    F. Lead Plaintiffs' Requests for Costs and Expenses Should Be Granted.................22

III. CONCLUSION.....................................................................................................23

i

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....................................................................................... 2, 10

*Anixter v. Home-Stake Prods. Co.*,
77 F.3d 1215 (10th Cir. 1996) ........................................................................................... 3

*Bailey v. AK Steel Corp.*,
2008 WL 553764 (S.D. Ohio Feb. 28, 2008)................................................................... 14

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) ........................................................................................... 13

*Barnes v. Winking Lizard, Inc.*,
2019 WL 1614822 (N.D. Ohio Mar. 19, 2019) ............................................................... 17

*Basic Inc. v. Levinson*,
485 U.S. (1988)................................................................................................................. 17

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .................................................................. 23

*Bessey v. Packerland Plainwell, Inc.*,
2007 WL 3173972 (W.D. Mich. Oct. 26, 2007)................................................................ 7

*BleachTech LLC v. United Parcel Service, Inc.*,
2022 WL 2900796 (E.D. Mich. July 20, 2022) ................................................................. 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................................ 5

*Bowling v. Pfizer, Inc.*,
102 F.3d 777 (6th Cir. 1996) ............................................................................................. 5

*Boynton v. Headwaters, Inc.*,
2012 WL 12546853 (W.D. Tenn. Mar. 27, 2012) ........................................................... 5, 8

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014).............................................................................................. 12

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) ........................................................................... 14

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000) .............................................................. 10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................ 16

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................... 19

*Connectivity Systems Inc. v. National City Bank*,
2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..................................................... 14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................... 11, 12

*Eltman v. Grandma Lee's, Inc.*,
1986 WL 53400 (E.D.N.Y. May 28, 1986) ....................................................... 18

*Employees Retirement System of the City of St. Louis v. Jones*,
2022 WL 14160253 (S.D. Ohio Aug. 23, 2022)................................................. 14

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991)...................................................................... 15

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................... 3

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).................................................................................. 10

*Granada Inv., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ....................................................................... 2, 18

*Gross v. GFI Grp., Inc.*,
784 F. App'x. 27 (2d Cir. 2019) ........................................................................ 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)........................................................................................... 12

*Hefler v. Wells Fargo & Company*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................................... 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................................. 9

Case 3:19-cv-00461   Document 126   Filed 09/08/23   Page 4 of 33 PageID #: 2008

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...................................................................... 11

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................... 3

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................... 12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................... 12

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) .......................................................................... 10

*In re Caraco Pharm. Lab., Ltd. Sec. Litig.*,
2013 WL 3213328 (E.D. Mich. June 26, 2013)............................................................. 8

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) .................................................... 7, 14, 16, 23

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................... *passim*

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001)......................................................................................... 12

*In re CMS Energy Sec. Litig.*,
2007 WL 9611274 (E.D. Mich. Sept. 6, 2007).......................................................... 15

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ..................................................................... *passim*

*In re Dun & Bradstreet Credit Services Customer Litigation*,
130 F.R.D. 366 (S.D. Ohio 1990)........................................................................... 22, 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009).......................................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................. 16

*In re Giant Interactive Group, Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. Nov. 2, 2011) ................................................................... 16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 11, 21

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................... 10

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................................... 15

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) .................................................................... 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................. 12, 23

*In re Nationwide Fin. Serv. Litig.*,
   2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ................................................... 9

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ...................................... 13, 16, 20

*In re Prandin Direct Purchaser Antitrust Litig.*,
   2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ........................................ *passim*

*In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*,
   2016 WL 7735229 (E.D. Tenn. Dec. 12, 2016) ................................................. 20

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........................................ *passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2014 WL 2946459 (E.D. Tenn. June 30, 2014) ....................................... *passim*

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 1029 (S.D. Ohio 2001) .................................................. 13, 17, 18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 570 (S.D.N.Y. 2008) ...................................................................... 7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) .................................................................... 18

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..................................................... 23

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)................................................................. 16, 23

*Jorling v. Anthem, Inc.*,
   836 F. Supp. 2d 821 (S.D. Ind. 2011) ....................................................................... 10

*Kritzer v. Safelite Solutions, LLC*,
   2012 WL 1945144 (S.D. Ohio May 30, 2012) ........................................................... 17

*Lea v. TAL Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)............................................................. 14

*Leach v. NBC Universal Media, LLC*,
   2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017)........................................................... 15

*Lucyk v. Materion Brush Inc.*,
   2023 WL 4405280 (N.D. Ohio July 7, 2023) ............................................................. 15

*Manners v. Am. Gen. Life Ins. Co.*,
   1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ....................................................... 14

*McHugh v. Olympia Entm't, Inc.*,
   37 Fed. Appx. 730 (6th Cir. 2002)............................................................................. 14

*Missouri v. Jenkins,*
   491 U.S. 274 (1989).................................................................................................. 14

*Nappier v. Pricewaterhouse Coopers LLP*,
   227 F. Supp. 2d 263 (D.N.J. 2002) ........................................................................... 11

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006)........................................................................ *passim*

*Palombaro v. Emery Fed. Credit Union*,
   2018 WL 4635973 (S.D. Ohio Sept. 27, 2018) .......................................................... 23

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ................................................................................ 9, 17

*Rawlings v. Prudential Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) ........................................................................................ 5, 6

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................... 3

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................................ 13

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ............................................................. 10

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ........................................................................................ 3

*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ............................................................. 15

*Swigart v. Fifth Third Bank*,
   2014 WL 3447947 (S.D. Ohio July 11, 2014) ............................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................................... 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ......................................................................................... 6

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .............................................................................. 15

*Varljen v. H.J. Meyers & Co.*,
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ............................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................................. 6

*Worthington v. CDW Corp.*,
   2006 WL 8411650 (S.D. Ohio May 22, 2006) ............................................................... 7

STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................... 1, 22

15 U.S.C. § 78u-4(a)(6) ................................................................................................. 6

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM") and Pomerantz LLP ("Pomerantz"; and together with GPM, "Lead Counsel"), respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.    **INTRODUCTION**

Plaintiffs' Counsel[2] have succeeded in obtaining a $9,500,000 non-reversionary, all cash settlement (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is an extremely favorable outcome in the face of substantial risks that was the result of Plaintiffs' Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $3,166,667, plus interest earned thereon), and reimbursement of $231,752.84 in Litigation Expenses. The Litigation Expenses consist of $206,752.84 in out-of-pocket costs incurred by Plaintiffs' Counsel while prosecuting the Action, and an aggregate of $25,000 to Court-appointed Lead Plaintiffs Arun Bhattacharya ($10,000) and Michael Gaviria ($15,000) (collectively, "Lead Plaintiffs"), for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-

---

[1] Unless otherwise defined, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation"; ECF No. 117-1), or the concurrently filed Declaration of Casey E. Sadler and Joshua B. Silverman in Support of: (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2] Plaintiffs' Counsel consists of Lead Counsel, Court-appointed liaison counsel Stranch, Jennings & Garvey, PLLC ("Stranch Jennings"), and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Settlement Class in the Action. Stipulation, ¶1(hh).

4(a)(4).

As detailed below and in the accompanying Joint Declaration,[3] the Settlement represents an excellent recovery for the Settlement Class. In the absence of the Settlement, the litigation would likely have continued for many years, through class certification, fact discovery, expert discovery, summary judgment, trial, and likely appeals. Lead Plaintiffs and their counsel faced substantial obstacles in proving liability and damages, yet nevertheless reached a timely and substantial resolution for the Settlement Class.

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Plaintiffs' Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the complex nature of the claims at issue which hinged on highly technical changes in accounting standards, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. These are not idle risks. *See Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (stating that securities litigation is "notoriously difficult and unpredictable"). "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). As a result, a significant number of cases are dismissed at the outset.[4] Nor do the risks end at the pleading

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history and the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiffs' Counsel have provided for the benefit of the Settlement Class.

[4] *See* Ex. 8 (excerpt from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) ("NERA Report") at p. 11 (Fig. 11) (finding motion to dismissed filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied.").

stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[5] There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Despite facing long odds, Plaintiffs' Counsel vigorously pursued this case for more than four years. Among other things, Plaintiffs' Counsel:

- conducted a thorough investigation of the claims asserted in the Action, which included: (a) a review and analysis of (i) Community Health Systems, Inc.'s ("CHS") SEC filings, press releases, investor conference calls, and other public statements; (ii) publicly available documents, announcements, and news articles concerning CHS; and (iii) research reports prepared by securities and financial analysts regarding CHS; (b) interviews with former employees and other potential witnesses with relevant information; and (c) consultation with accounting, loss causation and damages experts;

- drafted the initial complaint in the Action, as well as the 63-page Amended Complaint (the "Amended Complaint"), based on Plaintiffs' Counsel's extensive investigation;

- engaged in substantial briefing related to Defendants' motion to dismiss, which resulted in the Court sustaining the Amended Complaint in its entirety;

- engaged in discovery, which included, *inter alia*: (a) researching and drafting initial disclosures; (b) propounding and responding to requests for production of documents and interrogatories; (c) negotiating an agreed confidentiality order and a protocol to

---

[5] *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues), *reh'g denied* (July 1, 2015); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prods. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

govern the production of electronically stored information and other documents; (d) serving a subpoena *duces tecum* on third-party Deloitte & Touche LLP, CHS's auditor; (e) meeting and conferring with counsel for Defendants and third-parties; (f) reviewing and producing approximately 1,500 pages of documents to Defendants; (g) reviewing and analyzing the more than 450,000 pages of documents produced by Defendants and third parties; and (h) preparing for class certification and fact depositions;

- worked with a market efficiency and damages expert in preparation for filing a class certification motion;

- exchanged documents and mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants as part of a mediation process and then participated in a full-day mediation session with an experienced neutral that culminated in an agreement in principle to resolve the Action for $9,500,000 in cash for the benefit of the Settlement Class;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiffs and all other members of the proposed Settlement Class fairly;

- prepared the initial draft, and negotiated the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting papers;

- worked with the Court appointed Claims Administrator to provide notice to the Settlement Class; and

- drafted the final approval motion and supporting papers. *See* ¶¶14-28, 46-54.

As compensation for their considerable efforts on behalf of the Settlement Class, Plaintiffs' Counsel seek an award equal to 33⅓% of the Settlement Fund and reimbursement of out-of-pocket litigation expenses in the amount of $206,752.84. The requested fee is reasonable and consistent with fees regularly awarded in Sixth Circuit class action settlements. The reasonableness of the requested fee is further confirmed by the use of a lodestar cross-check. Here, the requested fee would result in a multiplier of approximately 1.41, which is well within

4

the range of multipliers commonly awarded in similarly complex class actions with substantial contingency risks.

For these reasons, as well as those set forth below and in the Joint Declaration, Lead Counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable standards and should be awarded by the Court. The Litigation Expenses requested by Plaintiffs' Counsel and the Lead Plaintiffs are likewise reasonable and the expenses were necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## II. ARGUMENT

### A. Lead Counsel Are Entitled to an Award of Fees from the Common Fund

"[I]t is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-32 (E.D. Mich. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In common fund cases, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Boynton v. Headwaters, Inc.*, 2012 WL 12546853, at *2 (W.D. Tenn. Mar. 27, 2012). Trial courts have broad discretion in awarding attorneys' fees in common fund cases, and the Sixth Circuit has made clear that such awards "need only be reasonable under the circumstances." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996).

### B. The Court Should Award Attorneys' Fees Using the Percentage Approach

Although the Sixth Circuit has granted district courts the discretion to utilize either the lodestar or the percentage-of-the-fund method when awarding attorneys' fees (*Rawlings v. Prudential Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (affirming application of lodestar method with a 2x multiplier), courts within the Sixth Circuit have recognized the clear trend in "common fund cases…toward use of the percentage method." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (quoting *Cardizem*, 218 F.R.D. at 532).

Courts in this Circuit prefer the percentage method of awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See, e.g.*, *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) ("[T]he percentage-of-the-fund approach more accurately reflects the result achieved.").[6] Indeed, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

For these reasons, among others, district courts in this Circuit have virtually uniformly shifted to the percentage method in awarding fees in common fund cases. *See, e.g.*, *Rawlings*, 9 F.3d at 515-16; *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014) ("[T]he preferred method is to award a reasonable percentage of the fund"); *Skelaxin*, 2014 WL 2946459, at *1; *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008); *Cardizem,* 218 F.R.D. at 532.

Finally, since this case is a securities class action, it is important to recognize that application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that,"[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). In fact, courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities

---

[6] *See also Skelaxin*, 2014 WL 2946459, at *1 ("[T]he percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases."); *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) ("[T]he lodestar method is too cumbersome and time-consuming of the resources of the Court.").

cases is that the PSLRA contemplates such a calculation.").[7]

### C. The Requested Fees Are Reasonable Under the Percentage-Of-The-Fund Method

Although "the Sixth Circuit does not have a separate factor for comparing similar awards in other cases, courts in the Sixth Circuit often choose to analyze fees in comparable cases, either in one of the factors, or at the end of their factor analysis." *Cardinal Health*, 528 F. Supp. 2d at 769 n.12 (considering benchmark cases before synthesizing *Ramey* factors). Here, Lead Counsel's fee request of 33⅓% of the Settlement Fund falls squarely within the range of fees awarded on a percentage basis in complex common fund cases. *See Skelaxin*, 2014 WL 2946459, at *1 (finding that a fee of 33.3% is "within the range of fees ordinarily awarded."); *Se. Milk*, 2013 WL 2155387, at *3 (finding that a 33.3% fee request is "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *BleachTech LLC v. United Parcel Service, Inc.*, 2022 WL 2900796, at *2 (E.D. Mich. July 20, 2022) ("Class Counsel's request for 33⅓% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit."); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding a fee of 33% and noting that, "[e]mpirical studies show that… fee awards in class actions average around one-third of the recovery.").[8]

In addition to finding awards of one-third or more reasonable, courts in the Sixth Circuit, including this Court, have routinely granted such awards. *See, e.g.*, *Burges v. Bancorp South,*

---

[7] *See also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions."); *Delphi*, 248 F.R.D. at 502.

[8] *See also In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (finding award of one-third of the settlement fund "within the range of fees ordinarily awarded," and "within the range of fee awards in settlements of this type."); *Worthington v. CDW Corp.*, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) ("[C]ounsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range").

*Inc.*, No. 3:14-cv-01564, ECF No. 265, ¶3 (M.D. Tenn. Sept. 21, 2018) (awarding one-third of a $13 million recovery, plus expenses) (Ex. 9); *In re Sirrom Capital Corp. Sec. Litig.*, No. 3-98-0643, slip op. at 6 (M.D. Tenn. Feb. 4, 2000) (awarding one-third of a $15 million settlement, plus expenses) (Ex. 10); *Morse v. McWhorter*, No. 3:97-0370, slip op. at 1 (M.D. Tenn. Mar. 12, 2004) (awarding 33.3% of $49.5 million settlement, plus expenses) (Ex. 11); *Se. Milk*, 2013 WL 2155387, at *1, 3, 8 (awarding fee of one-third of $158.6 million settlement, plus expenses); *In re Foundry Resins Antit. Litig.*, No. 2:04-MDL-1638 (S.D. Ohio March 31, 2008), ECF No. 247, ¶¶ 1, 2 (33⅓ of $14.1 million, plus expenses) (Ex. 12); *Skelaxin*, 2014 WL 2946459, at *1, 3 (one-third of a $73 million settlement fund, plus expenses); *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 11-cv-00489, ECF Nos. 272-1, 274 (M.D. Tenn. Jan. 17, 2017) (awarding 33.3% of $60 million recovery (Ex. 13); *Boynton*, 2012 WL 12546853, at *2, 4 (awarding 40% of $16,011,771, plus expenses); *Indiana State District Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, No. 2:06-cv-00026-WOB-CJS, ECF No. 332, ¶3 (E.D. Ky. June 27, 2019) (awarded one-third of $20 million settlement, plus expenses) (Ex. 14); *In re Caraco Pharm. Lab., Ltd. Sec. Litig.*, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33% of $2.975 million settlement); *Prandin*, 2015 WL 1396473, at *4 (awarding one-third of $19 million settlement, plus expenses); *North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, No. 3:11-cv-00595, slip op. at 1 (M.D. Tenn. May 12, 2014) (awarding 33.3% of $3.25 million settlement, plus expenses) (Ex. 15).[9] Thus, precedent within this Circuit supports the requested fees of 33⅓% of the Settlement Fund.

Finally, as of August 31, 2023, approximately 30,365[10] Postcard Notices had been mailed to potential Settlement Class Members and, to date, no Settlement Class Member has objected to

---

[9] *See also* Ex. 16 (collecting Sixth Circuit cases with 33% or higher fee awards).

[10] *See* Ex. 1 (Declaration of Adam D. Walter Regarding: (A) Mailing of Postcard Notice; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Walter Decl.") at ¶8 (31,923 Postcard Notices were mailed, of which a total of 1,558 were undeliverable).

Lead Counsel's request for attorneys' fees and expenses. *See* ¶¶50, 55 & Ex. 1 (Walter Decl.), at ¶15. While not dispositive, "[t]he lack of objections from the Class supports the reasonableness of the fee request." *New England*, 234 F.R.D. at 634; *see also In re Nationwide Fin. Serv. Litig.*, 2009 WL 8747486, at *7, *14 (S.D. Ohio Aug. 19, 2009) (finding that "[t]he reaction of the Class also supports the requested fee and expense award."). If any objections are received, they will be addressed in Lead Counsel's reply papers, which will be filed on September 22, 2023.

**D.      Consideration of the *Ramey* Factors Supports the Requested Fee Award**

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974); *see also Skelaxin*, 2014 WL 2946459, at *2. As demonstrated below, each of these factors supports an award of the requested attorneys' fees in this case.

**1.      The Value of the Benefit Achieved**

"The primary factor in determining a reasonable fee is the result achieved on behalf of the class." *Delphi*, 248 F.R.D. at 503; *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."). Here, Lead Counsel have secured a Settlement that provides for a substantial, non-reversionary, cash payment of $9,500,000 for the benefit of the Settlement Class.

The Settlement represents between 7.5% and 7.9% of the potential *maximum* aggregate recoverable damages of approximately $120-126 million, which assumes Lead Plaintiffs overcame *all* the obstacles to establishing liability, the Court certified the same class as the Settlement Class, and Lead Plaintiffs completely prevailed on *all* their loss causation and damages theories. ¶¶4, 45. Notably, this recovery is *more than two and a half times* the typical

recovery for cases of a similar magnitude. *See, e.g., ¶*45 &Ex. 8 (NERA Report, at p. 17 (Fig. 18) (median recovery was 2.9% for securities class actions with estimated damages between $100-$199 million that settled between December 2011-December 2022)); *see also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *5 (N.D. Ind. Sept. 18, 2020) (noting that a securities class action settlement recovering 8% of maximum damages was a "superb result for the class").

Yet, to fully appreciate the Settlement, it must be evaluated in light of the procedural and substantive hurdles that Lead Plaintiffs overcame, and would have had to overcome, in order to prevail in this complex securities fraud litigation. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."). While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. *See In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."); *Alaska Elec.*, 572 F.3d at 235.

Indeed, there existed a very real risk that the Court would dismiss the Amended Complaint pursuant to the stringent pleading standards of the PSLRA, and that the PSLRA's automatic stay of discovery would prevent Lead Plaintiffs from obtaining the evidence needed to successfully replead their claims. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process.").[11] Accordingly, from its inception, there was a significant chance that this case would not progress past the pleading stage. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative

---

[11] *See also Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000) ("An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard."), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Nor did the risks end at the pleading stage. Although Lead Counsel believe that the allegations of the Amended Complaint would ultimately translate into a strong case, they were also keenly aware they faced numerous hurdles to ***proving*** liability and class-wide damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). Defendants raised numerous defenses, including that: (a) none of the challenged statements were materially false or misleading; (b) Defendants did not act with the requisite fraudulent intent; and (c) the alleged misstatements did not cause Lead Plaintiffs' losses. ¶¶33-40. Each of these issues is fact intensive and/or would require extensive expert testimony to resolve. For instance, as the Court stated in deciding the motion to dismiss, the reasonableness of Defendants' accounting "is a question of fact to be decided by the jury." ECF No. 77 at 35; *see also Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) (noting that whether an accounting practice complies with GAAP is a question of fact best resolved through expert testimony). If Defendants had prevailed on their liability arguments, it would have proven fatal to Lead Plaintiffs' claims. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. 2019) (affirming summary judgment on alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable).

Moreover, even if Lead Plaintiffs' prevailed on liability, they also bore the burden of proving loss causation and damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."). In securities class actions, "[c]alculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion ... ." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459. As a result, "[t]here

11

is the undeniable risk that a jury could be swayed by experts for the Defendants, who could minimize the amount of Plaintiffs' losses." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).[12]

Here, Defendants would have no doubt argued at class certification, summary judgment, trial and on appeal that the stock-price declines on the alleged disclosure dates were the result of negative information unrelated to CHS's bad debt expense entering the market, including, *inter alia*, news about divestitures, industry trends, the effects of hurricanes and lower patient admissions.[13] Had these loss causation arguments been accepted by the trier of fact at any stage of the litigation, damages could have been greatly reduced, or even eliminated. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).[14] Proving class-wide damages in this case was, therefore, far from a *fait accompli*. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

---

[12] *See also In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

[13] *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by changed economic circumstances, 'changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements." quoting *Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 343 (2005)).

[14] *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("defendants must be afforded an opportunity before class certification to defeat the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock."); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 97 (1st Cir. 2014) ("[W]e *affirm* the district court's exclusion of the shareholders' expert testimony [on loss causation] and consequently *affirm* its award of summary judgment to CSFB." (Emphasis in the original)).

While Plaintiffs' Counsel believe that they would have ultimately been able to overcome all of Defendants' arguments, there can be no question that, from the outset, this Action was difficult, complex, and fraught with risk. *See Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very real."). Plaintiffs' Counsel nevertheless obtained an excellent result for the Settlement Class. Success in the face of these obstacles strongly supports the requested fee. *See In re Prandin Direct Purchaser Antitrust Litigation*, 2015 WL 1396473, at \*4 (E.D. Mich. Jan. 20, 2015) (awarding one-third of $19 million settlement fund where, *inter alia*, "Class Counsel bore significant risks. In particular, Plaintiffs here faced substantial obstacles in attempting to establish antitrust liability, causation, and damages.").

> **2.    The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee**

When applying the percentage-of-the-fund method, courts will look at the hours expended by counsel, either as a factor in the fee analysis or as an independent cross-check. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at \*18 (E.D. Mich. Dec. 13, 2011). Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).

As shown in the declarations submitted with this motion, Plaintiffs' Counsel and their professional staff have worked a total of 3,573.60 hours on this case.[15] *See* ¶70 and Exs. 5

---

[15] Plaintiffs' Counsel's lodestar was calculated after review of detailed time records, the purpose of which was to confirm the accuracy and reasonableness of time entries. As a result of this review, appropriate reductions were made to Plaintiffs' Counsel's reported time in the exercise of billing judgment. Moreover, Plaintiffs' Counsel have not included in their lodestar time spent in connection with the preparation of this motion for fees and expenses. In complex litigation such as this, reasonable hourly rates are appropriately determined by reference "to national

(Sadler Decl. at ¶6), 6 (Silverman Decl. at ¶6) and 7 (Stranch Decl. at ¶6).[16] Applying the rates charged by counsel to these hours yields a "lodestar" of $2,243,033.35.[17] *See id.* Thus, the requested fee of 33⅓% ($3,166,667) represents a multiplier on Plaintiffs' Counsel's lodestar of approximately 1.41.

A multiplier of 1.41 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Bailey v. AK Steel Corp.*, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, and noting that this multiplier "is well within the range of multipliers awarded in similar litigation" and identifying "normal range [as] between two and five"); *In re Cardinal Health Inc. Sec. Litig.,* 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (awarding fee equal to multiplier of 5.9 and stating "[m]ost courts agree that the typical lodestar multiplier in a large post-PSLRA securities class actions ranges from 1.3 to 4.5."); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *31 (M.D. Tenn.

---

markets, an area of specialization, or any other market [the court believes] is appropriate to fully compensate attorneys in individual cases." *McHugh v. Olympia Entm't, Inc*., 37 Fed. Appx. 730, 740 (6th Cir. 2002). Here, Lead Counsel's rates "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021).

[16] As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Plaintiffs' Counsel have each submitted a declaration that includes a schedule identifying the lodestar of each firm (by individual, position, billing rate, and hours billed). *See Brotherton v. Cleveland*, 141 F.Supp.2d 907, 912 (S.D. Ohio 2001) ("Class Counsel has summarized the basic lodestar for each of the attorneys, paralegals and law clerks who have worked on this case."). "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used." *Se. Milk*, 2013 WL 2155387, at *2, n.3; *see also Employees Retirement System of the City of St. Louis v. Jones*, 2022 WL 14160253, at *12 (S.D. Ohio Aug. 23, 2022) ("one advantage of the percentage approach is that it spares agonizing judicial review of the time sheets.").

[17] "To compensate for the delay Plaintiffs' Counsel encountered in receiving compensation, it is appropriate to use current fee rates in calculating the lodestar." *Connectivity Systems Inc. v. National City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) citing *Missouri v. Jenkins,* 491 U.S. 274, 283–84 (1989) (current rates, rather than historical rates applied to compensate for the delay in payment).

14

Aug. 11, 1999) (awarding fees that amount to a multiplier of 3.8, and noting that multipliers in similar complex class actions "have ranged from 1-4 and have reached as high as 10"); *Lucyk v. Materion Brush Inc.*, 2023 WL 4405280, at *6 (N.D. Ohio July 7, 2023) (finding multiplier of 2.7 "well within the accepted range for these types of cases."); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (finding that a multiplier of 2.4 to 2.6 is "reasonable and conservative when compared to similar cases").[18]

Moreover, "[t]he fact that [Plaintiffs'] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Among other things, Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work.

Consequently, whether analyzed as a cross-check on the percentage-of-the-fund method or independently under the lodestar method, this factors supports a finding that the requested fees are reasonable.

### 3. The Contingent Nature of the Representation Supports the Fee Request

"Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award." *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich.

---

[18] *See also In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (awarding fee equal to multiplier of 3.6 and stating that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 533 (E.D. Mich. Oct. 10, 2003) (noting that attorneys for direct purchaser class plaintiffs received a fee award that equated to a lodestar multiplier of 3.7); *In re Prandin Direct Purchaser Antitrust Litigation*, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (awarding fees that "would equate to a multiplier of 3.01"); *In re CMS Energy Sec. Litig.*, 2007 WL 9611274, at *4 (E.D. Mich. Sept. 6, 2007) (2.61 multiplier).

Dec. 8, 2009); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d at 766. This is because attorneys that take cases with "a significant risk of nonpayment … should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Packaged Ice Antitrust Litigation*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d at 766 (contingency factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case."). Indeed, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)).

Here, Plaintiffs' Counsel have prosecuted the Action on a ***fully*** contingent basis. Plaintiffs' Counsel understood from the outset that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [many] years." *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. Nov. 2, 2011). "Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began [more than four] years ago." *Flag Telecom*, 2010 WL 4537550, at *27. Plaintiffs' Counsel's commitment was substantial (*i.e.*, $2,243,033.35 in lodestar and $206,752.84 in out-of-pocket hard costs), and had they not obtained a recovery, it could have all been lost. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

Accordingly, the contingent nature of this highly risky litigation supports the requested fee. *See Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at \*5 (N.D. Ohio Mar. 19, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless there was a recovery, and should be compensated for that risk."); *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at \*9 (S.D. Ohio May 30, 2012) ("Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee[.]).

### 4. Society's Interest in Rewarding Attorneys Who Enforce the Securities Laws Supports the Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. at 224, 230-31 (1988). Adequate compensation is, of course, a necessary component of encouraging attorneys to assume the risk of litigation in the public interest. Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing and able to properly prosecute to a favorable conclusion complex, risky and extremely expensive securities class actions such as this one. Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *Delphi*, 248 F.R.D. at 503; *see also Ramey*, 508 F.2d at 1196; *Telectronics*, 137 F. Supp. 2d at 1043 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.").

It cannot be disputed that society benefits from fair and efficient capital markets and that private enforcement of the securities laws is a necessary component thereof. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC). Moreover, class actions are often the only economically feasible way for investors – both large and small – to obtain compensation when they are victims of securities fraud. Given that

17

the Settlement in this case will provide meaningful relief to hundreds of investors, this factor weighs strongly in favor of the requested award. *See Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts.").[19]

### 5. The Complexity of the Litigation Supports the Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504. Courts have long recognized that "most class actions are inherently complex[,]" (*Telectronics*, 137 F. Supp. 2d at 1013), and securities litigation in particular is "notoriously difficult and unpredictable." *Granada*, 962 F.2d at 1205.[20] This case was no exception.

As noted above and in the Joint Declaration, this litigation raised many complex factual and legal questions that required extensive efforts by Plaintiffs' Counsel and consultation with experts to bring to resolution. To prosecute the case, Lead Counsel had to, among other things, gain a working knowledge of CHS's business, how it accounted for its accounts receivables and bad debt, as well as applicable Generally Accepted Accounting Principles (and in particular the differing technical standards between ASC 605 and ASC 606, and their impact on financial reporting). Lead Counsel also had to understand the complex loss causation and damages issues. These were not easy tasks, and Lead Counsel consulted extensively with experts when crafting the Amended Complaint, briefing the motion to dismiss, and preparing the mediation briefs.

---

[19] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.").

[20] *See also New England*, 234 F.R.D. at 634 ("Securities litigation class actions are inherently complex").

Indeed, the complexity of the issues involved in this case is evidenced by the 63-page Amended Complaint, the complicated nature of the briefing on Defendants' motion to dismiss, the Court's 69-page opinion denying the motion to dismiss (ECF No. 77), and the more than 450,000 pages of documents produced by Defendants and third parties. Had Plaintiffs' Counsel not devoted the necessary resources and attention to the difficult questions raised in this case, they would not have prevailed. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 632 (D. Colo. 1976) (securities litigation presents "unique and substantial issues of law in the technical area of SEC Rule 10b-5…difficult, complex, and oft-disputed class action questions, and difficult questions regarding computation of damages.").

Consequently, the complexity of the Action weighs heavily in favor of the requested fee award. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### 6. The Quality of Representation Supports the Requested Fee

Plaintiffs' Counsel are nationally known leaders in the fields of securities class actions and complex litigation. *See* Exs. 5-C, 6-C, and 7-C (Plaintiffs' Counsel's firm resumés). The quality of the representation is demonstrated by the substantial benefit achieved for the Settlement Class and the efficient, effective prosecution and resolution of the Action. The significant recovery obtained for the Settlement Class is a direct result of the efforts of highly-skilled and specialized attorneys who possess extensive experience in the prosecution of complex securities class actions. From the outset of the action, Plaintiffs' Counsel engaged in a concerted effort to obtain the maximum recovery for the putative class and committed considerable resources and time in the research, investigation and prosecution of the case. Based upon Plaintiffs' Counsel's diligent efforts and their skill and reputation, they were able to negotiate a highly favorable result under difficult and challenging circumstances. Such quality, efficiency, and dedication support the requested fee.

The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. *See, e.g., In re Delphi Corp. Sec., Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The quality of opposing counsel also is important to evaluate."). Here, Plaintiffs' Counsel were opposed by Riley & Jacobson, PLC, a highly-qualified defense firm that spared no effort in the defense of its clients. Plaintiffs' Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that represent a fair, reasonable and adequate recovery to the Settlement Class. "The ability of []Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *Delphi*, 248 F.R.D. at 504.

For the reasons set forth above, Lead Counsel respectfully request that the Court grant their request for an attorneys' fee award in the amount of 33⅓% of the Settlement Fund, or $3,166,667, plus interest earned thereon.[21]

**E.      Plaintiffs' Counsel's Expenses Should Be Reimbursed Because They Are Reasonable and Were Necessarily Incurred in the Prosecution of the Action**

Lead Counsel also requests reimbursement of out-of-pocket expenses incurred in connection with the prosecution of this litigation in the amount of $206,752.84. *See* ¶¶82-88. "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'" *New England*, 234 F.R.D. at 634-35 (quoting *Cardizem*, 218 F.R.D. at 535); *see also Se. Milk*, 2013 WL 2155387, at *7 ("[e]xpense

---

[21] "The fee percentage is applied to the settlement fund before the separate award of litigation costs and expenses are deducted from the fund." *In re Packaged Ice Antitrust Litigation*, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011); *see also In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*, 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) (attorneys' fees awarded based on the gross settlement fund); *In re Cardizem,* 218 F.R.D. at 531-35 (same); *In re Delphi Corp. Sec. Litig.,* 248 F.R.D. 483, 505 (E.D. Mich. 2008) (same).

20

awards are customary" in common fund cases).  In determining whether expenses are reasonable and compensable, the inquiry is whether the particular costs are of the variety typically billed by attorneys to paying clients in similar litigation.  *See New England*, 234 F.R.D. at 634-35 (citing *Cardizem*, 218 F.R.D. at 535).

Here, the Joint Declaration attests to the accuracy of Plaintiffs' Counsel's expenses, listing all expense items by specific category and amount.  *See* ¶83.[22]  A significant portion of the expenses were incurred for professional services rendered by Lead Plaintiffs' experts, investigators, and the mediator, and the remaining expenses are attributable to necessary travel (in economy class) and other incidental expenses incurred in the course of the litigation.  *See* ¶¶83-88 (explanation of expenses and breakdown of expenses by category).  These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, and they are of the type typically billed by attorneys to paying clients in similar litigation.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred-which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which 'the paying, arms' length market' reimburses attorneys."); *Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action.").  The expenses for which Lead Counsel request reimbursement are, therefore, "properly chargeable to the Settlement fund." *Global Crossing*, 225 F.R.D. at 468.

---

[22] *See also Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred, but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses.").

Moreover, to date, not a single objection to the expense request has been filed with the Court, and the amount requested is far below the $300,000 limit disclosed in the Notice. *See* Joint Decl., ¶90; Ex. 1 (Walter Decl., ¶15). Accordingly, Lead Counsel respectfully request reimbursement for these expenses.

**F.      Lead Plaintiffs' Requests for Costs and Expenses Should Be Granted**

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits the Lead Plaintiffs in this case to recoup litigation costs (including lost wages) incurred as a result of serving as Lead Plaintiffs in the Action. Through their service, Lead Plaintiffs ensured that the Settlement Class was adequately represented in all respects. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5, n.2 (S.D.N.Y. Nov. 8, 2000). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *New England*, 234 F.R.D. at 635.

Here, Lead Plaintiffs respectfully request reimbursement of costs and expenses in the amounts of $10,000 for Mr. Bhattacharya and $15,000 for Mr. Gaviria. *See* ¶89; Ex. 3 ("Bhattacharya Decl."), ¶13; Ex. 4 ("Gaviria Decl."), ¶13.[23] As set forth in their declarations, Lead Plaintiffs stepped forward to represent the Settlement Class and devoted many hours participating in this litigation, including, *inter alia,* (a) regularly communicating with Lead Counsel regarding the posture and progress of the case; (b) reviewing pleadings and briefs filed in the Action; (c) reviewing the Court's orders; (d) responding to document requests and producing documents in conjunction therewith; (e) responding to interrogatories; (f) communicating with Lead Counsel regarding mediation related topics and making themselves

---

[23] *See In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (noting that "a differentiation among class representatives based upon the role each played may be proper in given circumstances.").

available during the mediation and settlement negotiations; and (g) evaluating and approving the Settlement Amount. *See* Bhattacharya Decl., ¶¶4-5; Gaviria Decl., ¶¶4-5; *see also Palombaro v. Emery Fed. Credit Union*, 2018 WL 4635973, at *13 (S.D. Ohio Sept. 27, 2018) (finding similar declarations be sufficient to support compensatory awards for each representative plaintiff). Lead Plaintiffs' service in the Action consists of "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009).

In light of the substantial work performed by Lead Plaintiffs for the benefit of the Settlement Class, the amount requested is eminently reasonable. Moreover, it is consistent with awards in other cases, and there have been no objections thereto. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *12 (S.D.N.Y. Nov. 7, 2007) (awarding $15,900 to lead for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).[24] Accordingly, Lead Plaintiffs respectfully request that the Court to grant their requests. *See Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019) ("Without [Plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible."); *In re Xcel*, 364 F.Supp.2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves").

III.    CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

---

[24] *See also Cardinal Health*, 528 F. Supp. 2d at 770-71 (awarding an aggregate of $82,452.81, consisting of $10,830.67 to one lead plaintiff, $14,812.50 to the second lead plaintiff, and $56,809.64 to the third lead plaintiff); *In re Dun & Bradstreet Customer Litigation*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (awarding two class representatives $55,000 each and three class representatives $35,000 each).

23

Dated: September 8, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Casey E. Sadler*
Robert V. Prongay (admitted *Pro Hac Vice*)
Casey E. Sadler (admitted *Pro Hac Vice*)
Melissa C. Wright (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
csadler@glancylaw.com
mwright@glancylaw.com

**POMERANTZ LLP**
Joshua B. Silverman (admitted *Pro Hac Vice*)
Louis C. Ludwig (admitted *Pro Hac Vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the*
*Proposed Settlement Class*

**STRANCH, JENNINGS & GARVEY PLLC**
J. Gerard Stranch, IV (BPR #023045)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

*Liaison Counsel for Lead Plaintiffs and the*
*Proposed Settlement Class*

24

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

_s/ Casey E. Sadler_
Casey E. Sadler