# EXHIBIT 13

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| In re COMMUNITY HEALTH SYSTEMS, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) | Master Docket No. 3:11-cv-00489 (Consolidated with No. 3:11-cv-00598 and No. 3:11-cv-00952) |
| This Document Relates To: | ) ) ) | Judge Kevin H. Sharp |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Joe B. Brown |

## ORDER APPROVING DERIVATIVE SETTLEMENT AND ORDER OF DISMISSAL WITH PREJUDICE

1224130_1

This matter came before the Court for hearing pursuant to the Order of this Court, dated November 22, 2016 ("Order"), on Plaintiffs' motion for approval of the settlement ("Settlement") set forth in the Stipulation of Settlement, dated November 18, 2016 (the "Stipulation"). Due and adequate notice having been given of the Settlement as required in said Order, and the Court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. This Final Approval Order incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation (in addition to those capitalized terms defined herein).

2. This Court has jurisdiction over the subject matter of the Action, including all matters necessary to effectuate the Settlement, and over all parties to the Action, including, but not limited to, the Plaintiffs, Community Health Systems, Inc. ("CHSI"), CHSI stockholders, and the Settling Defendants.

3. The Court finds that the notice provided to CHSI stockholders was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the Settlement set forth in the Stipulation, to all Persons entitled to such notice. The notice fully satisfied the requirements of Federal Rule of Civil Procedure 23.1 and the requirements of due process.

4. The Action and all claims contained therein, as well as all of the Released Claims, are dismissed with prejudice. As among Plaintiffs, the Settling Defendants and CHSI, the parties are to bear their own costs, except as otherwise provided in the Stipulation.

5. The Court finds that the terms of the Stipulation and Settlement are fair, reasonable and adequate as to each of the Settling Parties, and hereby finally approves the Stipulation and Settlement in all respects, and orders the Settling Parties to perform its terms to the extent the Settling Parties have not already done so.

6. Upon the Effective Date, CHSI, CHSI stockholders and the Plaintiffs (acting on their own behalf and derivatively on behalf of CHSI) shall be deemed to have, and by operation of this

- 1 -

1224130_1

Final Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished and discharged and dismissed with prejudice the Released Claims against the Released Persons and any and all causes of action or claims (including Unknown Claims) that have or could have been asserted in the Action by Plaintiffs, CHSI or any CHSI stockholder derivatively on behalf of CHSI against the Settling Defendants or the Released Persons, based on the Settling Defendants' acts and/or omissions in connection with, arising out of, or relating to, the facts, transactions, events, matters, occurrences, acts, disclosures, statements, omissions or failures to act at issue in this Action through and including the date of execution of the Stipulation and including claims arising out of, relating to, or in connection with the defense, settlement, or resolution of the Action. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

7.     Upon the Effective Date, Plaintiffs (acting on their own behalf and derivatively on behalf of CHSI and its stockholders), CHSI, and any Person acting on behalf of CHSI, shall be forever barred and enjoined from commencing, instituting or prosecuting any of the Released Claims against any of the Released Persons or any action or other proceeding against any of the Released Persons arising out of, relating to, or in connection with the Released Claims, the Action, or the filing, prosecution, defense, settlement, or resolution of the Action. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

8.     Upon the Effective Date, each of the Released Persons and the Related Parties shall be deemed to have, and by operation of this Final Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Plaintiffs and Plaintiffs' Counsel and all CHSI stockholders (solely in their capacity as CHSI stockholders) from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims. Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.

9.     The Court hereby approves the Fee and Expense Amount in accordance with the Stipulation and finds that such fee is fair and reasonable.

- 2 -

Case 3:19-cv-00046489  Document 127-13  Filed 09/08/23  Page 34 of 747 PageID #: 52577

10. Neither the Stipulation nor the Settlement, including the Exhibits attached thereto, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be offered, attempt to be offered or used in any way as a concession, admission, or evidence of the validity of any Released Claims or any fault, wrongdoing or liability of the Released Persons or CHSI; or (b) is or may be deemed to be or may be used as a presumption, admission, or evidence of any liability, fault or omission of any of the Released Persons or CHSI in any civil, criminal or administrative or other proceeding in any court, administrative agency, tribunal or other forum. Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement and Stipulation, and except that the Released Persons may file or use the Stipulation, the Final Approval Order and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11. During the course of the Action, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11, any applicable Tennessee law and all other similar laws.

12. Without affecting the finality of this Final Approval Order and the Judgment in any way, this Court hereby retains continuing jurisdiction over the Action and the parties to the Stipulation to enter any further orders as may be necessary to effectuate, implement and enforce the Stipulation and the Settlement provided for therein and the provisions of this Final Approval Order.

- 3 -

13. This Final Approval Order and the Judgment is a final and appealable resolution in the Action as to all claims and the Court directs immediate entry of the Judgment forthwith by the Clerk in accordance with Rule 58, Federal Rules of Civil Procedure, dismissing the Action with prejudice.

IT IS SO ORDERED.

DATED: January 17, 2017

THE HONORABLE KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

Submitted by:

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
BENNY C. GOODMAN III
ERIK W. LUEDEKE
JUAN CARLOS SANCHEZ

BENNY C. GOODMAN III

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: 404/504-6500
404/504-6501 (fax)

DAVIES, HUMPHREYS, HORTON
  & REESE
WADE B. COWAN
85 White Bridge Road, Suite 300
Nashville, TN 37205
Telephone: 615/256-8125
615/242-7853 (fax)

- 4 -

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. RIFKIN
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)

Attorneys for Plaintiffs

PROSKAUER LLP
PETER DUFFY DOYLE

_____
PETER DUFFY DOYLE

Eleven Times Square
New York, NY 10036-8299
Telephone: 212/969-3000
212/969-2900 (fax)

Counsel for Defendants Wayne T. Smith, W. Larry
Cash, John A. Clerico, John A. Fry, William
Norris Jennings, Julia B. North, H. Mitchell
Watson, Jr. and Counsel for T. Mark Buford and
James S. Ely III

ROBBINS, RUSSELL, ENGLERT, ORSECK,
  UNTEREINER & SAUBER LLP
GARY A. ORSECK
MICHAEL L. WALDMAN
ALISON C. BARNES
MATTHEW M. MADDEN

_____
MATTHEW M. MADDEN

1224130_1

Case: 3:11-cv-00406-89 Document: 127-13 Filed: 09/08/23 Page: 67 of 747 PageID #: 52880

1801 K Street, N.W., Suite 411L
Washington, DC 20006
Telephone: 202/775-4500
202/775-4510 (fax)

RILEY, WARNOCK & JACOBSON, PLC
STEVEN A. RILEY
JOHN R. JACOBSON
MILTON S. McGEE III
1906 West End Avenue
Nashville, TN 37203
Telephone: 615/3203700
615/320-3737 (fax)

Counsel for Nominal Defendant Community
Health Systems, Inc.

- 6 -

Case 3:19-cv-00461 Document 127-3 Filed 09/08/23 Page 78 of 747 PageID #: 5228

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| In re COMMUNITY HEALTH SYSTEMS, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) | Master Docket No. 3:11-cv-00489 (Consolidated with No. 3:11-cv-00598 and No. 3:11-cv-00952) |
| This Document Relates To: | ) ) ) | Judge Kevin H. Sharp |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Joe B. Brown |

NOTICE OF MOTION AND PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT

Case 3:11-cv-00489 Document 127-3 Filed 09/20/13 Page 9 of 47 PageID #: 2282

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to an Order of the Court dated November 22, 2016, on January 17, 2017, at 10:30 a.m., or as soon thereafter as counsel may be heard, at the Estes Kefauver Federal Building and United States Courthouse, 801 Broadway, Nashville, Tennessee, before the Honorable Kevin H. Sharp, United States District Judge, Plaintiffs will and hereby move for orders approving the proposed settlement of the above-captioned action.  Plaintiffs' motion is based on the Memorandum of Law in Support of Final Approval of Derivative Settlement, the Joint Declaration of Benny C. Goodman III and Kevin A. Seely in Support of Final Approval of Derivative Settlement, the Declaration of Professor Randall S. Thomas in Support of Derivative Settlement, the Declaration of Layn R. Phillips in Support of Final Approval of Derivative Settlement, the Stipulation of Settlement, all other pleadings and matters of record, and such additional evidence or argument as may be presented at the hearing.

DATED:  December 20, 2016

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
BENNY C. GOODMAN III
ERIK W. LUEDEKE
JUAN CARLOS SANCHEZ


                            s/ Benny C. Goodman III
                          BENNY C. GOODMAN III

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

- 1 -

DAVIES, HUMPHREYS, HORTON
  & REESE
WADE B. COWAN
85 White Bridge Road, Suite 300
Nashville, TN  37205
Telephone:  615/256-8125
615/242-7853 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. RIFKIN
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

Attorneys for Plaintiffs

1217817_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 20, 2016.

 s/ Benny C. Goodman III
BENNY C. GOODMAN III

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  bennyg@rgrdlaw.com

**Mailing Information for a Case 3:11-cv-00489 Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Smith et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael J. Asher**
  masher@swappc.com

- **Alison C. Barnes**
  abarnes@robbinsrussell.com,mmadden@robbinsrussell.com,lpettit@robbinsrussell.com,cchasecarpino@robbinsrussell.com,dlerman@robbinsrussell.com,jherman@rob

- **Randall J. Baron**
  RandyB@rgrdlaw.com

- **James N. Bowen**
  jimbowen@rwjplc.com,dgibby@rwjplc.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **Peter Duffy Doyle**
  pdoyle@proskauer.com,LSOWDTN@proskauer.com

- **D. Alexander Fardon**
  alexfardon@comcast.net,daf@h3gm.com

- **Jonathan P. Farmer**
  jfarmer@fpwlegal.com,lneeley@fpwlegal.com,gstevenson@fpwlegal.com

- **Nadeem Faruqi**
  nfaruqi@faruqilaw.com

- **Chantel Febus**
  cfebus@proskauer.com

- **Seth D. Fier**
  sfier@proskauer.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Benny C. Goodman , III**
  bennyg@rgrdlaw.com,eluedeke@rgrdlaw.com,TravisD@rgrdlaw.com,michelew@rgrdlaw.com

- **Christy Goodman**
  c.w.goodmanlaw@gmail.com

- **John C. Herman**
  jherman@rgrdlaw.com,geubanks@rgrdlaw.com

- **Pedro A. Herrera**
  pherrera@sugarmansusskind.com

- **Michael J. Hynes**
  mhynes@hkh-lawfirm.com,bkeller@hkh-lawfirm.com,lhernandez@hkh-lawfirm.com

- **John R. Jacobson**
  jjacobson@rwjplc.com,mkillen@rwjplc.com,dbarnes@rwjplc.com

- **Beth A. Keller**
  bkeller@hkh-lawfirm.com

- **Erik W. Luedeke**
  eluedeke@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Eugene Mikolajczyk**
  genem@rgrdlaw.com

- **Gary A. Orseck**
  gorseck@robbinsrussell.com

- **Ashley R. Rifkin**
  arifkin@robbinsarroyo.com,notice@robbinsarroyo.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  JSanchez@rgrdlaw.com

- **Kevin A. Seely**
  kseely@robbinsarroyo.com,notice@robbinsarroyo.com

- **Howard S. Susskind**
  hsusskind@sugarmansusskind.com

- **Michael L. Waldman**
  mwaldman@robbinsrussell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| In re COMMUNITY HEALTH SYSTEMS, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) | Master Docket No. 3:11-cv-00489<br><br>(Consolidated with No. 3:11-cv-00598 and No. 3:11-cv-00952) |
| This Document Relates To: | ) ) ) | Judge Kevin H. Sharp |
| ALL ACTIONS. | ) ) ) | Magistrate Judge Joe B. Brown |

MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF DERIVATIVE SETTLEMENT

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|

I. INTRODUCTION .................................................................................1

II. HISTORY OF THE LITIGATION ........................................................3

    A. Commencement and Consolidation of the Action .....................................3

    B. Defendants' Motion to Dismiss and Motion for Reconsideration ...........3

    C. Discovery ..................................................................................................4

    D. Settlement Negotiations ............................................................................5

    E. Approval of the Settlement by the CHSI Board ........................................5

III. THE SETTLEMENT TERMS................................................................6

    A. The Settlement Recovers $60 Million in Cash for CHSI .........................6

    B. The Settlement Requires Significant Corporate Governance Reforms ...................6

        1. Two Shareholder Nominated Directors ........................................6

        2. Appointment of an Independent Lead Director ............................7

        3. Establishment of a Healthcare Law Compliance Coordinator.....................7

        4. Implementation of a Compensation Clawback ............................8

        5. Unified Reporting Requirements for Political Contributions ......................9

IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.........................................................................................9

    A. Applicable Standard..................................................................................9

    B. The Settlement Satisfies the Criteria for Final Approval........................11

        1. The Absence of a Risk of Fraud or Collusion Favors Approval................11

        2. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval ......................................................12

        3. The Amount of Discovery Engaged in by the Parties Supports Approval ...........................................................................13

        4. A Review of the Strengths and Weaknesses Supports Approval ..............14

        5. The Recommendations of Experienced Counsel Favor Approval.............16

        6. Shareholder Reaction to the Settlement Supports Approval......................17

        7. The Public Interest Favors Approval ........................................18

1214081_6

V.    THE SEPARATELY NEGOTIATED ATTORNEYS' FEE AND EXPENSE AMOUNT SHOULD BE APPROVED..................................................................19

VI.   CONCLUSION........................................................................................................21

1214081_6

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
　77 F.3d 1215 (10th Cir. 1996) ................................................................13

*Beach v. Healthways Inc.*,
　No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010)........................20

*Bronson v. Bd. of Educ.*,
　604 F. Supp. 68 (S.D. Ohio 1984) ...........................................................16

*Brotherton v. Cleveland*,
　141 F. Supp. 2d 894 (S.D. Ohio 2001) .....................................................17

*Carson v. Am. Brands, Inc.*,
　450 U.S. 79 (1981)....................................................................................10

*City of Plantation Police Officers' Emps.' Ret. Sys. v. Jeffries*,
　No. 2:14-cv-1380, 2014 WL 7404000
　(S.D. Ohio Dec. 30, 2014) ........................................................................10

*Cohn v. Nelson*,
　375 F. Supp. 2d 844 (E.D. Mo. 2005).........................................2, 12, 21

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)........................................................................12

*Dick v. Spring Commc'ns Co. L.P.*,
　297 F.R.D. 283 (W.D. Ky. 2014)........................................................10, 14

*Flinn v. FMC Corp.*,
　528 F.2d 1169 (4th Cir. 1975) ..................................................................16

*Gascho v. Global Fitness Holdings, LLC*,
　No. 2:11-cv-436, 2014 U.S. Dist. LEXIS 46846
　(S.D. Ohio Apr. 4, 2014)...........................................................................10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
　787 F.3d 408 (7th Cir. 2015) ....................................................................13

*Granada Invs., Inc. v. DWG Corp.*,
　No. 1:89CV0641, 1991 WL 338233
　(N.D. Ohio Feb. 12, 1991) ....................................................................9, 18

*Hainey v. Parrott*,
　617 F. Supp. 2d 668 (S.D. Ohio 2007) .....................................................12

- iii -

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................19

*Hyland v. Homeservices of Am., Inc.*,
No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994
(W.D. Ky. May 3, 2012) .....................................................................................18

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260
(S.D.N.Y. Sept. 6, 2006) .....................................................................................12

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000),
*aff'd sub nom. D'Amato v. Deutsche Bank*,
236 F.R.D. 78 (2d Cir. 2001) ..............................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...........................................................11, 17

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ...................................................................13, 18

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ...............................................................16

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................15

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) ......................................................................13

*In re Delphi Corp. Sec.*,
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................11, 15

*In re F5 Networks, Inc. Derivative Litig.*,
No. C06-794, RSL, slip op. (N.D. Cal. Jan. 6, 2011) .....................................18, 20

*In re Heelys, Inc. Derivative Litig.*,
No. 3:07-CV-1682-K, slip op. (N.D. Tex. Nov. 17, 2009)...................................16

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................20

*In re Inter-Op Hip Prosthesis*,
204 F.R.D. 359 (N.D. Ohio 2001). ......................................................................16

1214081_6

*In re Lumber Liquidator Holdings, Inc. Sec. Litig.*,
No. 4:13-cv-00157-AWA-DEM, slip op. (E.D. Va. Aug. 26, 2016)......................................18

*In re Marvell Tech. Grp. Ltd. Derivative Litig.*,
No. C-06-03894-RMW(RS), slip op. (N.D. Cal. Aug. 11, 2009)....................................19, 20

*In re McAfee, Inc. Derivative Litig.*,
No. 5:06-CV-03484-JF, slip op. (N.D. Cal. Jan. 30, 2009) ......................................................19

*In re Nationwide Fin. Servs. Litig.*,
No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962
(S.D. Ohio Aug. 18, 2009)......................................................................................................15

*In re NVIDIA Corp. Derivative Litig.*,
No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351
(N.D. Cal. Dec. 22, 2008) ..................................................................................................2, 20

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...............................................................................................12, 14

*In re Pfizer Inc. S'holder Derivative Litig.*,
780 F. Supp. 2d 336 (S.D.N.Y. 2011)........................................................................7, 8, 19, 20

*In re Polyurethane Foam Antitrust Litig.*,
No. 1:10-MD-2196, 2015 U.S. Dist. LEXIS 23482
(N.D. Ohio Feb. 26, 2015) ......................................................................................................15

*In re Regions Morgan Keegan Sec. Derivative & ERISA Litig.*,
No. 08-2260, 2015 WL 11145134
(W.D. Tenn. Nov. 30, 2015) ..................................................................................................9, 10

*In re Se. Milk Antitrust Litig.*,
No. 2:07-CV-208, 2012 U.S. Dist. LEXIS 83703
(E.D. Tenn. June 15, 2012) ......................................................................................................14

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2009 WL 3747130
(E.D. Tenn. Nov. 3, 2009) .....................................................................................................9, 20

*In re Se. Milk Antitrust Litig.*,
No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163
(E.D. Tenn. May 17, 2013) ..................................................................................................12, 17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 2343, 2014 U.S. Dist. LEXIS 60214
(E.D. Tenn. Apr. 30, 2014) ......................................................................................................16

1214081_6

*In re Telectronics Pacing Sys.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................................................................................9

*In re Tricor Direct Purchaser Antitrust Litig*,
No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251
(D. Del. Apr. 23, 2009) ........................................................................................................20

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
591 F. Supp. 2d 1023 (D. Minn. 2008)............................................................................11, 17

*In re Vitamins Antitrust Litig.*,
MDL No. 1285, 2001 U.S. Dist. LEXIS 25067
(D.D.C. July 16, 2001)..........................................................................................................20

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000) ...................................................................................16, 18

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ................................................................................................21

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)...............................................................................................................20

*Morse v. McWhorter*,
No. 3:97-0370, slip op. (M.D. Tenn. Mar. 12, 2004) ...........................................................20

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ..........................................................................................17

*Satchell v. Fed. Express Corp.*,
No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
(N.D. Cal. Apr. 13, 2007) ......................................................................................................12

*South v. Baker*,
62 A.3d 1 (Del. Ch. 2012).....................................................................................................15

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d 521 (D. Ky. 2010),
*aff'd sub nom. Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (2011)...............................................................................................................17

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) ...........................................................................................10, 11

1214081_6

*Unite Nat'l Ret. Fund v. Watts*,
   No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246
   (D.N.J. Oct. 28, 2005)......................................................................................................7

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992)....................................................................................10

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..........................................................................................16

*Winslow v. Bancorpsouth, Inc.*,
   No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) ................................................20

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................................10
   Rule 23(e)(2) ...................................................................................................................10
   Rule 23.1 .....................................................................................................................9, 10
   Rule 23.1(c)................................................................................................................1, 9, 10

**SECONDARY AUTHORITIES**

2 Herbert Newberg & Alba Conte,
   *Newberg on Class Actions* (3d ed. 1992)
   §11.48...............................................................................................................................17

Laarni T. Bulan, Ellen M. Ryan and Laura E. Simmons,
   *Securities Class Action Settlements – 2014 Review & Analysis*
   (Cornerstone Research 2015)..............................................................................................6

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, Plaintiffs Steve Irwin, Roger D. Morgan, Bill Pickrell, Michael Senecal, Susan Stokes, and Mark F. Woodard, acting in their capacity as the trustees of the Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund ("Plumbers"), and Plaintiffs Lee Bruner, Joseph Gilliam, Ronald Inman, Roger LaDuke, Brian Moore, Mark Peterson, Paul Schick, and Gary Sova, acting in their capacity as the trustees of the Roofers Local No. 149 Pension Fund ("Roofers"), on behalf of themselves and derivatively on behalf of Community Health Systems, Inc. ("CHSI" or the "Company"), respectfully submit this Memorandum of Law in Support of Final Approval of Derivative Settlement.[1]

## I.    INTRODUCTION

The proposed Settlement pending before this Court provides for the implementation of fundamental corporate governance reforms at CHSI as well as a $60 million cash payment to the Company (the "Settlement Payment") and represents an outstanding resolution of a highly complex case.  The Settlement is the product of five years of litigation.  The Settling Parties agreed to the Settlement terms, with the assistance of United States District Court Judge (Ret.), Layn R. Phillips, a highly experienced and nationally recognized mediator, after protracted, arm's-length settlement negotiations.[2]

The Settlement confers substantial benefits on CHSI.  First, the Settlement calls for the Settling Defendants' Insurers to pay $60 million to the Company.  The Settlement Payment represents the largest ever cash recovery in a shareholder derivative lawsuit in Tennessee.  *See* accompanying Declaration of Professor Randall S. Thomas in Support of Derivative Settlement ("Thomas Decl."), ¶6 n.3.  Indeed, the Settlement Payment is more than 60% of the $98 million in damages Plaintiffs claim CHS suffered from its settlement with the United States Department of Health and Human Services ("HHS") for the same Medicare compliance issues that gave rise to this Action.

---

[1]    All capitalized terms used herein shall have the same meaning as set forth in the Stipulation of Settlement ("Stipulation").  Dkt. No. 268.

[2]    "Settling Parties" refers to, collectively, each of the Plaintiffs, the Settling Defendants, and Nominal Party CHSI.  "Settling Defendants" refers to Wayne T. Smith; W. Larry Cash; John A. Fry; William Norris Jennings; H. Mitchell Watson, Jr.; Julia B. North; and John A. Clerico.

- 1 -

Second, the Settlement requires that within thirty days of final approval, CHSI adopt and maintain comprehensive corporate governance reforms for a period of no less than four years (the "Corporate Governance Reforms"). *See* Stipulation, ¶¶2.1-2.2. The Corporate Governance Reforms represent a package of corporate reforms without precedent that are specifically tailored to improve the ability of CHSI's Board of Directors ("Board") to monitor, respond to, and comply with healthcare laws, rules and regulations applicable to CHSI's Medicare and Medicaid compliance practices. The Reforms include, among other things, the establishment of a Healthcare Law Compliance Coordinator with a broad mandate to oversee the Company's compliance programs at both the corporate and hospital levels. *Id.*, ¶2.4, §II. The Healthcare Law Compliance Coordinator will report directly to the Company's Chief Executive Officer ("CEO") and meet regularly with the Corporate Compliance Officer ("CCO"), General Counsel, and the Audit and Compliance Committee of the Board. *Id.*

The Settlement also provides for the addition of, not one, but two shareholder nominated directors to the CHSI Board, as well as the establishment of a Lead Independent Director and an automatic clawback of compensation in the event of restatement. *Id.*, §§I and IV.

These Corporate Governance Reforms are specifically designed to increase independence, foster accountability, and confer immediate and long-lasting benefits on the Company and its shareholders. As a result, Company leadership will be informed about, and engaged in, direct oversight of any healthcare compliance weaknesses within the organization. *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *10 (N.D. Cal. Dec. 22, 2008) (recognizing that "strong corporate governance is fundamental to the economic well-being and success of a corporation"); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms . . . provide valuable benefits to public companies."); *see also* Thomas Decl. at 5-12.

After negotiating the material terms of the Settlement, including the Settlement Payment and the Corporate Governance Reforms, counsel negotiated the attorneys' fees and expenses amount with the assistance of Judge Phillips. As a result of those negotiations, CHSI has agreed, subject to Court approval, to pay Plaintiffs' Counsel a $20 million fee and expense amount (the "Fee and

- 2 -

Expense Amount"). *See* Stipulation, ¶5.1. The Fee and Expense Amount reflects the substantial benefits conferred upon CHSI via the $60 million payment and the Corporate Governance Reforms. Exercising its business judgment, the CHSI Board, advised by counsel, approved this Settlement and concluded that the Fee and Expense Amount is in the best interests of the Company. *See id.* at 5.

In sum, the Settlement is an excellent resolution for CHSI of a case involving substantial complexity and costs. Accordingly, the Settling Parties respectfully request the Court finally approve the Settlement.

## II.     HISTORY OF THE LITIGATION

### A.     Commencement and Consolidation of the Action

On May 24 and June 21, 2011, respectively, Plaintiffs Plumbers and Roofers filed shareholder derivative actions asserting claims on behalf of CHSI for alleged violations of law, including allegations that certain CHSI directors and top officers breached the fiduciary duties they owed to the Company. On September 28, 2011, the Court consolidated the derivative actions and appointed Robbins Geller Rudman & Dowd LLP and Robbins Arroyo LLP as Lead Counsel for Plaintiffs.

On March 15, 2012, Plaintiffs filed a Verified Amended Consolidated Shareholder Derivative Complaint for Breach of Fiduciary Duty, Corporate Waste and Unjust Enrichment ("Amended Consolidated Complaint") (Dkt. No. 50). The Amended Consolidated Complaint alleges that Defendants breached their fiduciary duties by causing CHSI to adopt an unlawful in-patient admissions policy to enable CHSI to artificially inflate reimbursement payments from Medicare, Medicaid, and other payer sources. *Id.*, ¶¶2-7, 45-85. The Amended Consolidated Complaint alleges that, as a result, Defendants breached their fiduciary duties owed to CHSI and may be held liable for the resulting damages. *See id.*

### B.     Defendants' Motion to Dismiss and Motion for Reconsideration

On May 14, 2012, Defendants filed a Motion to Dismiss the Amended Consolidated Complaint ("Motion to Dismiss") (Dkt. No. 53), in which Defendants argued, among other things, that the Amended Consolidated Complaint failed to adequately plead futility of demand. Defendants

- 3 -

also argued that the facts pleaded in the Amended Consolidated Complaint failed to state an actionable claim for relief. *Id.*

On June 13, 2013, Judge Nixon conducted a hearing on Defendants' Motion to Dismiss. On September 27, 2013, Judge Nixon issued an Order denying in part and granting in part the Motion to Dismiss ("September 27, 2013 Order") (Dkt. No. 87). More particularly, the Court ruled that Plaintiffs had adequately pleaded demand futility under Delaware law, because the Amended Consolidated Complaint stated an actionable claim for breach of fiduciary duty against Defendants. *Id.*

On October 14, 2013, Defendants filed a Motion for Reconsideration of Order Granting in Part and Denying in Part Motion to Dismiss ("Motion for Reconsideration") (Dkt. No. 89), which Plaintiffs opposed on October 30, 2013 (Dkt. No. 95). The Court denied the Motion for Reconsideration on December 22, 2014, holding that "Defendants have not presented sufficient grounds to reconsider [the Court's] decision to deny Defendants' Motion to Dismiss with respect to Plaintiffs' breach of fiduciary duties claim." Order at 8 (Dkt. No. 140).

### C.    Discovery

On November 10, 2014, Magistrate Judge Joe B. Brown conducted an Initial Case Management Conference, after which the Court issued an Order establishing a pre-trial schedule. Dkt. No. 136. Thereafter, both parties engaged in vigorous discovery. For instance, both parties served written discovery on each other and issued subpoenas to third parties. In addition, the parties met and conferred on various matters and briefed at least seven discovery-related issues.

To date, Defendants and third parties produced, and Plaintiffs' Counsel reviewed and analyzed, approximately 2.7 million pages of responsive documents. Plaintiffs' Counsel also deposed 35 percipient witnesses, including CHSI's top executives, numerous hospital-level representatives and all but two of the Settling Defendants. Similarly, Plaintiffs produced over 10,000 pages of responsive documents to Defendants' counsel who deposed representatives from both Roofers and Plumbers.

Finally, Plaintiffs engaged and met with several experts on multiple occasions. The experts were provided with evidence and other materials to review and analyze in anticipation of drafting their expert witness reports.

### D.       Settlement Negotiations

On or about November 10, 2014, the Court directed the parties to explore private resolution of the Action through mediation. On April 17, 2015, the parties participated in an in-person mediation session before Judge Phillips. The Court also directed pre-mediation discovery, which included the production of all documents that the Company and its affiliates provided to the Department of Justice in connection with a series of government subpoenas. Although helpful, this initial mediation did not result in a settlement. Aided by Judge Phillips, however, settlement discussions between the parties continued.

On September 9, 2016, nearing the Court's fact discovery cut-off and following months of discovery, the Settling Parties engaged in a second in-person mediation session with Judge Phillips. Although an agreement to settle the Action was not reached at this second mediation, the Settling Parties continued negotiations thereafter with the assistance of Judge Phillips in parallel with ongoing discovery.

On or about October 24, 2016, the Settling Parties agreed to settle the Action, subject to Court approval, in exchange for (i) a $60 million payment to CHSI on behalf of the Settling Defendants by their D&O Insurers; and (ii) CHSI agreeing to adopt a package of corporate governance reforms designed to directly address the issues raised by the Action.

### E.       Approval of the Settlement by the CHSI Board

On November 2, 2016, the CHSI Board, assisted by counsel and in the exercise of its business judgment, unanimously approved the Settlement, concluding the terms of the Settlement provide a substantial benefit to the Company and are in the best interests of CHSI and its stockholders.

1214081_6

## III. THE SETTLEMENT TERMS

### A. The Settlement Recovers $60 Million in Cash for CHSI

The terms of the Settlement provide for a $60 million cash payment to the Company on behalf of the Settling Defendants by their D&O Insurers. *See* Stipulation, ¶2.3. After payment of the separately negotiated Fee and Expense Amount to Plaintiffs' Counsel, the remaining cash may be used by the Company for any number of purposes, including general operations and capital improvements. *See id.* The $60 million payment is extraordinary both in absolute terms and in the context of this case and represents a substantial benefit to CHSI. The cash payment provided by the Settlement equates to more than 60% of the $98 million payment CHSI made to settle the underlying HHS allegations regarding the Company's improper Medicare compliance practices which gave rise to this Action. *See* Thomas Decl. at 6.[3]

### B. The Settlement Requires Significant Corporate Governance Reforms

The Settlement provides that within thirty days of final approval of the Settlement, the Board shall adopt and maintain for at least four years the Corporate Governance Reforms set forth in the Stipulation. *See* Stipulation, ¶2.1. As described below, each reform is specifically designed to address compliance concerns raised in the Action and further align management's interests with CHSI shareholders.

#### 1. Two Shareholder Nominated Directors

Upon approval of the Settlement, CHSI's Governance and Nominating Committee will work with Plaintiffs' corporate governance expert to compile a list of independent director candidates who have expertise and experience with accounting and compliance issues. *See* Stipulation, ¶2.4, §I.1. Two of these candidates will then be selected by the Board for election at the next shareholder meeting. *Id.*

---

[3] The $60 million payment represents a substantial portion of the damages suffered by CHSI and is well in excess of the median recovery, as a percentage of damages, in representative actions. *See Laarni T. Bulan, Ellen M. Ryan and Laura E. Simmons, Securities Class Action Settlements – 2014 Review & Analysis*, at 8, 13 (Cornerstone Research 2015) ("Cornerstone Report") (median 2014 recovery in securities fraud class actions was 2.2% of estimated damages and 7.3% of estimated damages in 1933 Act cases).

- 6 -

The addition of a shareholder nominated director to a board of directors as part of a derivative settlement is a rare occurrence. The addition of two shareholder nominated directors is extraordinary. *See* Thomas Decl. at 7. Plaintiffs submit that the addition of two shareholder nominated independent directors to the nine member Board will help ensure that the Board will act independently of senior CHSI insiders and that potential issues brought to the Board will be investigated and considered. *Id.* The addition of independent shareholder nominated directors will also help the Company avoid future fiduciary and compliance failures such as those alleged in the complaint that led to the $98 million settlement with federal and state regulators. *Id.* at 7 n.5 ("[M]ore shareholder control tends to benefit shareholders."); *see, e.g.*, *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 341 (S.D.N.Y. 2011) (acknowledging "substantial" value associated with potential savings to the company from the avoidance of future fines that governance reforms are designed to achieve); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) (finding corporate governance reforms conferred a "great benefit" on the corporation because the reforms "will serve to prevent and protect [the corporation] from the reoccurrence of certain alleged wrongdoings").

### 2. Appointment of an Independent Lead Director

The proposed Settlement provides for the appointment of an independent director as the Lead Director with duties that go beyond those of other Board members. Stipulation, ¶2.4, §I.2-3. In the absence of a designated independent Lead Director, independent directors have a tendency to look to other independent directors to take a leadership role in dealing with corporate officers, the end result often being that no independent director takes the initiative to oversee management. By appointing a designated independent director as the Lead Director, this "collective action" problem is avoided, thereby increasing the influence of the independent directors on the Board. *See* Thomas Decl. at 7.

### 3. Establishment of a Healthcare Law Compliance Coordinator

The Settlement also provides for the appointment of a Healthcare Law Compliance Coordinator to work with the Company's CCO to coordinate and oversee implementation of the Company's compliance programs, with particular emphasis on Medicare and Medicaid compliance.

- 7 -

Stipulation, ¶2.4, §II.1.  Among other duties, the Healthcare Law Compliance Coordinator will report directly to the CEO and meet at least quarterly with both the Audit and Compliance Committee of the Board and the General Counsel to discuss compliance matters.  *Id.*, §II.4. Moreover, this individual or his designee will conduct annual unannounced visits to at least 10% of the Company's hospitals/facilities to ensure compliance and provide reports therefrom to the Board. *Id.*, §II.6.

The gravamen of Plaintiffs' allegations concern the failure of the Board and management to ensure compliance with Medicare laws at the corporate and hospital level.  The creation of the Healthcare Law Compliance Coordinator and the implementation of the related compliance reforms will strengthen the oversight function of the Board and senior management and help ensure that compliance issues are timely identified and raised with those who have the power to remediate them. *See* Thomas Decl. at 8-9 (the compliance coordinator will "improve the quality of the Company's corporate governance structure").  As such, CHSI will be better equipped to avoid future compliance failures by requiring the appointment of an individual educated and experienced in healthcare compliance and providing them with multiple direct reporting avenues to senior management and the Board.  *Id.*; *see also, e.g.*, *Pfizer*, 780 F. Supp. 2d at 341 (granting final approval of derivative settlement and acknowledging "substantial" value associated with potential savings to the company from the avoidance of future fines that governance reforms are designed to achieve).

### 4. Implementation of a Compensation Clawback

The proposed Settlement requires that Company policies and employment agreements be amended to require that any incentive compensation paid to the Company's CEO or Chief Financial Officer ("CFO") be ***automatically*** clawed-back in the event of an accounting restatement. Stipulation, ¶2.4, §IV.1.  Recoupment policies with business-related misconduct triggers such as this are "a powerful mechanism for holding senior leadership accountable to the fundamental mission of the corporation: proper risk taking balanced with proper risk management and the robust fusion of high performance with high integrity."  *See* http://blogs.law.harvard.edu/corpgov/2010/ 08/13/making-sense-out-of-clawbacks/.  This provision provides added motivation for the Company's CEO and CFO to ensure compliance, further aligning the interests of Company

- 8 -

management with CHSI shareholders. *See* Thomas Decl. at 9-10. This is a groundbreaking governance change because clawback provisions are seldom, if ever, automatic. *Id.* at 10 n.11.

### 5. Unified Reporting Requirements for Political Contributions

The Settlement provides for the adoption of important corporate transparency provisions in the form of a Political Contribution Policy requiring that all political expenditures made with Company funds be used solely to promote the interests of the Company. *See* Stipulation, ¶2.4, §VI.2. Moreover, the Political Contribution Policy will prohibit corporate contributions to federal candidates and require unified disclosure of state political contributions on the Company's website. *Id.*, §VI.5-6.

This non-exhaustive description of the Corporate Governance Reforms to be implemented as part of the Settlement confirms the substantial benefits achieved via this Settlement. Those benefits address the core of Plaintiffs' allegations and will inure to the benefit of CHSI for years to come.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Applicable Standard

There is a strong policy favoring compromises that resolve litigation, "'particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2009 WL 3747130, at \*3 (E.D. Tenn. Nov. 3, 2009) ("[S]ettlements are looked upon favorably by the courts, particularly in complex class actions."); *see also In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1027 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."). The "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Granada Invs., Inc. v. DWG Corp.*, No. 1:89CV0641, 1991 WL 338233, at \*6 (N.D. Ohio Feb. 12, 1991) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a stockholder derivative action. *In re Regions Morgan Keegan Sec. Derivative & ERISA Litig.*, No. 08-2260, 2015 WL 11145134, at \*2 (W.D. Tenn. Nov. 30, 2015) ("Rule 23.1(c)

- 9 -

governs derivative action settlements."). Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c); *City of Plantation Police Officers' Emps.' Ret. Sys. v. Jeffries*, No. 2:14-cv-1380, 2014 WL 7404000, at *5 (S.D. Ohio Dec. 30, 2014); *Regions Morgan*, 2015 WL 11145134, at *3.

When evaluating a proposed shareholder derivative settlement, "'courts have borrowed from the law governing class actions under Rule 23.'" *Regions Morgan*, 2015 WL 11145134, at *2 (quoting *City of Plantation*, 2014 WL 7404000, at *5). In doing so, "[t]he pertinent inquiry is whether the proposed settlement is 'fair, reasonable, and adequate.'" *City of Plantation*, 2014 WL 7404000, at *5 (quoting Fed. R. Civ. P. 23(e)(2)); *Regions Morgan*, 2015 WL 11145134, at *2 (same). Various factors guide this inquiry, including: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007).

These factors should not be applied in a "formalistic" fashion as the settlement of a representative action "cannot be measured precisely against any particular set of factors." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). "In considering these factors, the task of the court 'is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.'" *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 U.S. Dist. LEXIS 46846, at *47 (S.D. Ohio Apr. 4, 2014) (quoting *UAW*, 497 F.3d at 632). In doing so, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement," as opposed to "decid[ing] the merits of the case or resolv[ing] unsettled legal questions." *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *see also Dick v. Spring Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014).

- 10 -

## B. The Settlement Satisfies the Criteria for Final Approval

### 1. The Absence of a Risk of Fraud or Collusion Favors Approval

Where, as here, experienced counsel have investigated the factual background of the case, evaluated the strengths and weaknesses of the claims, taken the risks, expense, and uncertainties of continued litigation into account, and negotiated at arm's-length with the opposing party, the settlement should be approved. *UAW*, 497 F.3d at 632. Where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.R.D. 78 (2d Cir. 2001). In fact, "[w]ithout evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion." *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008).

The proposed Settlement here was reached after hard-fought negotiations between experienced counsel via a process that spanned more than 18 months. *See* accompanying Joint Declaration of Benny C. Goodman III and Kevin A. Seely in Support of Final Approval of Derivative Settlement ("Joint Decl."), ¶¶70-79. Each element of the Settlement here was extensively negotiated among the Settling Parties' counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted. *See* accompanying Declaration of Layn R. Phillips in Support of Final Approval of Derivative Settlement, ¶8 ("Phillips Decl."); Joint Decl., ¶¶85, 88, 91-93. The process was not only hard fought and arduous, it was also overseen by Judge Phillips, a highly-regarded mediator with significant experience mediating complex shareholder derivative and other representative actions. *See* Phillips Decl., ¶¶2-9; *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (describing Judge Phillips as "an experienced and well-regarded mediator of complex securities cases"); *In re UnitedHealth Grp. Inc.*

*S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1034 (D. Minn. 2008) (describing Judge Phillips as "an experienced and independent mediator").[4]

As a result of lengthy, hard-fought negotiations, Plaintiffs obtained a Settlement that provides substantial benefits to CHSI while eliminating the expense, risk, and delay inherent in derivative actions. Moreover, the Board, exercising its business judgment, approved the Settlement, concluding that it is in the best interest of the Company as it confers substantial benefits on CHSI and its stockholders.

> **2.     The Complexity, Expense, and Likely Duration of the Litigation Supports Approval**

Representative actions like this one "'are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163, at *14 (E.D. Tenn. May 17, 2013) (citation omitted). Shareholder derivative actions in particular, are incredibly complicated actions involving varied legal as well as factual considerations that necessitate extended, and therefore expensive, litigation in order to reach a conclusion on the merits. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("[T]he odds of winning the derivative lawsuit were extremely small. . . . Even if it had gone to trial, derivative lawsuits are rarely successful."); *see also Cohn*, 375 F. Supp. 2d at 852 ("'Settlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'") (citations omitted).

The complexity, expense and duration of this litigation also supports approval. The case was filed over five years ago. Thus far, 2.7 million pages of documents have been produced and reviewed and Plaintiffs' Counsel have taken 35 depositions. Since this Settlement was reached only

---

[4]   Courts have recognized that "[t]he participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). *See also Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *8 (S.D.N.Y. Sept. 6, 2006) (A "'mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

- 12 -

days before the fact discovery cut-off, Plaintiffs had also engaged and consulted with experts in order to meet the short expert discovery deadlines. Further, but for this Settlement, the inevitable trial would be incredibly complicated for jurors as it would involve extensive expert testimony and the presentation of arcane legal concepts regarding derivative and fiduciary duties, in addition to healthcare regulations. Trial would also require thousands of pages of documentary and deposition evidence in addition to the numerous and highly contested *in limine* and other pre- and post-trial related motions. "It is safe to say, in a case of this complexity, the end of that road might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995). Thus, without this Settlement, enormous amounts of both judicial and party resources would continue to be expended. The Settlement eliminates these and other risks. Based on their evaluation, Plaintiffs' Counsel determined that the Settlement is in the best interest of CHSI given its substantial and immediate benefits.

In addition, even if Plaintiffs were able to prevail and obtain a judgment at trial exceeding the Settlement Payment, Defendants would most certainly appeal the verdict and the award. This process would likely take several years, prolonging the distribution of any damage award. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006) (explaining "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement"). Furthermore, an appeal of any verdict would carry the risk of reversal, jeopardizing the entire recovery even if Plaintiffs prevailed at trial. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating in part $2.46 billion judgment against securities fraud defendants and remanding for a new trial on limited issues – after 13 years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs after over 20 years of litigation).

### 3. The Amount of Discovery Engaged in by the Parties Supports Approval

After five years of vigorously litigating this Action to the eve of fact discovery cut-off, Plaintiffs and their counsel were well positioned to understand and intelligently evaluate their claims

- 13 -

as well as the propriety of the proposed Settlement. *Dick*, 297 F.R.D. at 296 ("[T]he thorough discovery exchanged by the parties points toward approval of the Settlement Agreement."). "'[W]hen significant discovery has been completed, the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 U.S. Dist. LEXIS 83703, at \*14-\*15 (E.D. Tenn. June 15, 2012) (citation omitted).

As previously discussed, Defendants and third parties produced approximately 2.7 million pages of responsive documents involving a relevant time period that spanned a decade. In addition to reviewing and analyzing the 2.7 million pages of documents, Plaintiffs' Counsel deposed 35 witnesses, including CHSI's top executives, numerous hospital-level representatives and all but two of the Settling Defendants. Joint Decl., ¶¶27-50, 88, 91, 92. Plaintiffs' Counsel also engaged numerous expert witnesses, meeting with them on multiple occasions and providing them with necessary materials to begin drafting their reports. *Id.*, ¶¶53, 63, 65, 88, 92. The Settling Parties also briefed at least seven discovery-related issues and engaged in countless, and often rather lively, conferences regarding discovery disputes. *Id.*, ¶¶29, 32, 34, 40, 44, 45, 47, 49, 52. The Settling Parties also participated in ongoing settlement negotiations, including two in-person mediation sessions before Judge Phillips, where the strengths and weaknesses of the parties' respective positions were fully examined. Phillips Decl., ¶¶6-7.

Thus, Plaintiffs are in an excellent position to evaluate the strengths and potential weaknesses of the claims asserted, and defenses raised, given the significant amount of discovery conducted in this five-year litigation. These efforts, in turn, have placed the Settling Parties in the position to clearly evaluate the proposed Settlement – an agreement that is unquestionably favorable to CHSI, eliminates the substantial expense, risk, and uncertainty of trial, and warrants the approval of the Court.

### 4. A Review of the Strengths and Weaknesses Supports Approval

Derivative actions are complex and fraught with risk. This case is no exception. Indeed, "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *Pac. Enters.*, 47 F.3d at 378 (affirming the district court's approval of a settlement of a derivative action). Although Plaintiffs remain confident that the claims asserted are meritorious,

- 14 -

Plaintiffs nonetheless faced numerous obstacles if the Action were to continue as liability was by no means a foregone conclusion.

For example, in order to establish that the Defendants breached their fiduciary duty of loyalty, Plaintiffs bear the burden of proving, *inter alia*, that each "knowingly caus[ed] or consciously permitt[ed] the corporation to violate positive law, or for failing utterly to attempt to establish a reporting system or other oversight mechanism to monitor the corporation's legal compliance." *South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012). Although Plaintiffs believe that they would present sufficient evidence to prevail, Defendants would surely present counter-evidence and contentions. *See Delphi Corp.*, 248 F.R.D. at 496 (discussing "the risk that Defendants could prevail with respect to certain legal or factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries"). These issues would be further tested through Defendants' anticipated motion for summary judgment and, ultimately, argued at trial—a costly and lengthy process whose only guarantee is an uncertain outcome.

Moreover, demonstrating the allegedly illicit nature of CHSI's in-patient admission practices would have been difficult and strongly disputed by Defendants. The issue of damages was similarly hotly disputed and the subject of expert testimony. These crucial assessments would devolve at summary judgment and trial to a proverbial "battle of the experts." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *8 (S.D. Ohio Aug. 18, 2009) ("The Settlement agreement reached by the parties avoids the risks attendant to this 'battle of the experts,' which could result in a ruling against Plaintiffs."). Indeed, a jury's reaction to competing expert testimony is exceedingly unpredictable and could, for example, be swayed by Defendants' expert that there were no damages or a mere fraction of the amount Plaintiffs contend. *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-MD-2196, 2015 U.S. Dist. LEXIS 23482, at *16 (N.D. Ohio Feb. 26, 2015) (approving settlement and noting that "[plaintiffs], who carry the burden of proof, face the threat that their experts will fail to communicate their testimony in a way that is comprehensible to laypeople"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict").

1214081_6

Plaintiffs were able to avoid these inherent uncertainties and secured a $60,000,000 payment from the Settling Defendants' Insurers (representing over 60% of the payment CHSI made to resolve federal and state investigations into its Medicare compliance practices), without the risk of trial. In addition, the Settlement provides Corporate Governance Reforms designed to prevent future problems related to CHSI's Medicare billing and compliance practices. As such, Plaintiffs were able to obtain significant concessions, all while avoiding a determination of sharply contested issues and dispensing with further expensive litigation. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 n.4 (4th Cir. 1975); *see also In re Inter-Op Hip Prosthesis*, 204 F.R.D. 359, 379 (N.D. Ohio 2001).

### 5. The Recommendations of Experienced Counsel Favor Approval

The view of experienced counsel favoring the settlement is entitled to significant weight. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000) (citing *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)). Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel who have participated in years of hotly contested litigation, nearly completed discovery, and engaged in rigorous arm's-length negotiations, there is a strong presumption that the compromise is fair and reasonable. *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2343, 2014 U.S. Dist. LEXIS 60214, at *16 (E.D. Tenn. Apr. 30, 2014).

Here, after years of litigation and extensive arm's-length settlement negotiations, experienced and capable counsel have concluded that the proposed Settlement is not just fair, but rather represents an exceptional result for CHSI and its stockholders. The Settling Parties were represented by nationally-recognized leaders in complex shareholder litigation, including: Robbins Geller Rudman & Dowd LLP; Robbins Arroyo LLP; Robbins Russell, Englert, Orseck, Untereiner & Sauber LLP; and Proskauer Rose LLP. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (recognizing Robbins Geller Rudman & Dowd LLP as "nationally recognized leaders in complex securities litigation class actions"); *In re Heelys, Inc. Derivative Litig.*, No. 3:07-CV-1682-K, slip op., ¶44 (N.D. Tex. Nov. 17, 2009) ("The quality of representation

- 16 -

by [Robbins Arroyo LLP] was witnessed first hand by this Court through their articulate, high quality, and successful pleadings.").

Plaintiffs' Counsel's conclusion was reached based on a thorough understanding of the strengths and potential weaknesses of the claims.  As Judge Phillips noted "[t]here is no question in my mind that the settlement was reached by the Settling Parties, who made a considered judgment that the proposed settlement is fair, reasonable and adequate." *See* Phillips Decl., ¶9.  The mediator explained how "Plaintiffs took on a risky and complicated case regarding a myriad of complex issues, and obtained a result that confers a substantial benefit on the Company." *Id*.  Thus, the assistance of a neutral, well-respected mediator also assured a sound result for CHSI and its stockholders. *Bear Stearns*, 909 F. Supp. 2d at 265;  *UnitedHealth Grp.*, 591 F. Supp. 2d at 1034.

**6.      Shareholder Reaction to the Settlement Supports Approval**

Courts also consider the reaction of the affected shareholders. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *Se. Milk*, 2013 U.S. Dist. LEXIS 70163, at *19.  Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton*, 141 F. Supp. 2d at 906;  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (D. Ky. 2010) ("'A certain number of . . . objections are to be expected in a class action.'") (citation omitted), *aff'd sub nom. Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (2011).  Nevertheless, "a relatively small number of class members who object is an indication of a settlement's fairness." *Brotherton*, 141 F. Supp. 2d at 906 (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.48 (3d ed. 1992)); *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in a class of nearly 11,000 "tends to support a finding that the settlement is fair").

The Court-ordered Notice was provided to shareholders via an SEC filing, posted on CHSI's website and published in *Investors' Business Daily*.  On December 2, 2016, the Notice of Proposed Derivative Settlement was filed with the U.S. Securities and Exchange Commission via a Form 8-K and posted on CHSI's company website.  On December 5, 2016, the Summary Notice was published

in *Investor's Business Daily*. *See* Declaration of Matthew M. Madden, ¶¶4-6 (Dkt. No. 270); *see also In re Lumber Liquidator Holdings, Inc. Sec. Litig.*, No. 4:13-cv-00157-AWA-DEM, slip op., ¶¶3-4 (E.D. Va. Aug. 26, 2016) (approving notice program of the type used here as the best notice practicable under the circumstances); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, RSL, slip op., ¶3 (N.D. Cal. Jan. 6, 2011) (same). While the date for objection has not yet passed, to date, no CHSI shareholder has objected to the Settlement or any of its terms. This is significant, especially considering the number of shareholders and the increasing trend of investor activism in securities actions. *See Kogan*, 193 F.R.D. at 503 ("[I]n making this determination, the Court is greatly persuaded by the fact that none of the class members objected to the settlement agreement.").

### 7. The Public Interest Favors Approval

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'" *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2012 U.S. Dist. LEXIS 61994, at *23 (W.D. Ky. May 3, 2012) (citations omitted). In fact, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Granada Invs.*, 1991 WL 338233, at *6 (citations omitted).

As discussed above, the Settlement is an excellent result for CHSI in a case of substantial complexity and cost. As a result of the Settlement, CHSI shall receive $60 million – representing more than 60% of CHSI's damages resulting from Defendants' alleged misconduct. This, again, is in addition to the extensive Corporate Governance Reforms designed to improve the Company's challenged billing practices. *See* Thomas Decl. at 13. The Settlement also puts an end to the litigation, which otherwise would have continued in this Court and possibly in the Court of Appeals as well. *See Broadwing*, 252 F.R.D. at 376 ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

The Settlement is fair, reasonable and adequate and warrants the Court's approval.

1214081_6

## V. THE SEPARATELY NEGOTIATED ATTORNEYS' FEE AND EXPENSE AMOUNT SHOULD BE APPROVED

Plaintiffs' Counsel's efforts in both prosecuting the Action on behalf of CHSI and negotiating the Settlement have conferred substantial benefits upon the Company and its shareholders in the form of a sizeable cash payment and sweeping Corporate Governance Reforms. In recognition of these substantial benefits, CHSI agrees that Plaintiffs' Counsel are entitled to $20 million for their attorneys' fees and expenses.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Applying these principles to derivative settlements, federal courts across the country approve separately negotiated attorneys' fees provisions and have shown significant deference to corporate directors' business judgment with respect to the amount of attorneys' fees to be paid to plaintiffs' counsel where a substantial benefit has been conferred upon a corporation. *See, e.g.*, *In re McAfee, Inc. Derivative Litig.*, No. 5:06-CV-03484-JF, slip op., ¶¶5, 8 (N.D. Cal. Jan. 30, 2009) (approving $13.75 million separately negotiated fee provision where derivative plaintiffs recovered $30 million for the corporation); *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-03894-RMW(RS), slip op., ¶¶5, 8 (N.D. Cal. Aug. 11, 2009) (approving $16 million separately negotiated fee provision where derivative plaintiffs recovered $54.6 million for the corporation); *Pfizer*, 780 F. Supp. 2d at 343-44 (approving $22 million separately negotiated fee provision where derivative plaintiffs recovered $75 million for the corporation).

After the Settling Parties reached agreement on the principal terms of the Settlement, including the Settlement Payment and Corporate Governance Reforms, Plaintiffs' Counsel and counsel for CHSI begin discussing the appropriate amount of attorneys' fees and expenses. Phillips Decl., ¶10 ("After the parties reached agreement on the terms of the settlement, counsel for plaintiffs and counsel for CHSI negotiated at arms'-length attorneys' fee and expenses."). Notably, Judge Phillips, who oversaw the Settlement negotiations from commencement to conclusion was well-positioned to assess the value obtained by Plaintiffs' Counsel for CHSI. The mediator has stated that

he "believe[s] that the agreed upon attorneys' fee and expense amount . . . is fair and reasonable in light of the substantial benefits conferred upon CHSI, and is consistent with fee provision in similar complex, large shareholder derivative actions." *See id*.[5]

Further, the reasonableness of the Fee and Expense Amount negotiated by the parties is underscored by the "substantial benefits" achieved for CHSI by and through Plaintiffs' Counsel's efforts. Under the "substantial benefit" doctrine, counsel who prosecute a shareholder derivative case that confers benefits on a corporation are entitled to an award of attorneys' fees and costs.[6] In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court stated that "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id*. at 395-96 (citations omitted); *Pfizer*, 780 F. Supp. 2d at 343-44 (approving $22 million separately negotiated fee provision where derivative plaintiffs recovered $75 million for the corporation); *Marvell Tech.*, slip op., at ¶¶5, 8 (approving $16 million separately negotiated fee provision where derivative plaintiffs recovered $54.6 million for the corporation); *NVIDIA Corp.*, 2008 U.S. Dist. LEXIS 117351, at *10 ("[S]trong corporate governance is fundamental to the economic well-being and success of a corporation."); *F5 Networks*, slip op., at ¶¶5-7 (same).

---

[5] The Fee and Expense Amount is also within the range of percentage awards approved in other representative actions by district courts in Tennessee and throughout the country. *See generally Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. (M.D. Tenn. Sept. 27, 2010) (Campbell, J.) (same); *Morse v. McWhorter*, No. 3:97-0370, slip op. (M.D. Tenn. Mar. 12, 2004) (Higgins, J.) (awarding 33.33% fee plus expenses); *Winslow v. Bancorpsouth, Inc.*, No. 3:10-cv-00463, slip op. (M.D. Tenn. Oct. 31, 2012) (awarding 30% fee plus expenses); *Se. Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167 (Greer, J.) (33.33% fee); *Pfizer*, 780 F. Supp. 2d at 343-44 (29.33% fee plus expenses); *In re Tricor Direct Purchaser Antitrust Litig*, No. 05-340-SLR, 2009 U.S. Dist. LEXIS 133251 (D. Del. Apr. 23, 2009) (33.33% fee); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (same); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) (34% fee).

[6] This is particularly so here where Plaintiffs' Counsel never wavered in their commitment to vindicating CHSI's interests, despite the challenges and inherent risks associated with doing so, expending more than 30,000 hours and $13 million in time and expenses prosecuting the derivative claims from inception to Settlement.

- 20 -

1214081_6

Case 3:11-cv-00442 Document 272-1 Filed 10/08/13 Page 42 of 47 PageID #: 6305

Here, there is no question that Plaintiffs' Counsel's efforts conferred a substantial benefit upon CHSI and its shareholders. Solely as a result of Plaintiffs' and their counsel's efforts, CHSI shall receive $60 million in cash, an amount which by itself justifies the Fee and Expense Amount, and CHSI and its shareholders will also receive a substantial benefit from the addition of two shareholder nominated directors and the other Corporate Governance Reforms designed to enhance CHSI's transparency and improve the Company's compliance with state and federal Medicare and Medicaid laws. *See Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment"); *Cohn*, 375 F. Supp. 2d at 853 (approving settlement of derivative action and finding that "[a]s a result of the implementation of the Settlement's corporate governance changes, [the corporation] is far less likely to become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors"); Thomas Decl. at 12-13.

Accordingly, the Fee and Expense Amount provision separately negotiated by the Settling Parties should likewise be approved.

## VI. CONCLUSION

Plaintiffs respectfully submit that the Settlement represents an extraordinary result for CHSI and should be approved in its entirety.

DATED: December 20, 2016

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
BENNY C. GOODMAN III
ERIK W. LUEDEKE
JUAN CARLOS SANCHEZ

     s/ Benny C. Goodman III
BENNY C. GOODMAN III

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

- 21 -

ROBBINS GELLER RUDMAN
 & DOWD LLP
JOHN C. HERMAN
Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
KEVIN A. SEELY
ASHLEY R. RIFKIN
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

DAVIES, HUMPHREYS, HORTON
 & REESE
WADE B. COWAN
85 White Bridge Road, Suite 300
Nashville, TN  37205
Telephone:  615/256-8125
615/242-7853 (fax)

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

Attorneys for Plaintiffs

1214081_6

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 20, 2016.

<div style="margin-left:50%">

  s/ Benny C. Goodman III
BENNY C. GOODMAN III

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  bennyg@rgrdlaw.com

</div>

**Mailing Information for a Case 3:11-cv-00489 Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Smith et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael J. Asher**
  masher@swappc.com

- **Alison C. Barnes**
  abarnes@robbinsrussell.com,mmadden@robbinsrussell.com,lpettit@robbinsrussell.com,cchasecarpino@robbinsrussell.com,dlerman@robbinsrussell.com,jherman@rob

- **Randall J. Baron**
  RandyB@rgrdlaw.com

- **James N. Bowen**
  jimbowen@rwjplc.com,dgibby@rwjplc.com

- **Wade B. Cowan**
  wcowan@dhhrplc.com

- **Peter Duffy Doyle**
  pdoyle@proskauer.com,LSOWDTN@proskauer.com

- **D. Alexander Fardon**
  alexfardon@comcast.net,daf@h3gm.com

- **Jonathan P. Farmer**
  jfarmer@fpwlegal.com,lneeley@fpwlegal.com,gstevenson@fpwlegal.com

- **Nadeem Faruqi**
  nfaruqi@faruqilaw.com

- **Chantel Febus**
  cfebus@proskauer.com

- **Seth D. Fier**
  sfier@proskauer.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **Benny C. Goodman , III**
  bennyg@rgrdlaw.com,eluedeke@rgrdlaw.com,TravisD@rgrdlaw.com,michelew@rgrdlaw.com

- **Christy Goodman**
  c.w.goodmanlaw@gmail.com

- **John C. Herman**
  jherman@rgrdlaw.com,geubanks@rgrdlaw.com

- **Pedro A. Herrera**
  pherrera@sugarmansusskind.com

- **Michael J. Hynes**
  mhynes@hkh-lawfirm.com,bkeller@hkh-lawfirm.com,lhernandez@hkh-lawfirm.com

- **John R. Jacobson**
  jjacobson@rwjplc.com,mkillen@rwjplc.com,dbarnes@rwjplc.com

- **Beth A. Keller**
  bkeller@hkh-lawfirm.com

- **Erik W. Luedeke**
  eluedeke@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,dgibby@rwjplc.com

- **Eugene Mikolajczyk**
  genem@rgrdlaw.com

- **Gary A. Orseck**
  gorseck@robbinsrussell.com

- **Ashley R. Rifkin**
  arifkin@robbinsarroyo.com,notice@robbinsarroyo.com

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Darren J. Robbins**
  darrenr@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  JSanchez@rgrdlaw.com

- **Kevin A. Seely**
  kseely@robbinsarroyo.com,notice@robbinsarroyo.com

- **Howard S. Susskind**
  hsusskind@sugarmansusskind.com

- **Michael L. Waldman**
  mwaldman@robbinsrussell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)