# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| CALEB PADILLA, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, LARRY CASH, and THOMAS J. AARON,<br><br>    Defendants. | Case No.: 3:19-cv-00461<br><br>DISTRICT JUDGE ELI J. RICHARDSON<br><br>MAGISTRATE JUDGE BARBARA D. HOLMES |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR CLASS DISTRIBUTION ORDER**

Court-appointed Lead Plaintiffs and Class Representatives Arun Bhattacharya and Michael Gaviria ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1] If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action; and (iv) approve Class Counsel's request for reimbursement of outstanding litigation expenses. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Walter Declaration. *See* Walter Decl. ¶39(a)-(f), Exh. 1 hereto.

## I.     BACKGROUND

On May 19, 2023, the Parties entered into the Stipulation, the terms of which established a $9,500,000 Settlement Fund for the benefit of the Settlement Class. The Settlement Class consists of all persons or entities who purchased or otherwise acquired Community Health Systems, Inc. ("CHS") publicly traded common stock during the period between February 21, 2017 and February 27, 2018, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are: (a) persons and entities who or which suffered no compensable losses;

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 19, 2023 (the "Stipulation"; ECF No. 117-1), or the concurrently filed Declaration of Adam D. Walter in Support of Lead Plaintiff's Motion for Class Distribution Order ("Walter Decl." or "Walter Declaration"), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. (the "Claims Administrator"). *See* Exhibit ("Exh.") 1 hereto.

1

and (b)(i) Defendants; (ii) any person who served as a partner, control person, executive officer and/or director of CHS during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, Affiliates, and predecessors of CHS; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; and (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) above. *See* Stipulation, ¶1(uu).

The Court granted preliminary approval of the Settlement on May 30, 2023. *See* ECF No. 118 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator (a) mailed a total of 35,465 copies of the Postcard Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Postcard Notice"); (b) created and maintained a toll-free helpline for inquiries during the course of the administration; (c) designed, launched, and maintained a case specific website (www.CommunityHealthSecuritiesSettlement.com, the "Settlement Website"), which includes the option to submit a Claim Form online and provides access to key Settlement-related documents; (d) caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire* (a national newswire service); (e) provided, upon request, additional copies of the Postcard Notice to brokers, nominees, and potential Settlement Class Members; and (f) received and processed Claim Forms. *See* Walter Decl. ¶¶3, 5. The Postcard Notice directed Settlement Class Members to the Notice on the Settlement Website, which

2

provided them with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claims.

On October 20, 2023, the Court entered an order (the "Final Approval Order") approving the Plan of Allocation, which was explained in the Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund, and granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 133.

Class Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator and additional litigation expenses, as discussed below; and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants.

## II. CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice (disseminated to Class Members via the Postcard Notice, *see* Final Approval Order, ¶4), all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than October 26, 2023. *See* Preliminary Approval Order, ¶10; Walter Decl., ¶6. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Walter Decl., ¶¶19-26.

Of the 5,495 Claims submitted to and fully processed by the Claims Administrator, 49 were paper submissions, and 295 were online submissions through the online filing portal on the Settlement Website. *Id.*, ¶9. The remaining 5,151 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id.*, ¶¶9, 13. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim

Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry. *Id.* at ¶13. This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit A to the Walter Declaration. *Id.*, ¶¶19-20, Ex. A. The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* at ¶20. Of the 344 paper and online Claims, the Claims Administrator sent deficiency letters for 252 Claims (or approximately 73%). *Id.*, ¶19. If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim Filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibits B and C to the Walter Declaration respectively. *Id.*, ¶¶22-25, Ex. B & C. Of the 5,151 Electronic Claims, 2,874 (or approximately 53%) were incomplete or deficient and were filed by a total of 133 E-Claim filers. *Id.*, ¶22. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Walter Declaration, after the deficiency process was complete, the Claims Administrator determined that 2,374 Claims are acceptable and should receive a distribution. Walter Decl., ¶35. This number includes 2,244 timely and valid claims, and 130 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* These Claims

represent a total Recognized Loss amount of $112,772,167.79.[2] *Id.*, ¶¶34-35, 37; Exhs. D & E. The Claims Administrator also determined that 3,121 Claims are not eligible and should be rejected for the following reasons: (i) 1,856 Claims did not result in a Recognized Claim under the Court-approved Plan of Allocation; (ii) 1,035 Claims had no purchase(s) or acquisitions of CHS publicly traded common stock; (iii) 226 Claims were duplicates; and (iv) 4 Claims were withdrawn. *Id.*, ¶¶36-37(c); Ex. F.

## III. LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the October 26, 2023, claim filing deadline. There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See Schaefer v. Tannian*, 164 F.R.D. 630, 638 (E.D. Mich. 1996) ("There is no question that in the distribution of a large class settlement fund, "a cutoff date is essential and at some point the matter must be terminated."'") (quoting *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977)). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of March 28, 2024.

Of the 5,495 Claims submitted, 461 Claims were received or postmarked after the initial October 26, 2023, deadline, but before the Claims Administrator's imposed cut-off of March 28, 2024. Walter Decl., ¶¶29, 30. Of these 461 Claims, 130 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.* ¶¶29, 35, 37(b), Ex. E. These 130 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Class Counsel and the Claims Administrator

---

[2] The Recognized Loss amount is $110,553,485.97 for timely and valid Claims, and $2,218,681.82 for Late But Otherwise Eligible Claims. *Id*., ¶¶34-35.

believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985) (district courts have discretion to permit the filing of late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Eletrobras Sec. Litig.*, 467 F.Supp.3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"). Accordingly, it is respectfully requested that this Court approve Class Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Walter Decl., ¶¶29, 35, 37(b); Ex. E.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after March 28, 2024, be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127); *Burns*, 757 F.2d at 155 ("defendants are entitled to some certainty in their settlement liability and to avoid claims that trickle in too long past the filing deadline.").

## IV. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Walter Decl., ¶39(a)(i)-(iv). Based on the substantial experience of Class Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Class Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id*., ¶39(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Class Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id*., ¶39(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net

Settlement Fund or until Class Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*., ¶39(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed – subject to Court approval – to Public Justice, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. *Id*., ¶39(d). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## V. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Class Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Class Counsel in

8

connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds.  *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Pritchard v. Apyx Med. Corp.*, 2021 WL 2451356, at *1 (M.D. Fla. June 15, 2021) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462 at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010) (same).

## VI. EFFICIENT ADMINISTRATION HAS KEPT ADMINISTRATIVE COSTS LOW

The Preliminary Approval Order (ECF No. 118) authorized the payment of reasonable administrative expenses as provided in the Stipulation (ECF No. 117-1) without further order of Court.  Here, through efficient administration and negotiated expenses derived through a competitive bidding process, administrative costs have come in significantly less than in most securities fraud class actions of this magnitude.  To date, administrative costs of $128,098.45 have

9

accrued. Walter Decl., ¶38. The Claims Administrator estimates its cost to complete the Initial Distribution will be $12,186.77. *Id.* Because the Court has already authorized payment of reasonable administration expenses, we seek no relief related hereto and provide this for informational purposes only.

## VII. AN INADVERTENTLY OMITTED LITIGATION EXPENSE SHOULD BE REIMBURSED

One small expert invoice totaling $9,837.50 was inadvertently omitted from Class Counsel's expense reimbursement request. *See* Declaration of Joshua B. Silverman in Support of Plaintiffs' Motion for Order of Distribution, attached hereto as <u>Exh. 2</u>. Consistent with standard practice in such instances, Class Counsel respectfully requests that it be reimbursed at this time from the Settlement Fund. *See, e.g.*, *Tchatchou v. India Globalization Capital, Inc.*, No. PWG-18-3396, (D. Md. Dec. 2, 2022) (ECF No. 103) (approving reimbursement of additional unreimbursed mediation invoice); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828-H-JLB, 2022 U.S. Dist. LEXIS 186005, at *3 (S.D. Cal. Oct. 7, 2022) (approving reimbursement for "additional, unreimbursed, reasonable, necessary, out-of-pocket expenses"); *County of Monmouth v. Florida Cancer Specialists*, No. 2:18-vc-201, 2022 U.S. Dist. LEXIS 207911, at *10-11 (M.D. Fla. Oct. 21, 2022) (approving reimbursement of additional expenses where total reimbursement, as here, remained under limit set forth in notice). Here, the unreimbursed expense relates to a $9,837.50 invoice from consulting accounting expert Friedman LLP for advice provided in connection with the Amended Complaint. The Class received a tangible benefit from the advice, which was both reasonably necessary and of the sort traditionally reimbursed. Class Counsel notes that total litigation expenses including the additional requested reimbursement would still be significantly below the $300,000 limit for litigation expenses set forth in the Notice, to which no Class member objected. *Id.*

## VIII. RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully requests the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶39(f).

## IX. CONCLUSION

For all of the above reasons, Plaintiffs respectfully requests that the Motion be granted.

Dated: June 3, 2024

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Louis C. Ludwig*
Joshua B. Silverman (admitted *Pro Hac Vice*)
Louis C. Ludwig (admitted *Pro Hac Vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
lcludwig@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *Pro Hac Vice*)
Joseph D. Cohen (admitted *Pro Hac Vice*)
Casey E. Sadler (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
jcohen@glancylaw.com
csadler@glancylaw.com

*Class Counsel*

**STRANCH, JENNINGS & GARVEY**
J. Gerard Stranch, IV (BPR #023045)

11

223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

*Liaison Counsel for Lead Plaintiffs and the Class*

12

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER, was served on the following counsel of record on June 3, 2024 via CM/ECF, in accordance with the Federal Rules of Civil Procedure:

| | |
|---|---|
| Paul Kent Bramlett | pknashlaw@aol.com |
| Steven Allen Riley | sriley@rjfirm.com, dgibby@rjfirm.com |
| Jerry E. Martin | jmartin@barrettjohnston.com, elusnak@barrettjohnston.com, jmartin@rgrdlaw.com |
| Gregory M. Nespole | gnespole@zlk.com, ecf@zlk.com |
| James Gerard Stranch, IV | gstranch@stranchlaw.com, complexlit@stranchlaw.com |
| Milton S. McGee, III | tmcgee@rjfirm.com, dgibby@rjfirm.com |
| Robert P. Bramlett | robert@bramlettlawoffices.com |
| Jeremy A. Lieberman | jalieberman@pomlaw.com, ashmatkova@pomlaw.com, disaacson@pomlaw.com |
| Lionel Z. Glancy | lglancy@glancylaw.com |
| Louis C. Ludwig | lcludwig@pomlaw.com |
| Joshua B. Silverman | jbsilverman@pomlaw.com |
| J. Alexander Hood, II | ahood@pomlaw.com, abarbosa@pomlaw.com |
| Carson W. King | carson.king@nelsonmullins.com, jada.prendergast@nelsonmullins.com, jgutierrez@rjfirm.com |
| Casey E. Sadler | csadler@glancylaw.com |
| Jared Schneider | jschneider@pomlaw.com |
| Melissa C. Wright | mwright@glancylaw.com |
| Joshua Sean Bolian | jbolian@rjfirm.com |

13

Joseph D. Cohen          jcohen@glancylaw.com

Christopher P.T. Tourek      ctourek@pomlaw.com

**I further certify that Notice will be delivered by other means to:**

Charles H. Linehan
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067

Howard G. Smith
Law Offices of Howard G. Smith
3070 Bristol Pike
Suite 112
Bensalem, PA 19020

Lesley F. Portnoy
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067

Pavithra Rajesh
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067

Robert V. Prongay
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 9006

June 3, 2024                                 **POMERANTZ LLP**

                                        By: */s/ Louis C. Ludwig*
                                        Joshua B. Silverman (admitted *Pro Hac Vice*)
                                        Louis C. Ludwig (admitted *Pro Hac Vice*)
                                        10 South LaSalle Street, Suite 3505
                                        Chicago, Illinois 60603
                                        Telephone: (312) 377-1181
                                        jbsilverman@pomlaw.com

14

lcludwig@pomlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (admitted *Pro Hac Vice*)
Joseph D. Cohen (admitted *Pro Hac Vice*)
Casey E. Sadler (admitted *Pro Hac Vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
jcohen@glancylaw.com
csadler@glancylaw.com

*Class Counsel*

**STRANCH, JENNINGS & GARVEY**
J. Gerard Stranch, IV (BPR #023045)
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com

*Liaison Counsel for Lead Plaintiffs and the Class*

15